IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Neal D. Barnard, MD )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. Department of Homeland Security )<br>)<br>Defendant )<br>) | Case No: 06-CV-1393 (CKK) |

## DECLARATION OF MARSHALL H. FIELDS JR.

### I. INTRODUCTION

1. I, Marshall H. Fields, Jr., make the following statement, under penalty of perjury, pertinent to the above styled and numbered cause, and being over 18 years of age, am fully competent to make the statements contained in this declaration.

2. I am the Chief of the Freedom of Information Act/Privacy Act (FOIA/PA) Section, Information Disclosure Unit (IDU), Mission Support Division, Office of Investigations (OI), GS-14, at U.S. Immigration and Customs Enforcement (ICE) within the Department of Homeland Security (DHS). I have held this position since July 2004. My office is located at 425 I Street, NW, Washington DC.

3. Among other things, the official duties and responsibilities of my position include the general management, oversight, and supervision of the FOIA/PA Section in the IDU. The FOIA/PA Section processes the FOIA/PA requests received by OI and has oversight of the FOIA functions in the various OI field offices.

4.  I am familiar with the facts of this case. This declaration is based upon my personal knowledge, review of documents kept in the course of business, and information conveyed to me in the course of my official duties.

## II. FACTUAL CHRONOLOGY

5.  By letter dated July 20, 2005, plaintiff submitted a FOIA/PA request to U.S. Customs and Border Protection (CBP) requesting all records about him. See Attachment 1.

6.  By letter dated August 15, 2005, CBP responded to plaintiff stating that records responsive to his request fell under the purview of ICE. See Attachment 2.

7.  By letter dated March 21, 2006, plaintiff submitted a FOIA/PA request to ICE requesting "any records created from January 1, 2002 to the present that were prepared, received, transmitted, collected and/or maintained by Immigration and Customs Enforcement relating to the following: ... [fifteen (15) specifically enumerated areas]." See Attachment 3.

8.  ICE acknowledged plaintiff's March 21, 2006 FOIA request in a letter dated May 1, 2006. See Attachment 4.

9.  By letter dated May 16, 2006, plaintiff submitted an appeal to the DHS Privacy Office appealing ICE's denial, through inaction, of plaintiff's FOIA request. See Attachment 5. In that letter, plaintiff acknowledged receipt of the ICE May 1, 2006, acknowledgement letter. Id.

10. By letter dated June 28, 2006, ICE believes that the DHS Privacy Office responded to plaintiff's FOIA appeal. See Attachment 6. (This is an unsigned copy of a letter ICE understands was sent to plaintiff.) The DHS Privacy Office letter stated: "By copy of this letter, I am informing ICE FOIA personnel of your appeal. The delay you have encountered is largely a result of resource constraints, which ICE is working very hard to correct. Until ICE responds to

your initial request, however, my office cannot take further action on your appeal as we do not have the staff resources ourselves to conduct initial record reviews for DHS components." Id.

11. By letter dated August 5, 2006, ICE responded to plaintiff's March 21, 2006, FOIA request, advising plaintiff that ICE has no records responsive to his request. See Attachment 7. By letter dated August 10, 2006, plaintiff appealed ICE's August 5, 2006, response. See Attachment 8.

12. By letter dated November 16, 2006, ICE responded to plaintiff with a supplemental response. See Attachment 9. The letter informed plaintiff that ICE determined that any records responsive to his request were exempt from disclosure, in their entirety, pursuant to exemptions (b)(2), (b)(7)(A), (b)(7)(C) and (b)(7)(E) of the FOIA. Id. ICE reiterated plaintiff's right to appeal ICE's denial of his request. Id.

13. By letter dated November 30, 2006, plaintiff appealed ICE's, November 16, 2006, supplemental response. See Attachment 10. By letter dated December 20, 2006, the DHS Office of the General Counsel, General Law Division, acknowledged plaintiff's appeal. See Attachment 11.

### III. CATEGORIES OF RECORDS

14. Documents determined to be responsive to plaintiff's FOIA request were retrieved from the Privacy Act system of records maintained by ICE known as the *Treasury Enforcement Communications System (TECS)*.

