

## PCRM
PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE

5100 WISCONSIN AVENUE, N.W., SUITE 400
WASHINGTON, DC 20016
T: (202) 686-2210  F: (202) 686-2216
PCRM@PCRM.ORG  WWW.PCRM.ORG

**DANIEL KINBURN**
**Associate General Counsel**
Writer's Direct Number: (202) 686-2210 ext. 308
Writer's Direct Fax: (202) 686-2155
Writer's E-Mail: DKinburn@pcrm.org

March 21, 2006

FOIA/PA Section
Information Disclosure Unit
Mission Support Division
Office of Investigations
U.S. Immigrations and Customs Enforcement
425 I Street, NW - Room 4038
Washington, D.C. 20536

Re:   **REQUEST UNDER FREEDOM OF INFORMATION AND PRIVACY ACTS**

This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and the Department of Homeland Security implementing regulations, 6 C.F.R. §§ 5.3, 5.21, by Neal D. Barnard, M.D.:

| | |
|---|---|
| Name: | Neal Dana Barnard, M.D. |
| Current Address: | 5500 Friendship Blvd, Apt. 1112-N<br>Chevy Chase, MD 20815 |
| Daytime Telephone: | (202) 686-2210, ext. 303 |
| Date of Birth: | July 10, 1953 |
| Place of Birth: | Ft. Devens, MA |

Dr. Barnard verifies his identity in accordance with 28 U.S.C. § 1746 and 5 C.F.R. §§ 5.3(a), 5.21(d).

I.   **About Neal D. Barnard, M.D.**

Neal D. Barnard, M.D., is the president and founder of the Physicians Committee for Responsible Medicine ("PCRM"), a 501(c)(3) public charity that advocates preventive health care through better nutrition and by promoting more effective, ethical, and compassionate scientific research. Dr. Barnard is the author of several dozen publications in scientific and medical journals as well as numerous nutrition books for lay readers, and he is frequently called on by news programs to discuss issues related to nutrition, research, and other areas of modern



GOVERNMENT EXHIBIT 3

RCVD APR 3 '06

medicine. His activities are reported to over 120,000 physician and lay members in PCRM's quarterly publication, "Good Medicine." Dr. Barnard previously filed a request with U.S. Customs and Border Projection ("CBP"), No. "DIS-6-OFO:FP RR; 2005T2952," to which he received a letter, dated August 15, 2005, advising him to contact Immigrations and Customs Enforcement for information on the records requested below. Dr. Barnard has no commercial interest in the records being sought.

## II.   The Request for Information

Dr. Barnard seeks disclosure of any records[1] created from January 1, 2002 to the present that were prepared, received, transmitted, collected and/or maintained by Immigrations and Customs Enforcement relating or referring to the following:

1.  Any records relating or referring to Dr. Barnard, including but not limited to records that document any collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard or his activities;[2]

2.  Any orders, agreements, or instructions to collect information about, monitor, conduct surveillance of, observe, question, interrogate, and/or investigate Dr. Barnard;

3.  Any records relating or referring to how, why or when Dr. Barnard was selected for collection of information, monitoring, surveillance, observation, questioning, interrogation, and/or investigation;

4.  Any records relating or referring to Dr. Barnard's selection for collection of information, monitoring, surveillance, observation, questioning, interrogation, and/or investigation at the following times:

    a.  January 4, 2003: CBP officials questioned, searched, and delayed Dr. Barnard for 20 minutes upon his return from vacation abroad. Officials informed him that his passport had been flagged for scrutiny.

---

[1] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

[2] The term "activities" as used herein includes, but is not limited to, any activities of Dr. Barnard described in Section I above and any advocacy, provision of services, lobbying, organizing, fundraising, meetings, conventions, or campaigns, and any media or communications to, from or about Dr. Barnard in any form (including any oral, written, electronic, or online communications, including but not limited to any books, pamphlets, brochures, newsletters, fundraising letters, correspondence, action alerts, e-mail, web communications, discussion groups, or listservs).

b.  May 10, 2003: CBP officials detained Dr. Barnard at Toronto Pearson International Airport for 20 to 30 minutes, interrogated him about the nature of his work, and searched his belongs. At this time, Dr. Barnard observed "Terrorist Organization Member - Caution" in large block letters on the CBP computer screen;

c.  June 3, 2003: CBP officials searched and questioned Dr. Barnard at Dulles International Airport for 30 minutes upon his return from a vacation in Europe. Officials searched Dr. Barnard's baggage and removed, to make photocopies, a personal calendar and address book, correspondence, and a job applicant's résumé;

d.  July 16, 2003: CBP officials detained Dr. Barnard in the screening room at Toronto Pearson International Airport for questioning for more than 20 minutes;

e.  August 28, 2003: CBP officials, including Officers Weimer and Hanna, delayed and screened Dr. Barnard for 15 minutes at Toronto Pearson International Airport, at which time Dr. Barnard observed the "Terrorist Organization Member" notice on the CBP computer screen;

