UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEAL D. BARNARD, M.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DEPARTMENT OF HOMELAND SECURITY, )<br>)<br>Defendant. )<br>) | Case No.: 06-CV-1393 (CKK) |

### DECLARATION OF NEAL D. BARNARD, M.D.

I, Neal D. Barnard, M.D., declare the following:

1. I am the president and founder of the Physicians Committee for Responsible Medicine ("PCRM"), a 501(c)(3) public charity that advocates for preventive medicine through better nutrition and promotes more effective, ethical, and compassionate scientific research. I am the author of several dozen publications in scientific and medical journals as well as numerous nutrition books for lay readers, and I am frequently called on by news programs to discuss issues related to nutrition, research, and other areas of modern medicine. My activities are reported to PCRM's membership of over 100,000 physician and lay members via PCRM's quarterly publication, *Good Medicine*, its Website, and regular mailings to its membership. I have personal knowledge of the facts set forth herein and, being over 18 years of age, am competent to testify as follows:

2. Beginning in January 2003, with no explanation whatsoever, federal law enforcement officials began subjecting me to detention and searches during international travel. Since that time, I have been detained, questioned, and/or searched at least seventeen times.

3. On January 4, 2003, U.S. Customs and Border Projection ("CBP") officials questioned, searched, and delayed me for 20 minutes upon my return from vacation abroad. Officials informed me that my passport had been flagged for scrutiny.

4. On May 10, 2003, CBP officials detained me at Toronto Pearson International Airport for 20 to 30 minutes, interrogated me about the nature of my work, and searched my belongings. At this time, I observed "Terrorist Organization Member - Caution" in large block letters on the CBP computer screen.

5. On June 3, 2003, CBP officials searched and questioned me at Dulles International Airport for 30 minutes upon my return from a vacation in Europe. Officials searched my baggage and removed, to make photocopies, a personal calendar and address book, correspondence, and a job applicant's résumé.

6. On July 16, 2003, CBP officials detained me in the screening room at Toronto Pearson International Airport for questioning for more than 20 minutes.

7. On August 28, 2003, CBP officials, including Officers Weimer and Hanna, delayed and screened me for 15 minutes at Toronto Pearson International Airport, at which time I again observed the "Terrorist Organization Member" notice on the CBP computer screen.

8. On January 3, 2004, CBP Officers Tweed and Grove stopped me at Dulles International Airport upon my return from the United Kingdom and searched my baggage.

9. On September 10, 2004, CBP Officer Berg marked a yellow line on my customs card upon my return from a trip to Belgium and France. Officer Greskovic then searched my baggage.

10. On January 1, 2005, CBP officials delayed me for 30 minutes upon my return from a trip to the United Kingdom. After Officer Messina marked a yellow line on Dr. Barnard's customs card, Officers Cromwell and Perlas searched my baggage.

11. On May 13, 2005, police officers briefly detained me as I checked in with Air France at Dulles International Airport, purportedly because my name appeared on a "no-fly" list.

12. On May 28, 2005, CBP officials delayed me for 12 minutes at Dulles International Airport upon my return from France. Officer Wilkinson marked a yellow line on my customs card and Officers Stuart and Greene, assisted by a third officer, checked my passport, after which Officer Stuart searched my baggage.

13. On August 27, 2005, CBP Officers Ulloa, Miller, Comas, and Brodie delayed, questioned, and searched me for 20 minutes at Dulles International Airport upon my return from Marseilles.

14. On September 22, 2005, while checking in at Dulles International Airport, I was told by United Airlines that my name matched the name of a person on the "no-fly" list. I later was sidelined for screening and inspected by Earle Biassey.

15. The aforementioned incidents occurred during each and every one of my travels abroad between January 2003 and September 2005.

16. On May 30, 2006, after returning from a trip to France and Croatia, my customs card was yellow-lined, and I was sent to stand in the line for baggage search. I was delayed for approximately 35 minutes.

17. On July 4, 2006, I arrived at Dulles International Airport after a trip to London. Officer George yellow-lined my customs card, after which Officer Clerkin inspected my baggage.

18. On July 14, 2006, while returning to the United States from Toronto, I was detained by officials at Toronto Pearson International Airport for two hours. Officer Mazzuoccolo screened my passport and escorted me to a waiting room, where Officers Watkins and Takak questioned me and asked me to fill out a form. They questioned me about my employment, the reasons for my trip, and any location(s) where I had stayed in Canada. They later left me in this room for an extended period while they awaited telephone authorization to release me.

19. On September 2, 2006, upon my arrival at Dulles International Airport from a vacation trip to Italy, I was initially screened by Officer Harvey, who did not yellow-line my customs card. After I left the screening area and began waiting for my luggage, Officer Harvey approached me, took my passport, and marked a large "C" on my customs card. He then left for several minutes, after which he returned with my passport and told me that I would need to undergo additional screening. I proceeded to the additional screening area where Officers Cromwell and Wilson searched my luggage. This process lasted approximately 40 minutes.

20. On January 6, 2007, upon my arrival at Dulles International Airport from a vacation in the United Kingdom, Officer Suarez conducted the initial passport screening and yellow-lined my customs card. After retrieving my checked luggage, I was sent to lane C for questioning. There, Officer McEvoy read through the computer record, left for several minutes, returned with my passport, and allowed me to leave.

21. Prior to January 2003, I experienced no such travel problems and had no reason to think that I was considered by law enforcement authorities to be anything but a law-abiding citizen—certainly not a "Terrorist Organization Member."

22. To the best of my knowledge I never have been questioned, followed, or monitored by law enforcement officials in any manner other than that described above.

23. No law enforcement agency has ever requested that I provide records, fingerprints, or DNA samples for the purposes of an investigation of any sort.

24. I know of no occasion in which my friends, family members, or colleagues were questioned or monitored as a result of an investigation of my activities.

25. In an effort to put an end to these inconvenient and embarrassing interruptions to my travel schedule, I, at various times, have requested records related to monitoring, surveillance, or investigation of my activities from a number of federal law enforcement authorities: U.S. Customs Service (January 9, 2003; August 8, 2003), Federal Bureau of Investigation ("FBI") (August 8, 2003; March 21, 2006), U.S. Customs and Border Protection (July 20, 2005), Immigration and Customs Enforcement ("ICE") (March 21, 2006), and Transportation Security Administration (July 13, 2006). A true and correct copy of a letter dated January 16, 2003, by U.S. Customs Service, acknowledging my request of January 9, 2003 is attached hereto as Exhibit 1. True and correct copies of the other requests are attached hereto as Exhibit 2 through Exhibit 7.

26. On May 16, 2006, I filed an administrative appeal with the Department of Homeland Security after Immigrations and Customs Enforcement ("ICE") took no action in response to my request of March 21, 2006. A true and correct copy of that appeal is attached hereto as Exhibit 8.

27. After I filed this lawsuit, I received ICE's letter dated August 5, 2006, in which ICE responded to my request and advised me that it had no responsive records.

28.    By letter dated August 10, 2006, I filed an administrative appeal of ICE's response and notified ICE of the filing of this lawsuit. A true and correct copy of that appeal is attached hereto as Exhibit 9.

29.    By letter dated June 29, 2006, FBI responded to my request of March 21, 2006, by providing 27 pages of records. A true and correct copy of that letter is attached hereto as Exhibit 10.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Washington, D.C., on March 15, 2007.

_____
Neal D. Barnard, M.D.