## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NEAL D. BARNARD, M.D.,    )
    )
Plaintiff,    )
    )
v.    )    Civ. No.: 06-1393 (CKK)
    )    ECF
DEPARTMENT OF HOMELAND    )
SECURITY,    )
    )
Defendant.    )
_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## RE: PLAINTIFF'S THIRD AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7(h) and 56.1, Defendant

respectfully moves for summary judgment in its favor, on the ground that no genuine issue of

material fact exists and Defendant is entitled to judgment as a matter of law.

In support of the said motion, Defendant refers the Court to the attached Statement of

Material Facts Not in Genuine Dispute, the Memorandum of Points and Authorities, the

Declarations of Reba McGinnis and Shari Suzuki and their respective accompanying exhibits.[1]

---

[1]In support of this Motion for Summary Judgment, Defendant intends to seek leave to file
the Declaration of Robert Jacksta for *in camera* review.

Dated June 25, 2008                    Respectfully  submitted,


      /s/     Jeffery A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


      /s/     Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney



      /s/     John C. Truong
JOHN C. TRUONG, D.C. BAR # 465901
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-307-0406

Attorneys for the Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NEAL D. BARNARD, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No.: 06-1393 (CKK) |
| | ) | ECF |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

In all, Defendant Department of Homeland Security found 343 pages of records responsive to Plaintiff Neal Barnard's Freedom of Information Act ("FOIA") request. Defendant released 19 pages of records in full, released 176 pages with redactions, and withheld 148 pages in their entirety.

As explained below, Defendant properly invoked FOIA exemptions (b)(2), (b)(4), (b)(6), (b)(7)(A), (b)(7)(C) and (b)(7)(E) to withhold the records (either in part or in full) because they contain information about on-going criminal investigations, information compiled for law enforcement purposes, information about law enforcement techniques, commercial and business information, and private or other identifying information of federal employees and third parties. Therefore, any release of such information would undermine other on-going law enforcement investigations and techniques, and improperly reveal private information. Accordingly, the Court should grant summary judgment in Defendant's favor and dismiss this case with prejudice.

II.     **Factual Background**

The chronological and factual background is set forth the Court's January 29, 2008 Memorandum Opinion and in Defendant's Statement of Material Facts Not in Genuine Dispute, concurrently filed herein.  However, a brief description of the facts here will provide context for Defendant's current Motion for Summary Judgment.

Plaintiff, Dr. Neal D. Barnard, submitted Freedom of Information Act ("FOIA") requests to both U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP").  McGinnis Decl. at ¶¶ 5, 7; Suzuki Decl. at ¶¶ 5.   Both ICE and CBP are components of the U.S. Department of Homeland Security ("DHS").  In response to Plaintiff's FOIA requests, CBP and ICE have conducted multiple searches for records.  McGinnis Decl. at ¶¶ 12, 19; Suzuki Decl. at ¶¶ 6, 10.  As a result of these searches, Defendant found and released the following number of pages of records to Plaintiff:

|  | **ICE (number of pages)** | **CBP (number of pages)** |
|---|---|---|
| Released in Full | 7 | 12 |
| Released in Part | 0 | 176 |
| Withheld in Full | 11<br><br>(this number includes the 7 pages at issue in the Court's January 29, 2008 Memorandum Opinion) | 137 |
| Total | 18 | 324 |

ICE withheld 11 pages of records in full pursuant to FOIA Exemptions (b)(2), (b)(7)(A), (b)(7)(C) and (b)(7)(E).  CBP withheld 137 pages of records in full pursuant to FOIA Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(E).  CBP released 176 pages of records in part

2

with information withheld pursuant to FOIA Exemptions (b)(2), (b)(4), (b)(6), (b)(7)(C) and (b)(7)(E).

In the parties' Joint Status Report filed on May 1, 2008, Plaintiff limited his challenge to Defendant's application of the following FOIA Exemptions:[2]

- (b)(6) – names of federal employees within Plaintiff's presence, positions of all federal employees and names of third parties within Plaintiff's presence.

