UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEAL D. BARNARD, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No.: 06-1393 (CKK) |
| ) | ECF |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Local Rules 7(h) and 56.1, Defendant respectfully submits the following Statement of Material Facts Not in Genuine Dispute:

1. By letter dated July 20, 2005, Plaintiff submitted a Freedom of Information Act ("FOIA") and Privacy Act ("PA") request to U.S. Customs and Border Protection (CBP) requesting "all records about me that are in IBIS or any other system used by the Bureau of Customs and Border Protection at any and all ports of entry to the United States."  Declaration of Reba McGinnis, ("McGinnis Decl.") at ¶ 5; Declaration of Shari Suzuki ( "Suzuki Decl.") at ¶ 5.

2. CBP erroneously processed Plaintiff's July 20, 2005, FOIA/PA request as a traveler redress complaint.  Suzuki Decl. ¶ 6.  Therefore, by letter dated August 15, 2005, CBP responded to Plaintiff stating that records responsive to his request fell under the purview of Immigration and Customs Enforcement ("ICE").[1]  (McGinnis Decl. ¶ 6).

---

[1] Both CBP and ICE are components of the U.S. Department of Homeland Security.

**Immigration and Customs Enforcement (ICE)**

3.      By letter dated March 21, 2006, Plaintiff submitted a FOIA/PA request to ICE requesting "any records created from January 1, 2002 to the present that were prepared, received, transmitted, collected and/or maintained by Immigration and Customs Enforcement relating to the following: … [fifteen (15) specifically enumerated areas]." (McGinnis Decl. ¶ 7).

4.      By letter dated August 5, 2006, ICE responded to Plaintiff's March 21, 2006, FOIA request, advising Plaintiff that ICE had no records responsive to his request. McGinnis Decl. ¶ 11.

5.      On August 7, 2006, Plaintiff filed a Complaint with this Court for not having received a timely response. Dkt. No. 1.[2]

6.      By letter dated November 16, 2006, ICE responded to Plaintiff with a supplemental response. The letter informed Plaintiff that ICE determined that any records responsive to his request were exempt from disclosure, in their entirety, pursuant to Exemptions (b)(2), (b)(7)(A), (b)(7)(C) and (b)(7)(E) of the FOIA. McGinnis Decl. ¶ 12.

7.      On February 20, 2007, Defendant filed a motion for summary judgment in this matter. See Dkt. No. 14. In support of that motion, ICE submitted the Marshall Fields Declaration. McGinnis Decl. ¶ 14 (Government Exhibit 1).

8.      On January 8, 2008, the Court ordered ICE to submit six (6) pages of records at issue in unredacted form to Chambers for an *in camera* review. See Jan. 8, 2008 Minute Order.

9.      On January 23, 2008, ICE submitted a total of seven (7) pages of records to the Court for

---

[2] Plaintiff's Complaint was amended twice on October 10, 2006 and June 9, 2008. (Dkt. Nos. 6 and 37, respectively).

the *in camera* review along with a declaration from Gloria Marshall.  McGinnis Decl. ¶ 16 (Government Exhibit 2); see also Dkt. No. 25 (explaining that in gathering the documents for in *camera review*, ICE found another page of records and therefore, making it seven (7) pages of records in total).

10.     On January 29, 2008, the Court issued a Memorandum Opinion granting Defendant's motion for summary judgment. (Dkt. No. 27).

11.     On February 1, 2008, ICE submitted a second declaration from Gloria Marshall ("Second Marshall Declaration") explaining, *inter alia*, that it had come to her attention that CBP might not have processed Plaintiff's July 20, 2005, letter as a FOIA request; that ICE followed up on this suspicion and consulted with CBP; and that after further review, CBP confirmed that indeed it did not process Plaintiff's July 2005 letter as a FOIA request under its FOIA procedures. McGinnis Decl. at ¶ 18 (Government's Exhibit 3); see also Suzuki Decl . at ¶ 6.

12.     The Second Marshall Declaration further indicated that Plaintiff was no longer the subject of the open and pending criminal investigation originally cited in the Fields Declaration. The Second Marshall Declaration also explained that, although Plaintiff was no longer the target of any investigation, the disclosure of information related to Plaintiff could have a negative impact on other ongoing investigations.  Therefore, the Second Marshall Declaration concluded that FOIA Exemption (b)(7)(A) was still applicable to the seven (7) pages of ICE records that were then at issue in the Court's January 29, 2008 Memorandum Opinion.  McGinnis Decl. ¶ 18.

13.     Upon ICE's continuing review of this matter, ICE has determined that some of the ICE records that were previously withheld contained specific references to additional records. McGinnis Decl. ¶ 19.

14.     In order to ensure that the referenced records existed and that they had not been previously overlooked, ICE made inquiries to the local ICE Special Agent in Charge ("SAC") office, which ICE believed would have likely maintained such records. Id. On June 5, 2008, the local SAC office conducted a search for the referenced records and, as a result of that search, located the referenced records as well as additional records relating to Plaintiff's FOIA request. Id.

15.     In sum, a total of twenty-five (25) pages of records that were not previously accounted for were located. It was determined that eleven (11) pages of these records were ICE records and fourteen (14) pages of the records belonged to CBP. The fourteen (14) CBP records were referred to CBP on June 6, 2008. The eleven (11) ICE records were processed by ICE under the FOIA. Id.

16.     By letter dated June 19, 2008, ICE informed plaintiff that it had located eleven (11) additional pages of records responsive to Plaintiff's FOIA requests. McGinnis Decl. at ¶ 19 (Government Exhibit 4). The letter further informed Plaintiff that seven (7) pages of records were being released in their entirety and four (4) pages of records were being withheld in their entirety pursuant to FOIA Exemptions (b)(2), (b)(7)(A), (b)(7)(C), and (b)(7)(E). Id.

