IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Neal D. Barnard, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 06-CV-1393 (CKK) |
| ) | |
| U.S. Department of Homeland Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## DECLARATION OF REBA A. MCGINNIS

### I. INTRODUCTION

1. I, Reba A. McGinnis, make the following statement, under penalty of perjury pertinent to the above styled and numbered cause, and, being over 18 years of age, I am fully competent to make the statements contained in this declaration.

2. I am the Unit Chief of the Information Disclosure Unit (IDU), Mission Support Division, Office of Investigations (OI), GS-15, at U.S. Immigration and Customs Enforcement (ICE) within the U.S. Department of Homeland Security (DHS). I have held the position of Unit Chief since September 2007.[1] My office is located at 425 I Street, NW, Washington, DC 20536.

3. As the Unit Chief of IDU, my official duties and responsibilities include the general management, oversight, and supervision of the IDU which includes the Freedom of Information Act/Privacy Act (FOIA/PA) Section. The FOIA/PA Section processes the FOIA/PA requests received by OI and has oversight of the FOIA/PA functions in the twenty-six (26) Offices of the Special Agents in Charge of OI, within ICE.

---
[1] I concurrently held the title of Unit Chief with Gloria L. Marshall from approximately September 2007 – February 2008.

4.  I am familiar with the facts of this case. The statements contained in this Declaration are based on my personal knowledge and experience, review of documents kept in the course of business, and information conveyed to me in the course of my official duties.

## II. BACKGROUND

5.  By letter dated July 20, 2005, plaintiff submitted a FOIA/PA request to U.S. Customs and Border Protection (CBP) requesting all records about him.

6.  By letter dated August 15, 2005, CBP responded to plaintiff stating that records responsive to his request fell under the purview of ICE.

7.  By letter dated March 21, 2006, plaintiff submitted a FOIA/PA request to ICE requesting "any records created from January 1, 2002 to the present that were prepared, received, transmitted, collected and/or maintained by Immigration and Customs Enforcement relating to the following: ... [fifteen (15) specifically enumerated areas]."

8.  ICE acknowledged plaintiff's March 21, 2006, FOIA request in a letter dated May 1, 2006.

9.  By letter dated May 16, 2006, plaintiff submitted an appeal to the DHS Privacy Office appealing ICE's denial, through inaction, of plaintiff's FOIA request. In that letter, plaintiff acknowledged receipt of the ICE May 1, 2006, acknowledgement letter.

10. By letter dated June 28, 2006, ICE believes that the DHS Privacy Office responded to plaintiff's FOIA appeal (As noted in the declaration submitted by Marshall H. Fields, Jr. (Fields Declaration) ICE has an unsigned copy of this letter that ICE understands was sent to plaintiff. *See* Government's Exhibit 1 at ¶ 10; Dkt. No. 14.). The DHS Privacy Office letter stated: "[b]y copy of this letter, I am informing ICE FOIA personnel of your appeal. The delay you have encountered is largely a result of resource constraints, which ICE is working very hard to correct.

Until ICE responds to your initial request, however, my office cannot take further action on your appeal as we do not have the staff resources ourselves to conduct initial record reviews for DHS components."

11. By letter dated August 5, 2006, ICE responded to plaintiff's March 21, 2006, FOIA request, advising plaintiff that ICE had no records responsive to his request.

12. By letter dated November 16, 2006, ICE responded to plaintiff with a supplemental response. The letter informed plaintiff that ICE determined that any records responsive to his request were exempt from disclosure, in their entirety, pursuant to exemptions (b)(2), (b)(7)(A), (b)(7)(C) and (b)(7)(E) of the FOIA. ICE reiterated plaintiff's right to appeal ICE's denial of his request.

13. By letter dated November 30, 2006, plaintiff appealed ICE's, November 16, 2006, supplemental response.

14. On February 20, 2007, Defendant filed a motion for summary judgment in this matter. In support of that motion, ICE submitted the Fields Declaration.

15. On January 8, 2008, the Court issued a Minute Order, which required ICE to submit six (6) pages of records unredacted to Chambers by or before January 14, 2008, for an *in camera* review. On January 14, 2008, ICE requested an extension of that deadline until January 23, 2008. By Minute Order dated January 15, 2008, the Court granted the request for an extension.