15. For the most part, the TECS is an evolving electronic database used for storage, tracking, and retrieval of law enforcement information. All of ICE OI offices have access to the TECS. Information is stored on various media, e.g., magnetic disc and tape and laser optical disks, with backups in microfiche and hardcopy. Categories of individuals covered by the system are

convicted/suspected violators of customs, immigration, banking, terrorism, arms and weapons, hazardous material, drug, or related laws; individuals who are suspected of, or who have been arrested for, thefts from international commerce; foreign nationals who are in the U.S. illegally; fugitives with outstanding warrants – Federal and State; victims of U.S. law violations; owners, operators and/or passengers of vehicles, vessels or aircraft traveling across U.S. borders; and individuals participating in financial transactions reportable under the Bank Secrecy Act (BSA), *inter alia*. Information of every description from a variety of Federal, State, and local sources that contributes to effective law enforcement may be maintained in the TECS system of records. Retrievability is accomplished via computerized search engines linked to names, unique identifiers, addresses, or in association with enforcement reports or other system documents. Records pertaining to plaintiff were found during IDU's TECS query by specifically linking plaintiff's name.

## IV. SEARCH FOR RECORDS

16.     In May 2006, plaintiff's FOIA request was assigned to an analyst in the IDU. The case was entered into the analyst's queue. The analyst entered TECS and queried the TECS by reference to plaintiff's name to identify and retrieve records responsive to his FOIA request. The TECS search located six (6) pages of records responsive to plaintiff's request when printed to hardcopy. TECS is one of two systems of records maintained by ICE where records responsive to plaintiff's FOIA request would likely be located. The other ICE system of records where records responsive to plaintiff's FOIA request would likely be located is the Investigations Records System (IRS). All records in the IRS are linked into TECS. Any query of TECS would have indicated the existence of any IRS records had they existed here. The TECS query conducted by the analyst did not indicate that records responsive to plaintiff's request existed in

the IRS. Therefore, the only ICE system of records that contains records responsive to plaintiff's request is TECS.

## V. FREEDOM OF INFORMATION ACT EXEMPTIONS

17. <u>Exemption (b)(2) - 5 U.S.C. 552(b)(2)</u>: This exemption allows for the withholding from mandatory disclosure records or information that relate solely to the internal personnel rules and practices of an agency. This exemption encompasses both internal matters of a relatively trivial nature, low (b)(2), the disclosure of which would place an administrative burden on the agency to process and internal matters of a far more substantial nature, high (b)(2), the disclosure of which would risk circumvention of a legal requirement. ICE used both categories of this exemption to withhold exempted information and records.

18. Low (b)(2): ICE asserted this FOIA exemption with respect to internal agency codes that appear on printouts from the TECS that are responsive to plaintiff's request. Specifically, ICE exempted from disclosure the following types of codes that appeared in TECS records; case/file numbers; report numbers; class numbers, source symbol numbers, case program codes; TECS access codes, classification codes; TECS identification numbers; investigative distribution codes; TECS computer function commands; and other administrative codes. The codes appearing on the TECS printout are used for the purposes of indexing, storing, locating, retrieving and distributing information in ICE investigative files. While these codes have internal significance, they are trivial in nature and bear no relation to the substantive contents of the records. Therefore, the disclosure of these codes to the public would not assist the public in understanding how the agency is carrying out its statutory responsibilities. ICE also withheld the telephone numbers of ICE Special Agents. Telephone numbers relate to the internal practices of the agency in that they are to be utilized by agency personnel in the performance of their duties.

The disclosure of these numbers would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Moreover, release of the direct telephone numbers of our Special Agents could subject them to harassing telephone calls, which would impair their ability to conduct agency business. Accordingly, these codes and telephone numbers have been withheld under the "low (b)(2)" standard.