f.  January 3, 2004: CBP Officers Tweed and Grove stopped Dr. Barnard at Dulles International Airport upon his return from the United Kingdom and searched his baggage;

g.  September 10, 2004: Upon Dr. Barnard's return from a trip to Belgium and France, CBP Officer Berg marked a yellow line on Dr. Barnard's customs card, after which Officer Greskovic searched his baggage;

h.  January 1, 2005: CBP officials delayed Dr. Barnard for 30 minutes upon his return from a trip to the United Kingdom. After Officer Messina marked a yellow line on Dr. Barnard's customs card, Officers Cromwell and Perlas searched his baggage;

i.  May 13, 2005: Police officers briefly detained Dr. Barnard as he checked in with Air France at Dulles International Airport because his name appeared on a "no-fly" list;

j.  May 28, 2005: CBP officials delayed Dr. Barnard for 12 minutes at Dulles International Airport upon his return from France. Officer Wilkinson marked a yellow line on Dr. Barnard's customs card and Officers Stuart and Greene, assisted by a third officer, checked his passport, after which Officer Stuart searched his baggage;

      k.    August 27, 2005: CBP Officers Ulloa, Miller, Comas, and Brodie delayed, questioned, and searched Dr. Barnard for 20 minutes at Dulles International Airport upon his return from Marseilles;

      l.    September 22, 2005: While checking in at Dulles International Airport, Dr. Barnard learned from United Airlines that his name matched the name of a person on the "no-fly" list. Dr. Barnard was later sidelined for screening and inspected by Earle Biassey;

5. Any records relating or referring to any "no-fly" or other lists that include Dr. Barnard's name and that would cause him to be stopped, searched, and/or screened by CBP during international travel in the ways described in number 4 above.

6. Any records relating or referring to how collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard was or will be conducted;

7. Any records relating or referring to the names of any other federal, state, or local government agencies participating in any collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard;

8. Any records relating or referring to the specific role of any federal, state, or local government agency participating in any collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard;

9. Any records relating or referring to how, why or when collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard was or will be suspended or terminated.

10. Any records relating or referring to how records about Dr. Barnard have been, will be, or might be used;

11. Any policies or procedures for analyzing records about Dr. Barnard;

12. Any policies or procedures for cross-referencing records about Dr. Barnard with information contained in any database;

13. Any policies or procedures for cross-referencing records about Dr. Barnard with information about any other individuals or organizations;

14. Any policies or procedures for cross-referencing records about Dr. Barnard with any other information not covered in numbers 10 and 11 above;

15. Any policies or procedures regarding retention of records about Dr. Barnard;

Freedom of Information and Privacy Act Request
March 21, 2006
Page 5

16. Any records referring or relating to the destruction of records about Dr. Barnard, including any policies permitting or prohibiting the destruction of records;

17. Any records referring or relating to how records about Dr. Barnard were destroyed or might be destroyed in the future;

18. Any records referring or relating to the recipient(s) of records about Dr. Barnard.

### III.  Limitation of Processing Fees

Dr. Barnard requests a limitation or restriction of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . ."), 6 C.F.R. § 5.11(c)(1)(i), (c)(3), (d)(1) (search and review fees shall not be charged to "representatives of the news media"), and 6 C.F.R. § 5.29 (Privacy Act fees will be charged in accordance with 6 C.F.R. § 5.11). As a "representative of the news media" who lectures frequently and authors articles for numerous publications, Dr. Barnard fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

### IV.  Partial Response or Denial

If this request is denied in whole or in part, please justify all deletions by reference to specific exemptions to FOIA and the Privacy Act. Dr. Barnard expects the release of all segregable portions of otherwise exempt material.

Thank you for your prompt attention to this matter. If you have any questions or comments, please call.

Very truly yours,

Daniel Kinburn

I hereby authorize Daniel Kinburn access to my records. I declare under penalty of perjury that the foregoing is true and correct. Executed on March 21, 2006.

Neal D. Barnard, M.D.

DK/dk
Enclosure

Office of Investigations

U.S. Department of Homeland Security
425 I Street, NW, Room 4038
Washington, DC 20536



**U.S. Immigration and Customs Enforcement**

MAY - 1 2006

DIS 2-01 OI:MS:ID
06-FOIA-22113  TBD

Daniel Kinburn, Esq.
Physicians Committee for Responsible Medicine
5100 Wisconsin Avenue, NW., Suite 400
Washington, D.C. 20016

Dear Mr. Kinburn:

This is to acknowledge your request dated March 21, 2006, made pursuant to the Freedom of Information Act (FOIA), for all records pertaining to Neal D. Barnard, MD.

Generally, we attempt to process requests in order of their receipt. Accordingly, we must first process similar requests previously received from other persons and organizations.

If you have any questions or need information about the status of your request, please call Mr. Gerald Crowley at (202) 353-0591.

Sincerely,

*Gerald J Crowley*

Gloria L. Marshall
Chief, Information Disclosure Unit
Mission Support Division



GOVERNMENT EXHIBIT 4