- (b)(7)(A) – law enforcement techniques and procedures to the extent that exemption relies on criminal investigation into Plaintiff's activities.

- (b)(7)(C) – names of federal employees within Plaintiff's presence.

- (b)(7)(E)– inspection procedures witnessed by Plaintiff.

Subsequent to the May 1, 2008 Joint Status Report ("May 1, 2008 JSR"), CBP withdrew the application of FOIA Exemption (b)(7)(A) to all of the CBP records at issue, while ICE maintained the application of (b)(7)(A) to all the ICE records at issue.  Suzuki Decl. ¶ 14; McGinnis Decl. ¶ 24.

**III.    Summary Judgment Standard**

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party may be discharged by 'showing' – that is, point out to the [Court] – that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc., v. Pannill Knitting

_____

[2]On June 20, 2008, Plaintiff confirmed his challenge to Defendant's application of the FOIA exemptions, as set forth in the May 1, 2008 Joint Status Report.

Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, the Plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In Anderson, the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F. 2d 1236, 1242 (D.C. cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).

In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 447 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. See Cappibianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing

4

Mscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.   Hayden v. NSA, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. Of Army, 611 F.2d 738, 742 (9th Cir. 1980); Trans Union LLC v. FTC, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)).  see also Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), aff'd in part, rev'd in part, 276 F.3d 634 (D.C. Cir. 2002).

The declarations or affidavits submitted in FOIA cases are often referred to as a Vaughn index, after the case Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert denied, 415 U.S. 977, 94 S. Ct. 1564 (1974).  There is no set formula for a Vaughn index.  "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form."   "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  Delany, Midgail & Young, chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987); see also Keys v. United States Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987).  When the pleadings, supplemented by the affidavits, declarations or Vaughn Index show no genuine issue as to any material fact and the defendant is

5

entitled to judgment as a matter of law, summary judgment should be granted to the defendant.

Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).[3]

## IV.    Argument

Plaintiff alleges that "ICE and CBP have wrongfully redacted or withheld records requested by Dr. Barnard."  Third Amended Complaint at ¶ 23.  However, Plaintiff limited his challenge to Defendant's application to the following FOIA Exemptions:

- (b)(6) – names of federal employees within Plaintiff's presence, positions of all federal employees and names of third parties within Plaintiff's presence.

- (b)(7)(A) – law enforcement techniques and procedures to the extent that exemption relies on criminal investigation into Plaintiff's activities.

- (b)(7)(C) – names of federal employees within Plaintiff's presence.

- (b)(7)(E)– inspection procedures witnessed by Plaintiff.

See May 1, 2008 JRS.[4]

### A.    U.S. Immigration and Customs Enforcement (ICE)

#### 1.    Exemption (b)(7)(A)

At present, ICE is withholding four pages of  Significant Incident Reports under Exemption (b)(7)(A) that ICE recently processed.  McGinnis Decl. ¶¶ 19, 24.

Under Exemption (b)(7)(A), the agency may withhold from disclosure "records or

---

[3]Declarations of Reba McGinnis, Shari Suzuki, and Government Exhibits E and F constitute Defendant's Vaughn Index.

[4]Since Plaintiff is not challenging Defendant's invocation of Exemptions (b)(2) and (b)(4), Defendant will not address those two Exemptions here.  See May 1, 2008 JSR. Defendant reserves the right to defend the applications of these two Exemptions if Plaintiff decides to challenge them.

information compiled for law enforcement purposes, but only to the extent that the production. . .

could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. §

552(b)(7)(A); see Antonelli v. ATF, 2005 WL 3276222, *4 (D.D.C. Aug. 16, 2005) (Kollar-

Kotelly, J.). To properly invoke Exemption (b)(7)(A), the agency must demonstrate that

"'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that

are (3) pending or reasonably anticipated.'" Id. (quoting Mapother v. Dep't of Justice, 3 F.3d

1533, 1540 (D.C. Cir. 1993)). The D.C. Circuit has held that the application of FOIA Exemption

(b)(7)(A) may be used even after investigations have been closed, when the information at issue

could interfere with other ongoing investigations. Pinnavaia v. FBI, No. 04-5115, 2004 WL

2348155, at *1 (D.C. Cir. 2004) (explaining that although FBI San Diego Field Office's

investigation was closed, its New York Field Office records were part of investigatory files for

separate, ongoing investigations thus making the use of Exemption (b)(7)(A) proper).