### U.S. Customs and Border Protection

17.     Once CBP discovered that Plaintiff's July 20, 2005 FOIA request was processed as a traveler redress complaint and not under the FOIA, (see Para. 3 *supra*), CBP personnel in the Office of Field Operations (OFO) conducted an initial search of the Treasury Enforcement Communications System (TECS) on January 17, 2008, and initially found 82 pages of records responsive to Plaintiff's request. The following search terms were used: "Neal," "Barnard,"

"Bernard," and "07/10/53."  Suzuki Decl. at ¶ 6.

18.     CBP processed the 82 pages of responsive records and released 80 pages with redactions to Plaintiff on February 5, 2008, *withheld* one (1) page in full and *released* one (1) page in full. Suzuki Decl. at ¶ 8 (Government's Exhibit A).

19.     Thereafter, CBP then discovered one (1) additional TECS record and released that document to Plaintiff with redactions on April 1, 2008.  Suzuki Decl. at ¶ 9 (Government's Exhibit B).

20.     In addition to searching TECS, CBP conducted searches of the Automated Targeting System - Passenger (ATS-P) as well as records maintained at CBP Headquarters, and the Ports of Entry for Toronto and Washington-Dulles.  Suzuki Decl. ¶ 10.

21.     The ATS-P was searched by CBP personnel at Headquarters on January 29, 2008.  Id. Upon review of the records that resulted from the January 29, 2008 search of ATS-P, CBP personnel at Headquarters conducted an additional search on April 8, 2008, to ensure that the search was comprehensive.  Id.  The following search terms were used:  "Neal," "Barnard," "Bernard," and "07/10/1953."  Id.

22.     The port of Washington-Dulles records were searched on February 15, 2008, and the port of Toronto records were searched on April 1, 2008.  Id.  No records were found at the port of Washington-Dulles and five (5) pages of records were found at the port of Toronto.  Id.

23.     As a result of these searches of ATS-P, CBP Headquarters and ports of Toronto and Washington-Dulles, CBP located an additional 229 pages of responsive records.  Suzuki Decl. at ¶ 12.

24.      CBP processed the 229 pages of responsive records and on April 17, 2008, provided a

final release of records to Plaintiff. Id. Of the 229 pages of responsive records, 82 pages were provided with redactions, 11 pages were released in full, and 136 pages were withheld in full. Suzuki Decl. at ¶ 12 (Government's Exhibit C).

25.    On April 23, 2008, CBP provided to Plaintiff two Vaughn indices explaining the exemptions applied to the records released in part and withheld in full. Suzuki Decl. at ¶ 13.

26.    On June 4, 2008, upon further review, CBP decided to no longer invoke FOIA Exemption (b)(7)(A). However, this decision did not result in any release of additional documents to Plaintiff. As a result, CBP provided to Plaintiff two revised Vaughn indices reflecting this change. Suzuki Decl. at ¶ 14.

27.    As explained in Paragraph 15 *supra*, on June 6, 2008, ICE referred to CBP 14 pages of records for review. Based on this referral, CBP identified thirteen (13) pages that are responsive to Plaintiff's FOIA request. Suzuki Decl. at ¶ 15. The information contained in these TECS records is substantively the same as those previously released to Plaintiff at Bates Stamp Numbers 25-26, 28-29. On June 16, 2008, CBP provided Plaintiff with 13 pages of records with redactions. Suzuki Decl. at ¶ 15 (Government's Exhibit D). One page of records was deemed non-responsive. Suzuki Decl. at ¶15 n.2.

28.    On June 20, 2008, CBP provided to Plaintiff two final and ominibus Vaughn Indices accounting for all documents processed to date. The first omnibus Vaughn Index (attached as Government's Exhibit E) accounts for records released with redactions. Suzuki Decl. at ¶ 16. The second omnibus Vaughn Index (attached as Government's Exhibit F) accounts for all of the records withheld in full. Id.

29.     In total, CBP released to Plaintiff 176 pages of records with redactions (Government's Exhibit E) and has withheld in full 137 pages of records (Government's Exhibit F) pursuant to FOIA exemptions (b)(2), (b)(4), (b)(6), (b)(7)(C) and (b)(7)(E).  Suzuki Decl. at ¶ 17.

30.     In the parties' May 1, 2008 Joint Status Report (Dkt. 34), Plaintiff agreed to limit his challenge to Defendant's application of the following FOIA exemptions:

- (b)(6) – names of federal employees within Plaintiff's presence, positions of all federal employees and names of third parties within Plaintiff's presence.

- (b)(7)(A) – law enforcement techniques and procedures to the extent that exemption relies on criminal investigation into Plaintiff's activities

- (b)(7)(C) – names of federal employees within Plaintiff's presence

- (b)(7)(E)– inspection procedures witnessed by Plaintiff

31.     Plaintiff further indicated that he intends to seek reconsideration of this Court's January 29, 2008, Memorandum Opinion granting summary judgment in Defendant's favor.[3]  (Dkt. 34).

Dated June 25, 2008                    Respectfully  submitted,

    /s/     Jeffery A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

    /s/     Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

---

[3] The Court's January 29, 2008 Memorandum Opinion only addressed the documents withheld by ICE. See Dkt. No. 27.  At that time, the CPB records were not at issue.

7

      /s/     John C. Truong
JOHN C. TRUONG, D.C. BAR # 465901
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-307-0406

Attorneys for the Defendant