16. On January 23, 2008, ICE submitted seven (7) pages of unredacted records to the Court for the *in camera* review along with a declaration that was signed by Gloria Marshall. *See* Government's Exhibit 2 at ¶ 5; Dkt. No. 25 (explaining that in gathering the documents for *in camera* review, it came to ICE's attention that there were actually seven (7) pages of records, not six (6)).

17.     On January 29, 2008, the Court issued a Memorandum Opinion granting defendant's motion for summary judgment as it pertains to records withheld by ICE.

18.     On February 1, 2008, ICE submitted a second declaration from Gloria Marshall indicating, among other things, that it had come to her attention that CBP might not have processed plaintiff's July 20, 2005, letter as a FOIA request; that ICE followed up on this suspicion and consulted with CBP; and that after further review, CBP confirmed that indeed it did not process plaintiff's July 2005 letter as a FOIA request under its FOIA procedures. *See* Government's Exhibit 3; Dkt. No. 29. The declaration further indicated that plaintiff was no longer the subject of the open and pending criminal investigation originally cited in the Fields Declaration; that disclosure of information related to plaintiff could have a negative impact on other ongoing investigations; and that FOIA exemption (b)(7)(A) was still applicable to the seven (7) pages of ICE records that were submitted to the Court for *in camera* review. Id.

### III. ADDITIONAL RECORDS

19.     Upon ICE's continuing review of this matter, ICE has determined that some of the ICE records that were previously withheld contained specific references to other documents. In order to ensure that the referenced documents existed and that they had not been previously overlooked, ICE made inquiries to the local ICE Special Agent in Charge office, which ICE believed would have likely maintained such records. On June 5, 2008, the local Special Agent in Charge office conducted a search for the referenced records and, as a result of that search, located the referenced records as well as additional records relating to plaintiff's FOIA requests. In sum, a total of twenty-five (25) pages of records that were not previously accounted for were located. It was determined that eleven (11) pages of these records were ICE records and fourteen (14) pages of the records belonged to CBP. The fourteen (14) pages of CBP records were

referred to CBP on June 6, 2008. The eleven (11) pages of ICE records were processed by ICE under the FOIA. By letter dated June 19, 2008, ICE informed plaintiff that it had located eleven (11) additional pages of ICE records responsive to plaintiff's FOIA requests. *See* Government's Exhibit 4. The letter further informed plaintiff that seven (7) pages of records were being released in their entirety (three (3) of which were duplicates) and four (4) pages of records were being withheld in their entirety pursuant to FOIA Exemptions (b)(2), (b)(7)(A), (b)(7)(C), and (b)(7)(E). Id.

### IV. FOIA EXEMPTIONS APPLICABLE TO THE ADDITIONAL ICE RECORDS

20.    Exemption (b)(2) - 5 U.S.C. § 552(b)(2): This exemption allows for the withholding from mandatory disclosure records or information that relate solely to the internal personnel rules and practices of an agency. This exemption encompasses both internal matters of a relatively trivial nature, low (b)(2), the disclosure of which would place an administrative burden on the agency to process and internal matters of a far more substantial nature, high (b)(2), the disclosure of which would risk circumvention of a legal requirement. ICE used low (b)(2) of this exemption to withhold exempted information contained in the newly discovered ICE records.

21.    Low (b)(2): ICE asserted this FOIA exemption with respect to internal agency codes that appear on "ICE Significant Incident Reports" that are responsive to plaintiff's request. Specifically, ICE exempted from disclosure the following types of codes that appeared in those reports: case numbers; incident numbers; and other administrative codes. The codes appearing on the "ICE Significant Incident Reports" are for the purpose of indexing, storing, locating, retrieving and distributing information in ICE investigative files. While these codes have internal significance, they are trivial in nature and bear no relation to the substantive contents of the records. Therefore, the disclosure of these codes to the public would not assist the public in

understanding how the agency is carrying out its statutory responsibilities. ICE also withheld the telephone numbers of government personnel, including ICE Special Agents, and fax numbers contained in the "ICE Significant Incident Reports." Telephone and fax numbers relate to the internal practices of the agency in that they are to be utilized by agency personnel in the performance of their duties. The disclosure of these numbers would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Moreover, release of the direct telephone numbers of government personnel could subject them to harassing telephone calls, which would impair their ability to conduct agency business. Accordingly, these codes and telephone and fax numbers have been withheld under the "low (b)(2)" standard.

22. <u>Exemption (b)(7) – 5 U.S.C. § 552(b)(7) – Threshold</u>: To successfully defend the assertion of any (b)(7) exemption as a basis for withholding records and information, an agency must demonstrate that the matters so withheld were compiled for law enforcement purposes.