19.    High (b)(2): ICE asserted this category of the exemption with respect to some of the codes appearing in the TECS printouts. Some of these codes serve a dual purpose. Aside from the purposes of indexing, storing, locating, retrieving and distributing information these codes also indicate various aspects of the enforcement case, such as the type and location of the case; whether or not the subject should undergo close inspection; and the distribution of information relating to the case, which would indicate the scope and relative size of the investigation in terms of agency resources, types of activity being investigated, and location of investigative efforts. The disclosure of these codes could, along with the TECS computer function commands, assist third parties in deciphering the meanings of the codes, which could potentially impede an ongoing investigation as well as pose a danger to ICE personnel. The disclosure could also assist unauthorized parties in gaining improper access to the TECS system and enable them to navigate the system. Such improper access would reveal sensitive law enforcement information relating to ongoing investigations and could result in the alteration or deletion of valuable information contained in the system. This would jeopardize the integrity of the system. Such codes include the case program codes and access codes. Accordingly, these codes are being withheld under both the low (b)(2) and the high (b)(2) exemption.

20. <u>Exemption (b)(7) – Threshold</u>: To successfully defend the assertion of any (b)(7) exemption as a basis for withholding records and information, an agency must demonstrate that the matters so withheld were compiled for law enforcement purposes.

21. The information for which FOIA exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. ICE is the largest investigative arm of DHS, and is responsible for identifying and eliminating vulnerabilities within the nation's borders in order to provide greater security to the United States and prevent future terrorist attacks; and establishing and maintaining economic transportation and infrastructure security. ICE is tasked with preventing any activities that threaten national security and public safety by targeting the people, money and materials that support illegal enterprises.

22. <u>Exemption (b)(7)(A) – 5 U.S.C. § 552(b)(7)(A)</u>: FOIA Exemption (b)(7)(A) allows for the withholding of "records or information compiled for law enforcement purposes" to the extent that their release "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A). In the instant case, plaintiff is the subject of an open and pending criminal investigation. Release of any information pertaining to this investigation could reasonably be expected to interfere with this open and pending criminal investigation.

23. <u>Exemption (b)(7)(C) – 5 U.S.C. § 552(b)(7)(C)</u>: This exemption was applied to protect from disclosure information compiled for law enforcement purposes that, if released to the public, could constitute an unwarranted invasion of personal privacy. This exemption allows the withholding of information that identifies agency employees and third parties in law enforcement records. ICE withheld the names of ICE Special Agents appearing in the TECS printouts. Special Agents handle a myriad of tasks relating to official investigations into the criminal activities of third parties. They were, and still are, in positions of access to information

regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of Special Agents. ICE also used this exemption to withhold the name of a third party appearing in the TECS printout. Third parties who were, and possibly still are, subjects of investigations or who provided information or other cooperation to the government could be humiliated by being identified in connection with a criminal investigation; they could become targets of harassment or physical danger. Also release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of third parties.

24.     Exemption (b)(7)(E) – 5 U.S.C. § 552(b)(7)(E): This exemption was asserted to protect from disclosure law enforcement information, that if released would disclose techniques, procedures and guidelines for law enforcement investigations or prosecutions, where such disclosures could reasonably be expected to risk circumvention of law. ICE employed certain law enforcement techniques designed to obtain information about plaintiff in furtherance of the government's criminal investigation of plaintiff. These techniques involved cooperative arrangements between ICE and other agencies and inter-agency communications prompting specific actions on the part of agency employees. The disclosure of these techniques could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed in investigations where they may be targets and identify such techniques as they are being employed. Furthermore, release of this information would negatively impact the future effectiveness of these investigative techniques.

## VI.  SEGREGABILITY

25.  I reviewed all documents determined to be responsive to plaintiff's FOIA request, line-by-line, to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.  Because the exempt information was so inextricably intertwined with the non-exempt information, I determined that no portions of the relevant records were reasonably segregable.  In my determination, any release of the non-exempt materials could reasonably lead to the identification of the individuals, techniques, entities, or other items that are properly protected by the exemptions asserted.

## VII.  JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.  Signed this 20th day of February, 2007.

MARSHALL H. FIELDS, JR.
Chief, FOIA/PA Section
Information Disclosure Unit
Mission Support Division
Office of Investigations
U. S. Immigration and Customs Enforcement
United States Department of Homeland Security