　　In this case, Exemption (b)(7)(A) applies to protect law enforcement information of other

on-going investigations. McGinnis Decl. at ¶ 24. Although Plaintiff is no longer the subject of

the open and pending criminal investigation originally cited in the Fields Declaration, the

information related to Plaintiff in the four pages of the Significant Incident Reports contain

information related to other on-going investigations. Id. Therefore, the release of the Significant

Incident Reports would reasonably be expected to interfere with the other ongoing investigations

 McGinnis Decl. at ¶ 24. Under the law, Defendant has properly invoked FOIA Exemption

(b)(7)(A) to withhold information in the four (4) pages of Significant Incident Reports. See

Pinnavaia, 2004 WL 2348155, at *1.

### 2.    Exemption (b)(7)(C)

In addition to Exemption (b)(7)(A), ICE is also applying Exemption (b)(7)C to withhold

the four pages of the Significant Incident Reports in their entirety.  Exemption (b)(7)(C) protects

records compiled for law enforcement purposes when disclosure "could reasonably be expected

to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); see also

Manchester v. F.B.I., 2005 WL 3275802, *4 (D.D.C. Aug. 9, 2005).

In Western Center For Journalism v. I.R.S, the Court explained the requirement for

applying Exemption (b)(7)(C):

> [t]o evaluate the propriety of an Exemption 7(C) withholding, the Court must
> balance the privacy interests involved against the public interest in disclosure. See
> SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C.Cir.1991); United
> States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S.
> 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Under this calculus, "the only
> public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the
> citizens' right to be informed about what their government is up to.' " Davis v.
> Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir.1992) (quoting U.S. Dept. Of
> Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773).

116 F.Supp.2d 1, 12 (D.D.C. March 31, 2000) (Kollar-Kotelly, J.).

The "'strong interest' of individuals, whether they be suspects, witnesses, or

investigators, 'in not being associated unwarrantedly with alleged criminal activity'" has been

repeatedly recognized.  Fitzgibbon v. C.I.A., 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting Stern

v. F.B.I., 737 F.2d 84, 91-92 (D.C. Cir. 1984)).  Further the Fourth Circuit has articulated the

particular privacy interests of those individuals serving in a law enforcement capacity and stated

that:

> [o]ne who serves his state or nation as a career public servant is not thereby
> stripped of every vestige of personal privacy, even with respect to the discharge
> of his official duties.  Public identification of any of these individuals could

conceivably subject them to harassment and annoyance in the conduct of their
official duties and in their private lives.

Nix v. United States, 572 F.2d 998, 1006 (4th Cir. 1978).

Here, ICE has a substantial interest in protecting the information in the Significant

Incident Reports because they contain the names of ICE Special Agents.  McGinnis Decl. at ¶

25.  Indeed, these Special Agents are still performing official investigations of criminal activities

of other third parties.  Id.  Furthermore, these Special Agents have access to information

pertaining to other law enforcement activities.  Id.  Morever, ICE is invoking Exemption

(b)(7)(C) to withhold information pertaining to the names of third parties in the Significant

Incident Reports.  McGinnis Decl. at ¶ 25.

Therefore, any released information relating to these Special Agents or other third

parties, including their names, would subject them to unwarranted harassment.  McGinnis Decl.

at ¶ 25.

On the other hand, there is no discernable public interest for Plaintiff to have this type of

information.  Indeed, Plaintiff's Third Amended Complaint has not alleged that such a disclosure

would serve the public interest, let alone one that "focuses on 'the citizens right to be informed

about what their government is up to.'"  Davis 968 F.2d at 1282 (internal citations omitted).