23. The information for which FOIA exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. ICE is the largest investigative arm of DHS, and is responsible for identifying and eliminating vulnerabilities within the nation's borders in order to provide greater security to the United States and prevent future terrorist attacks; and establishing and maintaining economic transportation and infrastructure security. ICE is tasked with preventing any activities that threaten national security and public safety by targeting the people, money and materials that support illegal enterprises.

24. <u>Exemption (b)(7)(A) – 5 U.S.C. § 552(b)(7)(A)</u>: FOIA Exemption (b)(7)(A) allows for the withholding of "records or information compiled for law enforcement purposes" to the extent that their release "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A). The Second Declaration of Gloria Marshall indicated that she received

official notification on February 1, 2008, that plaintiff was no longer the subject of the open and pending criminal investigation originally cited in the Fields Declaration and that FOIA exemption (b)(7)(A) was no longer applicable with respect to that investigation. *See* Government's Exhibit 3 at ¶ 7; Dkt. No. 29. She further indicated that she had been informed that disclosure of information related to plaintiff could have a negative impact on other ongoing investigations and, therefore, (b)(7)(A) remained applicable to the seven (7) pages of ICE records that were submitted to the Court for *in camera* review on January 23, 2008. Id. Similarly, I have been informed that there is information related to plaintiff contained in the "ICE Significant Incident Reports" that is also relevant to other ongoing investigations. It has been conveyed to me that the release of such information could have a negative impact on the other ongoing investigations and, therefore, the release of such information could reasonably be expected to interfere with those investigations. Accordingly, FOIA exemption (b)(7)(A) is applicable to the "ICE Significant Incident Reports."

25. <u>Exemption (b)(7)(C) – 5 U.S.C. § 552(b)(7)(C)</u>: This exemption was applied to protect from disclosure information compiled for law enforcement purposes that, if released to the public, could constitute an unwarranted invasion of personal privacy. This exemption allows the withholding of information that identifies agency employees and third parties in law enforcement records. ICE withheld the names of government employees, including ICE Special Agents, appearing in the "ICE Significant Incident Reports." Special Agents handle a myriad of tasks relating to official investigations into the criminal activities of third parties. They were, and still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of unwarranted harassment. There is no public interest to be served by releasing the identities of Special Agents. ICE also used this

exemption to withhold the names of third parties appearing in the "ICE Significant Incident Reports." Third parties who were, and possibly still are, subjects of investigations or who provided information or other cooperation to the government could be humiliated by being identified in connection with a criminal investigation; they could become targets of harassment or physical danger. Also release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of third parties.

26. <u>Exemption (b)(7)(E) – 5 U.S.C. § 552(b)(7)(E)</u>: This exemption was asserted to protect from disclosure law enforcement information contained in the "ICE Significant Incident Reports," that if released would disclose techniques, procedures and guidelines for law enforcement investigations or prosecutions, where such disclosures could reasonably be expected to risk circumvention of law. ICE employed certain law enforcement techniques designed to obtain information about plaintiff in furtherance of the government's criminal investigation of plaintiff. These techniques involved cooperative arrangements between ICE and other agencies and inter-agency communications prompting specific actions on the part of agency employees. The disclosure of these techniques could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed in investigations where they may be targets and identify such techniques as they are being employed. Furthermore, release of this information would negatively impact the future effectiveness of these investigative techniques.

## V. SEGREGABILITY

27. I reviewed the eleven (11) pages of additional ICE records determined to be responsive to plaintiff's FOIA request, line-by-line, to identify information exempt from disclosure or for

which a discretionary waiver of exemption could be applied. I have determined that seven (7) pages of the records (three (3) of which were duplicates) can be released in their entirety and that four (4) pages of the records were determined to be exempt from release in their entirety. Because the exempt information in the four (4) pages of withheld records was so inextricably intertwined with the non-exempt information, I determined that no portions of those four (4) pages of records were reasonably segregable. The few non-exempt words and phrases that are dispersed throughout the records withheld in full, if disclosed, would be meaningless and would not serve the purpose of FOIA--to open agency action to the light of public scrutiny. Further, the non-exempt information constitutes an extremely small proportion of the information contained in the records.

## VI. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 24th day of June, 2008.

Reba A. McGinnis
Chief, Information Disclosure Unit
Mission Support Division
Office of Investigations