Plaintiff is specifically interested in the "names of federal employees within Plaintiff's

presence."  See May 1, 2008 JSR.  Defendant has not found any case law supporting the notion

that law enforcement officials lose all privacy interest when they are "within Plaintiff's

presence." [5]  Under these facts, because Plaintiff has not articulated  any public interest to

_____

[5]In addition, it would be administratively impracticable if federal agencies were required
to cross-check lists of names of law enforcement officials that plaintiffs allege were in their

9

overcome a strong privacy interest in the withholding of the identities of these Special Agents and that of other third parties, the Court should find that Defendant has properly invoked FOIA Exemption (b)(7)(C) in the instant case.

### 3.    Exemption (b)(7)(E)

ICE is also invoking Exemption (b)(7)(E) to withhold four pages of the Significant Incident Reports in their entirety. Plaintiff is challenging this Exemption because he wants access to information about the "inspection procedures witnessed by Plaintiff." See May 1, 2008 JSR.

This Exemption allows an agency to withhold "records or information compiled for law enforcement purposes" the disclosure of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); Brunetti v. F.B.I., 357 F. Supp. 2d 97, 108 (D.D.C. 2004).

To properly invoke Exemption (b)(7)(E), an agency must show that the requested materials were compiled "for law enforcement purposes" and that disclosure of the materials would cause the harm that Exemption (b)(7)(E) is designed to prevent. See Tax Analysts v. IRS, 294 F.3d 71, 76-77 (D.C. Cir. 2002); see also Ctr. For Nat'l Sec. Studies v. INS, No. 87-2068, 1990 WL 236133 at *5 (D.D.C. Dec. 19, 1990) (upholding agency decision to protect final contingency plan in event of attack on United States, as one of several documents that agency withheld that "relate directly to . . . agency's law enforcement duties").

---

presence with names of law enforcement officials found in law enforcement records.

In this case, ICE asserted Exemption (b)(7)(E) to withhold law enforcement information contained in the "ICE Significant Incident Reports." McGinnis Decl. at ¶ 26. Specifically, ICE employed certain law enforcement techniques designed to compile information about Plaintiff in connection to the government's criminal investigation of Plaintiff and others. Id. These law enforcement techniques include cooperative arrangements between ICE and other agencies, and other inter-agency collaborations. Id. The disclosure of these techniques could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed. Id. In that vein, the release of this type of information on law enforcement techniques would negatively impact the future effectiveness of compiling necessary information for law enforcement purposes.

### 4.    The Non-Exempt Information Cannot Be Segregated.

The D.C. Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte*." Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. 552(b); Mead Data Cent., Inc. v. U.S. Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d at 261. However, the agency is not required "to provide such a detailed justification"

11

that the exempt material would effectively' be disclosed.  Id.  All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content."  Mead Data, 566 F.2d at 261, n.55.

       In this case, as explained in the McGinnis Declaration, Ms. McGinnis reviewed all eleven

pages of records responsive to Plaintiff's FOIA request "line-by-line."  McGinnis Decl. at ¶ 27.

Ms. McGinnis determined that seven pages could be released and ICE has done so.  Id.  She also

determined that the remaining four pages could not be released.  Id.

       After reviewing these pages "line-by-line," McGinnis determined that "no portion of

those four (4) were segregable" because both exempt and non-exempt information are

inextricably intertwined.  Id.  Furthermore, Ms. McGinnis explained that disclosing the "few

non-exempt words or phrases" that are dispersed throughout these four pages would be

meaningless and would not serve the underlying purposes of the FOIA.  Id.  In fact, the non-

exempt information represents an "extremely small portion" of the withheld records.  Id.

       Under these facts, the Court should find that the withheld information is not segregable

from the information deserving protection under the various FOIA exemptions discussed above.

       **B.      U.S. Customs and Border Protection (CBP)**

              **1.      Exemption (b)(6)**

CBP is applying Exemption (b)(6) to withhold certain information found in the 176 pages

of records released in part and in the 137 pages withheld in full.[6]  Plaintiff is challenging the

application of this Exemption to gain access to the "names of federal employees within

Plaintiff's presence, positions of all federal employees and names of third parties within

Plaintiff's presence."  See May 1, 208 JSR at p.2.

Exemption (b)(6) allows CBP to withhold information in  personnel and medical files and

similar files because releasing this type of information  would constitute a clearly unwarranted

invasion of personal privacy.   Exemption (b)(6) provides that "personnel and medical files and

similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy" may be exempted from disclosure under the FOIA.  See 5 U.S.C. § 552(b)(6).  With

regard to the meaning of the term "similar files," the Supreme Court has stated that Exemption

(b)(6) was "intended to cover detailed Government records on an individual which can be

identified as applying to that individual."  Dep't of State v. Wash. Post Co., 456 U.S. 595, 602

(1982).

To properly invoke Exemption (b)(6), the agency must show that the information applies

to a particular individual and is thus personal in nature.  N.Y. Times Co. v. NASA, 852 F.2d 602,

606 (D.C. Cir.1988). The Court must strike a proper "balance between the protection of an

individual's right to privacy and the preservation of the public's right to Government information

...."  Wash. Post Co., 456 U.S. at 599; Hornbostel v. Dep't of the Interior, 305 F.Supp.2d 21, 34

---

[6]      Exemption (b)(6) is invoked to withhold information in the following redacted
documents: Bates Stamp numbers 001-002, 008-009, 011, 013-031, 033-052, 054-068, 070, 072,
074, 075, 077, 079, 084, 143-163, 301-302, 304-313 (Gov. Exh. E); and in the following
withheld documents: Bates Stamp numbers 164-188, 190-199, 201-227, 231, 232, 234, 236, 253,
258-259, 261, 272-275, and 286-287 (Gov. Exh. F).  See Suzuki Decl. at ¶26.

(D.D.C.2003) (quoting Wash. Post Co., 456 U.S. at 599). The analysis of the "public interest" necessarily focuses on the core purpose for which the FOIA was enacted, that is, to "shed[ ] light on an agency's performance of its statutory duties ...." Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773(1989). Accordingly, if a document invades a third party's privacy and does not contain "official information" shedding light on government functions, it may be withheld under Exemption (b)(6); Id. at 774.

In this case, federal employees and other third parties have a right to have their names, positions, social security numbers and other identifying information withheld for personal privacy purposes. Suzuki Decl. at ¶ 26. On the other hand, Plaintiff has not, to date, demonstrated any public interest in the disclosure of the identifying information that would overcome the strong privacy interests of these individuals. Id. The privacy consideration here is to protect the identities of federal personnel and third parties, as individuals, from unnecessary, unofficial questioning, harassment and stigmatization. Id. Further, disclosing the information redacted or withheld pursuant to (b)(6) in this case does not shed light on how CBP performs its statutory duties. Id.

There is neither any legal nor factual basis to support Plaintiff's contention that these individuals somehow relinquished any privacy interests merely by being in Plaintiff's presence.[7] Accordingly, the Court should find that CBP properly invoked Exemption (b)(6) to withhold the names, telephone numbers, social security numbers and other identifying markings of CBP

_____

[7]As discussed above, it would be administratively impracticable if federal agencies were required to cross-check lists of names of law enforcement officials and third parties that Plaintiffs allege were in their presence with the names of law enforcement officials and the third parties found in the law enforcement records at issue.

personnel and third parties.

### 2.     Exemption (b)(7)(C)[8]

Similar to Exemption (b)(6), CBP is invoking Exemption (b)(7)(C) to withhold private information of CBP employees and third parties.[9]  Indeed, Plaintiff's Third Amended Complaint has not described any public interest that would outweigh these individuals' strong privacy interest in not having their names or other identifying information disclosed.  Suzuki Decl. ¶ 30.

The privacy consideration here is to protect federal personnel and third parties as individuals from unnecessary, unofficial questioning, harassment and stigmatization.  Further, disclosing the information redacted or withheld pursuant to (b)(7)(C) in this case does not shed light on how CBP performs its statutory duties.  Id.  More importantly, federal employees (including CBP employees) and other third parties did not somehow waive any privacy interests merely by being in Plaintiff's presence.  Under these circumstances, the Court should grant summary judgment in CPB's favor on this claim.

---

[8]The legal standard for applying Exemption (b)(7)(C) is set forth in Section IV.A.2 *supra*.

[9]This private information was withheld from the following redacted documents: Bates Stamp Bates Stamp numbers 001-002, 008-009, 011, 013-031, 033-052, 054-068, 070, 072, 074, 075, 077, 079, 084, 143-163, 301-302, 304-313 (Gov. Exh. E); and in the following withheld documents: Bates Stamp numbers 164-188, 190-199, 201-227, 231, 232, 234, 236, 253, 258-259, 261, 272-275, and 286-287 (Gov. Exh. F).  Id.

### 3.    Exemption (b)(7)(E)[10]

In this case, CBP is invoking (b)(7)(E) to withhold information[11] that would reveal CBP's investigative techniques, disclosure of which would reveal CBP examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers, which could be used by potential violators to develop countermeasures to evade detection, inspection and targeting methods.  Suzuki Decl. ¶ 31.  For example, Bates Stamp numbers 033-049, the TECS II Secondary Inspection printouts, contain the inspection results as reported by CBP Officers.  Id. (Government Exhibit E).

Public awareness of this operational information would aid those who seek to circumvent CBP operations and thus harm the agency's ability to enforce the laws of the U.S.  Id.  Any further detailed description of the information withheld pursuant to (b)(7)(E) would divulge to Plaintiff the agency's examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers, the very information that CBP seeks to protect.  Id.

Not only is Defendant asserting that the information found in Bates Stamp numbers 164-300 is exempt from disclosure under (b)(7)(E), but Defendant is also asserting that the documents in and of themselves are law enforcement techniques.  Id.  The documents are the means by which law enforcement activities are coordinated and reported.  Id.  They are protected

---

[10]The legal standard for applying Exemption (b)(7)(E) has been set forth in Section VI.A.3 *supra*.

[11] CPB is invoking Exemption (b)(7)(E) to withhold certain information in the following redacted documents: Bates Stamp numbers 001-003, 005-031, 033-052, 054-142, 302, 304-313 (Gov. Exh. E); and in the following withheld documents: Bates Stamp 164-300 (Gov. Exh. F).

by (b)(7)(E) because disclosure would reveal CBP targeting, examination and inspection procedures and intra and inter-agency coordination efforts. The release of this information would permit potential violators to understand the precise steps taken by CBP and allow them to develop countermeasures to evade CBP's detection, inspection and targeting methods. <u>Id</u>.

Furthermore, because Plaintiff happened to witness some of the techniques employed by CBP does not mean that the government is obligated to disclose such techniques and inspection procedures pursuant to the FOIA. There are many aspects of the law enforcement techniques and procedures at issue that Plaintiff may or may not be aware of, but the information should not be disclosed merely because an individual happened to witness the inspection procedure or technique. Although law enforcement techniques that are widely known may not be withheld under Exemption (b)(7)(E), Defendant is not attempting to withhold law enforcement techniques and inspection procedures that are publicly known. <u>See</u> Suzuki Decl. at ¶ 31. Even assuming that the techniques are widely known, courts have upheld the withholding of law enforcement techniques even when commonly known when disclosure could reduce or even nullify the effectiveness of such procedures. <u>Williams v. U.S. Dept. of Justice</u>, No. 02-2452, slip op. at 11-12 (D.D.C. Feb. 4, 2004) (protecting "serial numbers on bait money" because disclosing this aspect of this "technique would undercut its usefulness"), *reconsideration denied* (D.D.C. Mar. 10, 2004), *aff'd per curiam*, 171 F. App'x 857 (D.C. Cir. 2005). Therefore, under the law and facts here, the Court should find that Defendant properly applied Exemption (b)(7)(E).

Defendant applied both Exemptions "high (b)(2)" and (b)(7)(E) to withhold information on CBP's law enforcement techniques. Suzuki Decl. at ¶21, 31. Plaintiff, however, is not challenging Defendant's use of "high (b)(2)". <u>See</u> May 1, 2008 JSR. Therefore, even if the

Court were to find that Defendant has not properly applied Exemption (b)(7)(E) to this type of information, the information is nevertheless protected from disclosure under Exemption "high (b)(2)." [12]

### 4.     CBP's Withheld Documents Cannot Be Segregated.[13]

To the extent that there is any non-exempt information in Bates Stamp numbers 164-300 (the records withheld in full by CBP) (Government Exhibit F), the information cannot be segregated.  Suzuki Decl. at ¶ 31.  As explained in the Suzuki Declaration, Ms. Suzuki "reviewed the documents line-by-line" and determined that both the exempt and non-exempt information are "extricably intertwined."  Id. at ¶ 31, 32.  CBP also explained that the non-exempt information could not be disclosed without revealing the exempted information.  Id. at ¶32.  In any event, the few non-exempt words and phrases that are dispersed throughout the withheld records, if disclosed, would be meaningless and would not serve the purpose of FOIA--to open agency action to the light of public scrutiny.  Id. at ¶ 31.

---

[12]An agency may withhold information as "high 2" if it demonstrates that "(1) the withheld information is "predominantly internal" and (2) disclosure of the information would "significantly risk[] circumvention of agency regulations or statutes." Judicial Watch, Inc. v. U.S. Dept. of Commerce, 337 F. Supp2d at 165.  In light of Exemption 2's anti-circumvention purpose, public interest in the disclosure is legally irrelevant.  Instead, the focus is on whether disclosure will "benefit those attempting to violate the law and avoid detection."  Id.

Here, CBP is invoking Exemption "high (b)(2)" to protect information on law enforcement activities coordination and how they are reported.  Suzuki Decl. at ¶ 21. Furthermore, Defendant is also applying Exemption "high (b)(2)" to prevent disclosure of "CBP targeting, examination and inspection procedures."  Id.  Release of this type of information would allow potential violators to develop countermeasures to undermine these law enforcement procedures. Id.

[13]The legal standard for segregability is set forth in Section IV.A.4 supra.

**V.     Conclusion**

For the foregoing reasons, the Court should find that Defendant properly withheld

records and information pursuant to FOIA Exemptions (b)(6), (b)(7)(A), (b)(7)(C) and (b)(7)(E)

and that Defendant appropriately determined that the non-exempt information could not be

segregated from the properly exempt information.  On these grounds, the Court should grant

summary judgment in Defendant's favor and dismiss this case with prejudice.


Dated June 25, 2008                         Respectfully  submitted,


                              ____/s/____Jeffery A. Taylor_____
                              JEFFREY A. TAYLOR, D.C. BAR # 498610
                              United States Attorney


                              ____/s/_____Rudolph Contreras_____
                              RUDOLPH CONTRERAS, D.C. BAR #  434122
                              Assistant United States Attorney


                              ___/s/_____John C. Truong_____
                              JOHN C. TRUONG, D.C. BAR # 465901
                              Assistant United States Attorney
                              555 4th Street, N.W.
                              Washington, D.C. 20530
                              202-307-0406

                              Attorneys for the Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NEAL D. BARNARD, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No.: 06-1393 (CKK) |
| | ) | ECF |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER**

Upon consideration of Defendant's Motion for Summary Judgment, any Opposition thereto, and the entire record herein, it is this _____ day of _____, 2008,

ORDERED that Defendant's Motion for Summary Judgment be and is hereby GRANTED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED with prejudice.

SO ORDERED.

_____
U.S. District Judge