## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

NEAL D. BARNARD, M.D.,

          Plaintiff,

      v.

DEPARTMENT OF HOMELAND SECURITY,

          Defendant.
_____

Case No.: 06-CV-1393 (CKK)

### PLAINTIFF'S MOTION FOR RECONSIDERATION, SECOND MOTION FOR SUMMARY JUDGMENT, AND REQUEST FOR ORAL ARGUMENT

Pursuant to FED. R. CIV. P. 56, FED. R. CIV. P. 60, and Local Rules 7(h) and 56.1, Plaintiff hereby moves for reconsideration, moves for summary judgment, and requests oral argument on the foregoing motions. In support of the motion, Plaintiff refers the Court to the attached Memorandum of Points and Authorities, the Statement of Material Facts as to Which There is No Genuine Issue, the Declaration of Neal D. Barnard, M.D., and the accompanying exhibits. A proposed order consistent with the relief sought is also attached.

Respectfully submitted,

/s/ Daniel Kinburn

_____

Daniel Kinburn
PHYSICIANS COMMITTEE FOR
 RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W., Suite 400
Washington, D.C. 20016
Attorney for Plaintiff
(202) 686-2210 ext. 380
(202) 686-2155 (fax)

Dated: June 25, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NEAL D. BARNARD, M.D., | ) |
| Plaintiff, | ) |
| v. | )    Case No.:  06-CV-1393 (CKK) |
| DEPARTMENT OF HOMELAND SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION, SECOND MOTION FOR SUMMARY JUDGMENT, AND REQUEST FOR ORAL ARGUMENT

### I.    INTRODUCTION

This memorandum is submitted in support of Plaintiff's Motion for Reconsideration and Second Motion for Summary Judgment.  Plaintiff Neal D. Barnard, M.D., seeks reconsideration of this Court's January 29, 2008 judgment holding that Defendant Department of Homeland Security, through Immigration and Customs Enforcement ("ICE"), properly withheld as exempt in their entirety 7 pages of records responsive to Dr. Barnard's request to ICE under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a (collectively "FOIA/PA").  The Court based its decision, in part, on Defendant's assertion that Dr. Barnard was the subject of an ongoing criminal investigation, and, as a result, certain FOIA exemptions allowed Defendant to withhold the records.  Newly discovered evidence, made available less than a week after the Court's ruling, demonstrates that Dr. Barnard is not the subject of a criminal investigation.  Moreover, the inherent unreliability of Defendant's declarations calls

into question all of the other FOIA exemptions invoked by Defendant.  For these reasons, Dr.

Barnard seeks reconsideration of the Court's decision.

The Court's ruling was also premised on Defendant's sworn statements that these 7

withheld pages were the only documents responsive to Dr. Barnard's FOIA/PA requests to

Defendant.  After the Court's ruling, Defendant made a series of admissions that its statements to

the Court prior to the ruling were factually false, and that, in truth and in fact, Defendant had far

more documents responsive to Dr. Barnard's requests.  Since this Court's ruling, Defendant has

provided 7 additional ICE pages and withheld in their entirety another 4 ICE pages responsive to

Dr. Barnard's request to ICE.  Defendant also has provided 176 redacted pages and withheld in

their entirety another 137 pages responsive to his earlier FOIA/PA request to U.S. Customs and

Border Protection ("CBP").  Defendant alleges that portions of these documents are exempt from

disclosure in accordance with certain FOIA exemptions.  Dr. Barnard challenges the invocations

of these exemptions because Defendant has failed to narrowly construe them.  Among other

things, Defendant attempts to withhold information that is either publicly available and/or

already known to Dr. Barnard.  Furthermore, for the records withheld in their entirety, Defendant

has failed to demonstrate that any or all exempt portions of the withheld records could not be

segregated from the non-exempt portions.  Accordingly, this Court should grant summary

judgment in Plaintiff's favor, enter an order mandating Defendant to provide the requested

records, and deny Defendant's motion for summary judgment.

This Court's January 29, 2008 judgment left intact Dr. Barnard's claim under the Privacy

Act regarding his FOIA/PA request to ICE.  As set forth below, Defendant has violated the

Privacy Act with respect to Dr. Barnard's FOIA/PA requests to both ICE and CBP by

withholding responsive records without citing a single Privacy Act exemption.  Therefore,

Defendant must release, in their entirety, all records requested from both ICE and CBP.

## II.    STATEMENT OF FACTS

Neal Barnard, M.D., is the president and founder of the Physicians Committee for

Responsible Medicine ("PCRM"), a nonprofit public charity that advocates for preventive

medicine through better nutrition and promotes more effective, ethical, and compassionate

scientific research.  (Barnard Declaration ¶ 1.)  Dr. Barnard is the author of several dozen

publications in scientific and medical journals as well as numerous nutrition books for lay

readers, and he is frequently called on by news programs to discuss issues related to nutrition,

research, and other areas of modern medicine.  (*Id.*)  His activities are reported to PCRM's

membership of over 100,000 physician and lay members via PCRM's quarterly publication,

*Good Medicine*, its Website, and regular mailings to its membership.  (*Id.*)

Beginning on January 4, 2003, with no explanation whatsoever, federal law enforcement

officials began subjecting Dr. Barnard to detention and searches during his international travels.

(*Id.* ¶ 2.)  From January 2003 until January 2007, Dr. Barnard was detained, questioned, and/or

searched on at least seventeen occasions before or after international trips.  (*See id.* ¶¶ 2–20.)  Dr.

Barnard has been detained for up to two hours, interrogated about his work, and subjected to

searches of his belongings.  (*Id.* ¶¶ 4–5, 8–10, 12–13, 16–19.)  On at least two occasions, Dr.

Barnard observed "Terrorist Organization Member" in large block letters, within sight of both

Dr. Barnard and others, on the computer screen.  (*Id.* ¶¶ 4, 7.)  Government officials also told Dr.

Barnard that his name was on a "no fly" list.  (*Id.* ¶¶ 11, 14.)  Dr. Barnard has never been offered

an explanation for these detentions, nor has he been informed what he can do to stop them from

recurring.  (*Id.* ¶¶ 21–24.)

In an effort to put an end to these inconvenient and embarrassing interruptions to his travel schedule, Dr. Barnard, at various times, sought information pertaining to monitoring, surveillance, or investigation of his activities from a number of federal law enforcement authorities: CBP's predecessor, U.S. Customs Service (January 9, 2003; August 8, 2003); Federal Bureau of Investigation ("FBI") (August 8, 2003; March 21, 2006); CBP (July 20, 2005); ICE (March 21, 2006); and Transportation Security Administration (July 13, 2006). (*Id.* ¶ 25.) By letter dated January 16, 2003, and in response to Dr. Barnard's request of January 9, 2003, U.S. Customs Service informed Dr. Barnard that it had searched the Treasury Enforcement Communications System ("TECS") and identified two possible reasons for the change in "the routine nature of [his] Customs processing." (Barnard Declaration Ex. 1.) Customs cited both an "elevated level of scrutiny" due to the terrorist attacks of September 11, 2001, and a "random selection process that is directly based on travel frequency." (*Id.*) Customs did not report any ongoing criminal investigation of Dr. Barnard. (*See id.*)

On July 20, 2005, Dr. Barnard sent to Defendant a clearly-designated FOIA/PA request seeking from CBP documents that would explain his travel difficulties. (Barnard Declaration ¶ 25; Barnard Declaration Ex. 2.) By letter dated August 15, 2005, CBP advised that ICE owned and maintained the requested records and that Dr. Barnard should contact that agency. (*See* Barnard Declaration Ex. 4.) Defendant's response did not provide any records maintained by CBP, nor did it advise Dr. Barnard of his rights to appeal CBP's response under FOIA and the Privacy Act. (*See id.*) Taking Defendant's response at face value, Dr. Barnard did not further pursue his FOIA/PA request with CBP. (Barnard Declaration ¶ 26.) Defendant now admits that despite the request's unequivocal self-designation as a "PRIVACY ACT/FOI ACT REQUEST"

and its citations of relevant statutory provisions (*see* Barnard Declaration Ex. 2), Defendant did

not process Dr. Barnard's FOIA/PA request under the FOIA. (*See* Def. Mot. Stay, at 1–2.)

On March 21, 2006, as directed by CBP, Dr. Barnard filed a FOIA/PA request with ICE

for records relating to any monitoring, surveillance, observation, questioning, interrogation,

and/or investigation of his activities.  (*See* Barnard Declaration ¶ 25; Barnard Ex. 3.)  On May

16, 2006, Dr. Barnard filed an appeal with Defendant after ICE took no action regarding his

request.  (*See* Barnard Declaration ¶ 27.)  Defendant then acknowledged the delay and notified

him of his right to seek judicial review.  (*See* Def. Mot. for Summ. J. Fields Decl. ("Fields

Declaration") Ex. 6.)  On August 7, 2006, Dr. Barnard filed a Complaint for Injunctive Relief

with this Court, seeking the requested records.  (*See* 3d Am. Compl. ¶ 9.)

After filing this lawsuit, Dr. Barnard received from ICE a letter dated August 5, 2006, in

which ICE advised Dr. Barnard that it had no responsive records.  (Barnard Declaration ¶ 28;

Barnard Declaration Ex. 5.)  Not until Defendant filed its motion for summary judgment on

February 20, 2007, did Dr. Barnard learn that ICE's letter of August 5, 2006, was factually false

because Defendant now admitted that it had 6 pages of responsive ICE records from the TECS

database.  (Barnard Declaration ¶ 29; *see* Def. Mot. for Summ. J., at 2.)  According to the sworn

declaration of Marshall Fields, dated February 20, 2007, Defendant located these 6 responsive

pages in May 2006 (*see* Fields Declaration ¶ 16), three months *before* Defendant's letter to Dr.

Barnard stating that it had no responsive ICE records.  Defendant has never explained why it lied

to Dr. Barnard in its August 5, 2006 letter.  In truth and in fact, Defendant possessed far more

than 6 responsive pages; as set forth below, Defendant possessed at least:

- 11 ICE pages that Defendant has withheld in their entirety
- 7 ICE pages that Defendant has provided in their entirety
- 137 CBP pages that Defendant has withheld in their entirety
- 176 CBP pages that Defendant has provided in redacted form
- 12 CBP pages that Defendant has provided in their entirety

In its January 23, 2008 court papers regarding in camera review of the ICE records, Defendant revealed, in the sworn declaration of Gloria Marshall, that the Fields Declaration was false because Defendant possessed 7, not 6, responsive pages from ICE. (*See* Notice Re: Compliance Marshall Decl. ("First Marshall Declaration") ¶ 6.) Defendant again withheld all of the pages in their entirety, invoking FOIA exemption (b)(2), *see* 5 U.S.C. § 552(b)(2), and three subsections of exemption (b)(7), *see* 5 U.S.C. § 552(b)(7)(A), (C), (E). (*See* Notice Re: Compliance, at 1.) Defendant based its invocation of (b)(7)(A) and (b)(7)(E) on its assertion that Dr. Barnard was the subject of an open and pending criminal investigation. (*See* First Marshall Declaration ¶ 6; Fields Declaration ¶¶ 22, 24.) Defendant based its invocation of (b)(7)(C) on privacy concerns for government employees and third parties. (*See* First Marshall Declaration ¶ 6; Fields Declaration ¶ 23.)

In invoking these FOIA exemptions, Ms. Marshall did not independently search the TECS database; instead she simply reviewed the pages identified by Mr. Fields and re-asserted the exemptions he had invoked:

> In response to the Court's January 8, 2008 Order, ICE *began reviewing its FOIA files* for purposes of locating the six records. During the course of ICE's review, it came to my attention that there were actually seven pages of records, and not six as explained in the Fields Declaration. ICE did not document in its file which of the six records were covered by the Fields Declaration. . . . Accordingly, at this time, ICE can not determine with certainty which six pages of the records were reviewed by Mr. Fields and referenced in his declaration. Nevertheless, *I have reviewed all seven pages* of the records and determined that all records are exempt from disclosure, in their entirety, under the FOIA exemptions (5 U.S.C. §§ 552(b)(2), (b)(7)(A), (b)(7)(C), (b)(7)(E)), and for the reasons explained in the Fields Declaration.

(First Marshall Declaration ¶ 6 (emphasis added).)  Ms. Marshall did not explain why she failed

to search the TECS database to confirm (or deny) the existence of an ongoing criminal

investigation.  (*See id.*)

Dr. Barnard "challenge[d] as improper Defendant's invocation of FOIA exemptions

'high' (b)(2), (b)(7)(A), (b)(7)(C), and (b)(7)(E) because Defendant ha[d] not demonstrated that

there is an ongoing criminal investigation of Dr. Barnard."  (Pl. Mot. for Summ. J. ("Barnard

MSJ"), at 8.)  Dr. Barnard also argued that the Court could not rely upon the Fields declaration

alleging the existence of an ongoing investigation of Dr. Barnard because the Mr. Fields did not

have personal knowledge of any such investigation.  (*See id.* at 9.)  In its Memorandum Opinion,

dated January 29, 2008, this Court found that Mr. Fields was "competent to testify" and stated

that "[i]n the absence of any non-speculatory information calling Mr. Fields' declaration into

question, the Court finds that Mr. Fields was fully competent to provide the information

contained in his declaration."  *Barnard v. DHS*, 531 F. Supp. 2d 131, 139, 140 (D.D.C. 2008).

Relying on Mr. Fields' declaration, the Court then found "that Defendant ha[d] properly

withheld exempt information in the responsive records," *id.* at 140, and granted Defendant's

motion for summary judgment, allowing the parties to file supplemental briefing concerning Dr.

Barnard's Privacy Act claim, if necessary, *id.* at 141.

Less than a week after the Court's ruling, Defendant filed a motion to stay in which it

revealed that contrary to its prior assertion—and despite this Court's reliance upon that

assertion—Dr. Barnard *was not* the subject of an open and pending criminal investigation.  (*See*

Def. Mot. Stay, at 3 n.2; Def. Mot. Stay Ex. B ("Second Marshall Declaration") ¶ 7.)  Moreover,

Defendant explained that Defendant, in identifying only 6 (and then 7) responsive ICE pages,

had not fully complied with Dr. Barnard's request:

> ICE was in possession of non-ICE records owned by third agencies. Generally, ICE would refer such records to the appropriate third agency for review. However, ICE did not do so in this case. ICE did not document in its file why this was not done. Furthermore, the individual (Marshall H. Fields, Jr.) who reviewed those records is no longer employed at ICE. It is my understanding that the third agency records are now being referred to the appropriate third agencies by CBP.

(Second Marshall Declaration ¶ 6.) Put more bluntly, Defendant's motion to stay showed that Mr. Fields' declaration was false, and Defendant was at a loss to explain how its key witness had come to make false statements to the Court regarding both the existence of a criminal investigation and the number of responsive pages. Defendant did not try, and appears not to have tried, to determine if Mr. Fields' declaration was knowingly false. Because Defendant's key witness lied to the Court, and Defendant has offered no explanation for that lie, the Court can not find credible any statement by Mr. Fields.

Defendant further revealed that it did not process Dr. Barnard's July 20, 2005 FOIA/PA request to CBP until January 17, 2008, nearly two-and-a-half years after it received the request. (*See* Def. Mot. Stay Ex. C ("Suzuki Declaration") ¶¶ 3–5.) At that time, Defendant searched the TECS database and located 82 additional responsive pages maintained by CBP. (*See id.* ¶¶ 4–5.) Most outrageous was Defendant's admission that it knew of these additional pages *before* it filed its January 23, 2008 court papers regarding in camera review:

> During the course of responding to the Court's January 8, 2008, Minute Order, it came to my attention that U.S. Customs and Border Protection (CBP) might not have processed Plaintiff's July 20, 2005, letter as a FOIA request. ICE followed up on this suspicion and consulted with CBP. ICE followed up on this suspicion and consulted with CBP. After further review, CBP confirmed that indeed it did not process Plaintiff's July 2005 letter as a FOIA request under its FOIA procedures. . . . In addition, during my review, it came to my attention that ICE was in possession of non-ICE records owned by third agencies.

(Second Marshall Declaration ¶ 6.)  Defendant has never explained why it did not notify the

Court or Dr. Barnard of the CBP records or the third agency records when it filed the First

Marshall Declaration *before the Court's ruling*.

The Court then stayed further proceedings to allow Defendant to process these and any

additional records it located.  (*See* Minute Order of Feb. 6, 2008.)  The Court's order stated,

> [T]his case shall be stayed until April 7, 2008.  During the pendency of the stay,
> Defendant shall process these [82 pages] and any other additional responsive
> records it may identify, and shall either release the records to Plaintiff or prepare a
> Vaughn index regarding the same.  On April 7, 2008, the Parties shall file a Joint
> Status Report[.]  . . .  The Parties should also include a proposed briefing
> schedule, if necessary, in their Joint Status Report.

(*Id.*)  The Court extended the stay until April 21, 2008, upon Defendant's motion.  (*See* Minute

Order of April 4, 2008.)  From February 5, 2008, to April 17, 2008, Defendant provided from

CBP a total of 12 unredacted pages and 163 redacted pages and withheld another 137 pages in

their entirety.  (Barnard Declaration ¶ 31; Joint Status Report of May 1, 2008 ¶ 2.)  As before,

Defendant invoked FOIA exemptions (b)(2), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).  (*See id.*

¶¶ 2–3.)

The parties thereafter conferred on two occasions to attempt to resolve remaining issues.

On April 18, 2008, Defendant agreed to provide Dr. Barnard with *Vaughn* Indices setting forth

the basis for the redactions and withholdings of the CBP documents.  (*See id.* ¶ 2.)  On April 29,

2008, Dr. Barnard notified Defendant of his intent to challenge Defendant's invocation of FOIA

exemptions (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E) in certain redacted documents and in all

withheld documents.  (*See id.* ¶¶ 3–4.)  Defendant did not agree to withdraw any of the

exemptions, necessitating the submission of a proposed briefing schedule to the Court.  (*See id.*

¶¶ 4–5.)

After the Court issued a subsequent scheduling order, however, Defendant requested additional time to consider, despite its prior refusal to do so, whether to withdraw one or more of the exemptions invoked with respect to the CBP documents.  (*See* Def. Consent Motion to Amend the Court's May 5, 2008 Minute Order, at 1–2).  The Court granted in part and denied in part Defendant's proposed amended schedule.  (*See* Minute Order of May 19, 2008.)  Defendant then withdrew its invocation of FOIA exemption (b)(7)(A) for all 300 CBP pages that it redacted or entirely withheld to date.  (*See* Def. Consent Mot. to Amend the Court's May 19, 2008 Order, at 1.)

At no time did Defendant seek to amend the Court's Minute Order of February 6, 2008, with respect to the Court's requirements that 1) Defendant "shall process these and any other additional responsive records it may identify" d*uring the pendency of the stay* and 2) Defendant "shall either release the records to Plaintiff or prepare a Vaughn index regarding the same."  (*See* Minute Order of Feb. 6, 2008.)  Even when it sought extensions to the briefing schedule, Defendant did not seek Court permission to continue processing Dr. Barnard's FOIA/PA requests after the Court lifted the stay by issuing the briefing schedule.  Nevertheless, as set forth below, Defendant failed to abide by the Court's order regarding both the schedule for completing its searches and the requirement that it provide a *Vaughn* Index for records not released to Dr. Barnard.

On June 16, 2008, Defendant informed this Court that ICE had "recently found additional documents" responsive to Dr. Barnard's request and had referred certain of these documents to CBP for processing.  (*See* Def. Consent Mot. to Amend the Court's May 19, 2008 Order, at 2.) By doing so, Defendant again acknowledged the existence of documents that Defendant's declarants previously had sworn did not exist.  (*See, e.g.*, Fields Declaration ¶ 16 ("The TECS

search located six (6) pages[.]"); First Marshall Declaration ¶ 6 ("[T]here were actually seven

pages of records, and not six[.]").)  Defendant requested another amendment to the briefing

schedule to allow ICE to process the remaining documents and to allow Dr. Barnard time to

review those documents provided to him by CBP.  (*See* Def. Consent Mot. to Amend the Court's

May 19, 2008 Order, at 2.)  The Court denied this motion.  (Minute Order of June 18, 2008.)

By letter dated June 16, 2008, Defendant provided Dr. Barnard with 13 additional

responsive CBP pages, all of which were partially redacted under the same FOIA exemptions

Defendant had previously cited.  (*See* Barnard Declaration ¶ 32; Barnard Declaration Ex 8.)  By

letter dated June 19, 2008, and received by Dr. Barnard on the day that this brief was due,

Defendant provided 7 additional responsive ICE pages and withheld in their entirety 4 additional

responsive ICE pages.  (*See* Barnard Declaration ¶ 33; Barnard Declaration Ex. 9.)  In

withholding these 4 ICE pages, Defendant again invoked FOIA exemption (b)(2), *see* 5 U.S.C. §

552(b)(2), and three subsections of exemption (b)(7), *see* 5 U.S.C. § 552(b)(7)(A), (C), (E).  (*See*

Barnard Declaration ¶ 33; Barnard Declaration Ex. 9.)  Defendant has not explained why it did

not locate these records prior to the parties' Joint Status Report(s) to the Court, as required by the

Court.  (*See* Minute Order of February 6, 2008.)  Defendant did not provide a *Vaughn* Index for

the 4 ICE pages withheld in their entirety, in violation of the Court's order.  (*See id.*)

A brief summary of Defendant's actions follows:

| Date | Action by Defendant |
|------|---------------------|
| January 16, 2003 | In response to Dr. Barnard's January 9, 2003 letter, U.S. Customs Service, CBP's predecessor, searches the TECS database and does not identify an ongoing criminal investigation as the cause of Dr. Barnard's travel difficulties. |
| August 15, 2005 | In response to Dr. Barnard's July 20, 2005 FOIA/PA request to CBP, Defendant provides no responsive documents and advises that Dr. Barnard contact ICE for the requested records. |
| August 5, 2006 | Defendant states that it has no records responsive to Dr. Barnard's |

| | March 21, 2006 FOIA/PA request to ICE. |
|---|---|
| February 20, 2007 | With no explanation of its change in position, Defendant states that it retrieved 6 responsive pages from the TECS database in response to Dr. Barnard's March 21, 2006 FOIA/PA request to ICE. |
| | Defendant withholds all 6 pages in their entirety based, in part, on its claim that there is an ongoing criminal investigation of Dr. Barnard. |
| January 17, 2008 | Defendant finally processes Dr. Barnard's July 20, 2005 FOIA/PA request to CBP and locates 82 responsive pages. |
| January 23, 2008 | Defendant states that it located 7, not 6, pages responsive to Dr. Barnard's March 21, 2006 FOIA/PA request to ICE. |
| | Defendant withholds all 7 ICE pages in their entirety based, in part, on its claim that there is an ongoing criminal investigation of Dr. Barnard. |
| | Defendant does not disclose (until February 4, 2008) the existence of the additional CBP pages located on January 17, 2008. |
| | Defendant does not disclose (until February 4, 2008) the existence of non-ICE records owned by third agencies but possessed by ICE. |
| February 4, 2008 | After the Court's ruling, Defendant states that, contrary to prior assertions, Dr. Barnard is not the subject of an ongoing criminal investigation. |
| | Defendant states that in responding to Dr. Barnard's March 21, 2006 FOIA/PA request to ICE, ICE did not refer non-ICE records in its possession to the appropriate non-ICE agencies for review. Defendant offers no explanation for its failure to properly process Dr. Barnard's request or its failure to disclose this information prior to the Court's ruling. |
| | Defendant discloses the existence of the additional CBP pages located on January 17, 2008. Defendant offers no explanation for its failure to disclose this information prior to the Court's ruling. |
| February 5, 2008 – April 17, 2008 | From CBP, Defendant provides 12 pages in full, provides 163 redacted pages, and withholds 137 pages in full. |
| April 29, 2008 | During the parties' second conference, Defendant refuses to withdraw any of the exemptions invoked in the 300 pages redacted and/or withheld by CBP, after which the parties propose a briefing schedule. |
| May 19, 2008 | Defendant proposes an amended briefing schedule to allow it time to consider whether to withdraw exemptions it has invoked with respect to the CBP records. |
| June 4, 2008 | Defendant withdraws exemption (b)(7)(A) in all 300 CBP pages redacted and/or withheld to date. |
| June 2008 | Defendant, through ICE, locates additional responsive documents and refers certain of them to CBP for processing. |
| June 16, 2008 | Defendant provides Dr. Barnard with 13 additional pages of CBP records, all of which are partially redacted. |

| June 19, 2008 | Defendant provides Dr. Barnard with 7 additional pages of ICE records and withholds in their entirety 4 other pages of ICE records, invoking FOIA exemption (b)(7)(A), among others.  Defendant does not provide a *Vaughn* Index for the 4 pages withheld in their entirety. |
|---|---|

## III.  ARGUMENT

### A.  This Court Should Vacate its Judgment Finding that All Seven Pages Withheld by ICE are Exempt from Disclosure Because Newly Discovered Evidence Establishes that Dr. Barnard is not the Subject of an Ongoing Criminal Investigation

#### 1.  The Motion for Reconsideration Standard

A party may move for relief from final judgment when there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."[1] FED. R. CIV. P. 60(b)(2).  Such a motion "must be made . . . no more than a year after the entry of the judgment,"[2] FED. R. CIV. P. 60(c), "and will not be granted unless the movant can demonstrate a meritorious claim or defense," *Lepkowski v. U.S. Dep't of Treasury*, 804 F. 2d 1310, 1314 (D.C. Cir. 1986).  To meet the requirements of Rule 60(b)(2), the newly discovered evidence:

> (1) must have been in existence at the time of the disputed judgment; (2) "could not by the exercise of due diligence have been discovered in time to present it in the original proceeding;" (3) "must not be merely cumulative or impeaching;" and

---

[1] Rule 59(b) requires a motion for a new trial to "be filed no later than 10 days after the entry of judgment." FED. R. CIV. P. 59(b).  The Court entered judgment on January 29, 2008, and Defendant disclosed the newly discovered evidence on February 4, 2008 (6 days after entry of judgment), in its Motion to Stay.  Dr. Barnard did not thereafter move for a new trial under Rule 59(b) because this Court temporarily stayed the case on February 6, 2008 (8 days after entry of judgment) so the parties could attempt to resolve remaining issues.  (*See* Minute Order of Feb. 6, 2008.)  After the parties submitted their Joint Status Report of May 1, 2008, the Court adopted the parties' proposed briefing schedule, stating "If Plaintiff intends to seek reconsideration of the Court's January 29, 2008 Order and Memorandum Opinion, Plaintiff shall incorporate that Motion into its briefs according to the above schedule."  (Minute Order of May 5, 2008.)

[2] In the alternative, Federal Rule of Civil Procedure 59(e) allows a party to move, no later than 10 days after the entry of judgment, for a court to alter or amend its judgment when "the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  New evidence is "evidence that is newly discovered or previously unavailable despite the exercise of due diligence."  *See Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001).

(4) "must be admissible and credible, and of such a material and controlling nature as will probably change the outcome."

*Int'l Ctr. for Tech. Assessment v. Leavitt*, 468 F. Supp. 2d 200, 206 (D.D.C. 2007) (citing *Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1, 4 (D.D.C. 2000)).

> **2.    The Court Should Vacate its Judgment Due to the New Evidence that Dr. Barnard is not the Subject of an Ongoing Criminal Investigation**

In ruling that ICE properly withheld all 7 responsive pages in their entirety, this Court found first that "Defendant . . . properly withheld exempt information in the responsive records," *Barnard*, 531 F. Supp. 2d at 140, and, second, that there were "no reasonably segregable non-exempt portions of the records," *id.* at 141. The Court relied upon Defendant's assertion, including the supporting declarations of two government employees, that Dr. Barnard was the subject of an ongoing criminal investigation, such that certain FOIA exemptions applied. *See id.* at 137, 141 n.9. Dr. Barnard argued that there was no ongoing criminal investigation of his activities and that Defendant's declaration asserting the existence of such an investigation contained inadmissible hearsay. (*See* Barnard MSJ, at 8–13; Barnard Reply, at 2–5). Nevertheless, the Court ruled that Defendant's declaration did not contain hearsay, reasoning that "[b]ecause a declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records, the declarant is not required to independently verify the information contained in each responsive record." *Barnard*, 531 F. Supp. 2d at 138–39. The Court stated that "[i]n the absence of any non-speculatory information calling [the] declaration into question, the Court finds that [the declarant] was fully competent to provide the information contained in his declaration." *Id.* at 140.

Less than a week after the Court's ruling, Defendant informed the Court that Dr. Barnard is *not* the subject of an ongoing investigation. (*See* Def. Mot. Stay at 3 n.2.) This newly

discovered evidence, which was previously unavailable to Dr. Barnard despite the exercise of

due diligence, constitutes "non-speculatory information" that calls into question—indeed

contradicts—Defendant's declarations, thereby casting doubt on both of the Court's primary

findings. In its ruling, the Court relied on the now completely discredited declaration of

Marshall Fields and on the first declaration of Gloria Marshall, in which Ms. Marshall did not

make an independent determination that an ongoing criminal investigation ever existed. Further,

the investigation, which may never have existed, certainly was not ongoing at the time of the

Court's decision. Because there is no ongoing investigation of Dr. Barnard, Defendant may not

withhold information from Dr. Barnard by citing FOIA exemption (b)(7)(A). Therefore, to the

extent that Defendant relied upon this exemption in withholding all 7 responsive pages

maintained by ICE, Defendant *did not* "properly with[o]ld exempt information in the responsive

records," *see Barnard*, 531 F. Supp. 2d at 140, contrary to the Court's finding. Additionally,

because Defendant overstated the number of exemptions applicable to the responsive records,

this Court cannot be sure of the validity of its determination that the exempt and non-exempt

portions were not segregable.

The discovery that Dr. Barnard is not the subject of an ongoing criminal investigation

meets the four-part test for newly discovered evidence. First, the evidence existed at the time of

the disputed judgment. This Court issued its ruling on January 29, 2008, and the investigation, if

there ever was one, closed sometime before January 23, 2008. (*See* Second Marshall Declaration

¶ 7.) Further, the evidence was not known to Dr. Barnard prior to the Court's judgment, nor was

it in Dr. Barnard's possession until Defendant filed its Motion To Stay on February 4, 2008.

(*See* Barnard Declaration ¶ 32.) Therefore, the newly discovered evidence meets the first part of

the test. *See Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1, 5 (D.D.C. 2000).

Second, Dr. Barnard could not, by the exercise of due diligence, discover the evidence in time to present it in the original proceeding. The details of pending criminal investigations by federal agencies rarely are publicly available and certainly were not in this case. Since 2003, Dr. Barnard has sought, by filing with federal agencies seven FOIA/PA requests or letters and initiating this lawsuit, to determine the reason why Defendant consistently interrupts his international travels. (*See* First Barnard Declaration ¶ 25.) In his briefs, Dr. Barnard disputed the existence of an ongoing criminal investigation and demonstrated the lack of an ongoing FBI investigation. *See Barnard*, 531 F. Supp. 2d at 139–40. Even Defendant's declarant claimed not to have known of the existence of this new evidence until February 1, 2008, three days after the Court's ruling. (*See* Second Marshall Declaration ¶ 7.) Therefore, Dr. Barnard could not, by the exercise of due diligence, discover the evidence in time to present it in the original proceeding.

Third, the evidence is not "cumulative of evidence offered at the original proceeding, and . . . the evidence [is not] impeaching in nature." *Lans*, 110 F. Supp. 2d at 8. "[N]ewly-discovered evidence will not support a motion for relief from judgment if it merely tends to impeach the credibility of a witness rather than provide substantive evidence concerning a material issue of fact." *See Int'l Ctr. for Tech. Assessment*, 468 F. Supp. 2d at 207 (citation omitted). Here, the newly discovered evidence is contradictory, not cumulative, of prior evidence. Further, the evidence does more than impeach the credibility of the declarants; it also provides substantive evidence concerning a material issue of fact. Defendant based its invocation of FOIA exemptions, in part, on the alleged existence of an ongoing criminal investigation into Dr. Barnard's activities. Defendant then relied upon this exemption in asserting that the exempt and non-exempt portions of the responsive records were non-segregable. The Court accepted both of these conclusions in granting summary judgment in

favor of Defendants. The newly discovered evidence directly contradicts the first conclusion and significantly undermines the second. Thus, the evidence is not merely cumulative or impeaching.

Fourth, the newly discovered evidence is "admissible and credible, and of such a material and controlling nature as will probably change the outcome." *See id.* at 206. Here, the evidence is Defendant's declaration, made under penalty of perjury, stating that the supposed criminal investigation was closed at the time of the Court's ruling. This admission of a party, which is not hearsay under FED. R. EVID. 801(d)(2), is proof that, at the time of the Court's ruling, Dr. Barnard was *not* under criminal investigation. It is not, however, evidence that such a criminal investigation ever existed. According to Ms. Marshall the newly discovered evidence arrived in the form of "official notification" provided to the Unit Chief of the Information Disclosure Unit, Mission Support Division, Office of Investigations within ICE. (*See* Second Marshall Declaration ¶¶ 2, 7.) This "official notification" is utter and complete hearsay as evidence for the proposition that any criminal investigation ever existed. *See* FED. R. EVID. 801(c). Ms. Marshall's declaration does not discuss whether the notification was oral or written, where it came from, what the source of the information was, whether it had any indicia of reliability, or really, anything that can be relied upon for any purpose. Given that Mr. Fields' declaration is demonstrably untrustworthy, and nothing further than the rankest form of hearsay has been presented to the Court to support the criminal investigation claim in Ms. Marshall's declaration, the Court must set aside its ruling.

Coupled with the inherent unreliability of Defendant's sworn declarations, the new evidence casts doubt on *all* of the FOIA exemptions claimed by Defendant, further calling into question the Court's determination regarding segregability. First, Defendant failed to timely

respond to Dr. Barnard's July 20, 2005 FOIA/PA request to CBP, claiming that it

"misunderstood [the request] as a 'traveler's complaint'" subject to no FOIA/PA processing

(Def. Mot. Stay, at 1–2)—despite the request's self-designation as a "PRIVACY ACT/FOI ACT

REQUEST" and its citations of relevant statutory provisions (*see* Barnard Declaration Ex. 2).

Then, in August 2006, Defendant responded to Dr. Barnard's March 21, 2006 FOIA/PA request

to ICE by stating that it had no responsive records.  (*See* Barnard Declaration Ex. 5.)  In

February 2007, however, Defendant stated that it had located 6 pages of responsive ICE records

(*see* Fields Declaration ¶ 16) and claimed that an ongoing investigation of Dr. Barnard's

activities justified the withholding of information contained in these records (*see id.* ¶¶ 22, 24).

In January 2008, Defendant announced, in another sworn declaration, that it actually possessed

7, not 6, responsive ICE pages.  (First Marshall Declaration ¶ 6.)  Defendant again relied, in part,

upon the existence of an alleged ongoing investigation in withholding all 7 pages.  (*See id.* ¶ 7.)

       Defendant's declarant once more contradicted prior declarations shortly after the Court's

ruling, this time stating that Dr. Barnard was *not* the subject of an ongoing criminal investigation.

(*See* Second Marshall Declaration ¶ 7.)  Defendant also confessed that it inexplicably had failed

to process responsive records owned by ICE and originated by "third agencies" (*see id.* ¶ 6),

despite the mandates of FOIA and the Privacy Act requiring it to do so, *see* 6 C.F.R. §§ 5.4, 5.22,

and that Defendant had located 82 pages of records maintained by CBP (Suzuki Declaration ¶ 5).

Most significantly, Defendant revealed that it had chosen not to share this information with the

Court until after the Court's ruling.  (*See id.* ("CBP . . . conducted an initial search . . . on

January 17, 2008, and found approximately 82 pages[.]"); Marshall Declaration ¶ 6 ("In addition,

during my review, it came to my attention that ICE was in possession of non-ICE records owned

by third agencies.").)  Had Defendant been candid with the Court, the parties and this Court

could have been spared a great deal of lost time and effort.

Over the next two months, Defendant located more than 300 pages of responsive pages

maintained by CBP—albeit two-and-a-half years after Dr. Barnard submitted his FOIA/PA

request to CBP—and redacted or entirely withheld the vast majority, citing, among other things,

FOIA exemption (b)(7)(A) for "records or information compiled for law enforcement purposes"

the release of which "could reasonably be expected to interfere with enforcement proceedings."

5 U.S.C. § 552(b)(7)(A).  Defendant cited this exemption even though Defendant already had

admitted that Dr. Barnard was "no longer the subject of [an] open and pending criminal

investigation."  (*See* Second Marshall Declaration ¶ 7.)  Defendant subsequently interrupted the

briefing schedule to withdraw its invocation of this exemption.  (*See generally* Def. Consent

Motion to Amend the Court's May 5, 2008 Minute Order.)  Defendant later again attempted to

amend the briefing schedule when ICE located additional responsive ICE and CBP pages that it

had not provided prior to the parties' Joint Status Report.  (*See* Def. Consent Mot. to Amend the

Court's May 19, 2008 Order, at 2.)

In short, the newly discovered evidence is simply the culmination of Defendant's pattern

of providing misleading responses followed by subsequent "discoveries" of contradictory

information each time that Dr. Barnard has asserted his statutory rights.  Given the frequency of

significant changes in Defendant's position, the unreliability of the statements made by

Defendant's declarants, and Defendant's general lack of candor, this Court has no reason to

believe that any of Defendant's claimed FOIA exemptions are valid—indeed, several of those

exemptions also are suspect for the reasons set forth in III(C), *supra*—further casting doubt upon

the Court's determination regarding segregability. Accordingly, the newly discovered evidence meets the fourth part of the test, and Dr. Barnard is entitled to relief from judgment.

**3.    This Court Should Disregard Defendant's Recent Hearsay Statement**

In notifying this Court that Dr. Barnard was not the subject of an ongoing criminal investigation, Defendant argued for the first time that even in the absence of such an investigation, FOIA Exemption (b)(7)(A) applies to the 7 responsive pages located by ICE because Defendant's declarant, Ms. Marshall, had "been informed that the disclosure of information related to Plaintiff could have a negative impact on other ongoing investigations." (Second Marshall Declaration ¶ 7.) This statement is inadmissible hearsay because it is "a statement, other than one made by the declarant . . . , offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c).

Ms. Marshall is not competent to testify about the existence of other ongoing investigations because such information is not contained in the records before her. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). Ms. Marshall's statement alleging the existence of other ongoing investigations does not meet the requirements of Rule 56(e) because she does not have personal knowledge of any such investigations. She does not purport to have "been informed" by the contents of the responsive records or by information obtained from searching other records in ICE's possession. Indeed, she merely repeats information of which she has "been informed" by an unidentified outside source. (*See* Second Marshal Decl. ¶ 7.) Therefore, the declarant does not satisfy the person knowledge requirement of Rule 56(e) because her statement does not rely upon "personal knowledge of the procedures used in

handling [a FOIA] request and [her] familiarity with the documents in question." *Cf. Barnard*, 531 F. Supp. 2d at 138 (citations omitted).

Because Defendant's supporting declarations are controverted by contrary evidence in the record and because Defendant improperly relies upon a statement that is not admissible in evidence, summary judgment in favor of Defendant is, and was, inappropriate. *See Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Moreover, Defendant cannot in good faith stand behind its hearsay claim that FOIA exemption (b)(7)(A) still applies to the 7 responsive ICE pages upon which the Court previously ruled now that it has taken the unusual affirmative step of withdrawing that same exemption with respect to the 300 responsive CBP pages located after the Court's decision. Because the newly discovered evidence contradicts the premise of the Court's judgment, the Court's judgment in favor of Defendant should be vacated, and this Court should enter an order enjoining Defendant to provide the requested records.

**B.** **Defendant has Cited No Privacy Act Exemptions in Redacting and Withholding Records and Therefore Must Release, in Their Entirety, all Records Responsive to Dr. Barnard's FOIA/PA Requests to ICE and CBP**

Defendant must provide written notice of any adverse determinations in response to a request for records filed under the Privacy Act. 6 C.F.R. § 5.23. This response must include "[a] brief statement of the reason(s) for the denial, including any Privacy Act exemption(s) applied." *Id.* An agency may not rely solely upon FOIA exemptions in denying a request for records under the Privacy Act. 5 U.S.C. § 552a(t)(1) ("No agency shall rely on any exemption contained in section 552 of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section."). Indeed,

> [i]n order to withhold these documents from [a requester's] twin Privacy Act/FOIA request, then, [the agency] must demonstrate that the documents fall within some exemption under each Act. If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be

21

released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA.

*Martin v. Office of Special Counsel*, 819 F.2d. 1181, 1184 (D.C. Cir. 1987).

Dr. Barnard has requested records pertaining to himself from both CBP and ICE pursuant to both the FOIA and the Privacy Act. (*See* Barnard Declaration Exs. 2–3.) In withholding records responsive to both requests, Defendant has invoked FOIA exemptions; Defendant has not, however, invoked a single exemption under the Privacy Act. (*See* First Marshall Declaration ¶ 6; Barnard Declaration Exs. 6–9.) Thus, because Defendant has not demonstrated that it lawfully withheld information under the Privacy Act, Defendant must release the requested records to Dr. Barnard in their entirety. *See Martin*, 819 F.2d at 1184.

Unlike the FOIA, which was enacted to establish and ensure transparency of the government's activities to the public, *see Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007), Congress enacted the Privacy Act to provide individuals with more control over the gathering, dissemination, and accuracy of information about themselves in government files, s*ee Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 76 (D.C. Cir. 1982). The Privacy Act's intent is to balance the government's interest in maintaining information on individuals with the individual's right to be protected against unwarranted invasions of privacy. *Id.* at 80. To this aim, the Privacy Act increases the rights of individuals to gain access to agency records about themselves and to seek amendment of those records upon a showing that they are not accurate, relevant, timely, or complete. By denying Dr. Barnard's requests, Defendant contravenes these goals and effectively nullifies Dr. Barnard's statutory right to amend his record. *See Vymetalik v. FBI*, 785 F.2d 1090, 1098 (D.C. Cir. 1982). Without access to the requested records, Dr. Barnard has no way of reviewing their accuracy, relevance, timeliness, or completeness and thus has no basis for

amendment. Defendant's refusal to disclose the requested records prevents Dr. Barnard from

taking the steps necessary to put an end to continued harassment by Defendant.

Defendant has violated the Privacy Act by withholding, without citing a single Privacy

Act exemption, records responsive to Dr. Barnard's FOIA/PA requests to CBP and ICE.

Defendant therefore must release the requested records to Dr. Barnard in their entirety.

C.    **Dr. Barnard is Entitled to Summary Judgment With Respect to the Material Redacted and/or Entirely Withheld After the Court's Ruling Because Defendant has Failed to Satisfy its Evidentiary Burdens**

1.    **The Motion for Summary Judgment Standard**

A party is entitled to summary judgment if based on the pleadings, depositions,

admissions on file, affidavits and other permissible materials before the court, "there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The entry of summary judgment

is mandated "against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the proof at trial." *Id.*

Further, "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial." *Id.* at 323. This insufficient showing of an

essential element entitles the moving party to judgment as a matter of law. *Id.*

In a FOIA case, the agency has the burden of proving that each document that falls within

the requested class "either has been produced, is unidentifiable, or is wholly exempt from the

Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). The

justification provided for the exemptions must be in "enough detail and with sufficient

specificity to demonstrate that material withheld is logically within the domain of the exemption

claimed." *PHE, Inc. v. DOJ*, 983 F.2d 248, 250 (D.C. Cir. 1993). These showings may be made

by agency affidavits and other evidence submitted to the court. *Hayden v. NSA*, 608 F.2d 1381, 1386 (D.C. Cir. 1979).

> **2.    Defendant has Failed to Justify the Withholdings Because it has not Narrowly Construed the Invoked Statutory Exemptions**

By using sweeping and conclusory statements to justify the exemptions, Defendant has failed to justify the withholdings of documents from the requested class. The FOIA was created as a disclosure statute, with a "focus[ ] on the citizens' right to be informed about what their government is up to." *DOD v. Federal Labor Relations Authority*, 510 U.S. 487, 495 (1994). This "general philosophy" mandates "full agency disclosure unless information is exempted under clearly delineated statutory language." *Id.* at 494 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976)). Moreover, "these exemptions from disclosure must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). If the agency affidavits fail to be "sufficiently detailed, non-conclusory, and submitted in good faith," and if there is a "significant basis" for the plaintiff to "question[ ] their reliability," a court can rule in favor of the plaintiff who has motioned for summary judgment. *Sinsheimer v. DHS*, 437 F. Supp. 2d 50, 53 (D.D.C. 2006) (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). Based on the methodology employed and Defendant's conclusory statements sweeping the documents into categories of allegedly applicable exemptions, Defendant has not justified its withholdings and redactions of CBP and ICE records located after the Court's ruling. Accordingly, Dr. Barnard challenges Defendant's invocation of certain FOIA exemptions as applied under the following circumstances:

- (b)(6) – names of federal employees within Dr. Barnard's presence
- (b)(6) – positions of all federal employees
- (b)(6) – names of third parties within Dr. Barnard's presence

- (b)(7)(A) – law enforcement records purported to relate to ongoing investigations
- (b)(7)(C) – names of federal employees within Dr. Barnard's presence
- (b)(7)(C) – positions of all federal employees
- (b)(7)(E) – inspection procedures witnessed by Dr. Barnard

Dr. Barnard challenges these exemptions in the following redacted and withheld documents:

| Bates Stamp Number(s) | Exemptions Challenged |
|---|---|
| **Redacted CBP Documents** | |
| 001 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 002 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 003 | (b)(7)(E) |
| 006–007 | (b)(7)(E) |
| 008–024 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 025–031 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 033–049 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 050–052 | (b)(7)(E) |
| **Withheld CBP Documents** | |
| 164–167 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 168–215 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 216–222 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 223–226 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 227–230 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 231–233 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 234 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 235–236 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 237 | (b)(7)(E) |
| 238–300 | (b)(6), (b)(7)(C), (b)(7)(E) |
| 4 ICE pages not included in *Vaughn* Indices | (b)(7)(A), (b)(7)(C), (b)(7)(E) |

     a.     *Defendant cannot invoke FOIA exemption (b)(6) to withhold the bare names and positions of federal employees and the names of third parties who were in Dr. Barnard's presence*

Under FOIA exemption (b)(6), an agency can withhold only "personnel and medical files and similar files the disclosure of which *would* constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). This is not "a blanket exemption for personnel files" and requires a showing of a "clearly unwarranted invasion of privacy" to justify nondisclosure. *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 371 (1976). To properly invoke

this "limited exemption," an agency must conduct "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" *Id.* at 372 (citation omitted).  When courts undertake this balancing analysis, there is a "presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act." *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C. Cir. 2002) (quotation and citation omitted).  As such, this exemption "does not protect against disclosure every incidental invasion of privacy[; it protects] only such disclosures as constitute 'clearly unwarranted' invasions of personal privacy." *Rose*, 425 U.S. at 382.  Absent the required demonstration of a clearly unwarranted invasion of privacy, an agency must disclose the requested documents.

In this case, Defendant has failed to justify its invocation of FOIA exemption (b)(6) to withhold the names and positions of federal employees, as well as the names of third parties, who were in Dr. Barnard's presence during the numerous detentions, interrogations, and searches to which Defendant subjected Dr. Barnard.  As noted by the U.S. Court of Appeals for the District of Columbia Circuit, the FOIA's legislative history "indicate(s) that the real thrust of Exemption (6) is to guard against unnecessary disclosure of files of such agencies as the Veterans Administration or the Welfare Department or Selective Service or Bureau of Prisons, which would contain 'intimate details' of a 'highly personal' nature." *Getman v. N. L. R. B.*, 450 F.2d 670, 675 (D.C. Cir. 1971).  The *Getman* court went so far as to say that "[t]he giving  of names and addresses is a very much lower degree of disclosure; in themselves a bare name and address give no information about an individual which is embarrassing." *Id.*  Thus, in enacting the FOIA, Congress did not imagine that Defendant could justify withholding from disclosure the bare names of federal employees and third parties within Dr. Barnard's presence.

Moreover, *Getman* permitted disclosure of names and *addresses* of federal employees, whereas this case challenges the failure to disclose only the names and *positions* of federal employees. "[F]or such information to be protected, it must compromise a substantial, as opposed to a *de minimis*, privacy interest." *Nat'l Ass'n of Home Builders,* 309 F.3d at 33 (quotation and citation omitted). The privacy interest in the names and positions of federal employees who were in Dr. Barnard's presence is *de minimis* and far from substantial. Such employees regularly hold themselves out within the public ambit by interacting with millions of airport travelers as part of their employment, all the while wearing badges or other forms of identification indicating their names and titles. Indeed, the names of more than two dozen individuals employed by Defendant already are known to Dr. Barnard. (*See* Barnard Declaration ¶¶ 7–10, 12–14, 17–20.)

*Getman* also supports the disclosure of the names of third parties in Dr. Barnard's presence. Congress enacted the (b)(6) exemption, in particular, to protect "intimate details" of a "highly personal" nature that would be typical of specific agencies such as the Veterans Administration, the Welfare Department, Selective Services and the Bureau of Prisons. The names of third parties, such as Dr. Barnard's travel companions, in Dr. Barnard's presence do not fall into this category. Additionally, the policy behind (b)(6) "lend[s] itself particularly to those Government agencies where persons are required to submit vast amounts of personal data usually for limited purposes." *Getman*, 450 F.2d at 674 n.10. This policy does not apply here, because Defendant is not an agency to which "persons are required to submit vast amounts of personal data."

Defendant cannot simply make conclusory statements in its *Vaughn* Indices stating that the names and positions of federal employees and third parties "are redacted pursuant to

Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy[.]" (*See* Barnard Ex. 6, at 1, 2, 8–10; Barnard Ex. 7, at 2–9, 11.) Conclusory, sweeping statements, such as those repeated nearly verbatim by Defendant in its declarations and *Vaughn* Indices, are unacceptable justifications for exemption. Defendant cannot "categorically withhold documents under Exemption 6 because it has not provided information describing, to the fullest extent possible, the content of the requested information." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. DOJ*, 503 F. Supp. 2d 373, 382 (D.D.C. 2007).

Not only do these sweeping allegations frustrate the fundamental purpose of the FOIA, "to open agency action to the light of public scrutiny," *Rose*, 425 U.S. at 372, they prevent this Court from fulfilling its role in the FOIA process. "Congress vested the courts with the responsibility ultimately to determine 'de novo' any dispute as to whether the exemption was properly invoked in order to constrain agencies from withholding nonexempt matters." *Id*. at 379–80. Defendant's justification for invoking exemptions therefore must provide enough detail and sufficient specificity for a reviewing court to reasonably determine that the documents reasonably fall within the invoked exemption. *PHE, Inc.*, 983 F.2d at 250. The "categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *Id.* (quotation and citation omitted). Given the sweeping, broad nature of all of Defendant's justifications for withholding and redacting documents, Defendant has failed to meet its burden under FOIA exemption (b)(6). As a result of Defendant's inability to prove an essential component of its case, *see Celotex*, 477 U.S. at 322, this Court should grant summary judgment in favor of Dr. Barnard.

> b.    *Defendant cannot invoke FOIA exemption (b)(7) to withhold records due to its failure to satisfy the threshold requirement for law enforcement purposes*

Under FOIA exemption (b)(7), an agency may withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" could lead to one or more of six enumerated harms. 5 U.S.C. § 552(b)(7). In order to satisfy the law enforcement purposes threshold, "[i]t is the purpose of the record, not the role of the agency, that is determinative." *Sinsheimer*, 437 F. Supp. 2d at 55 (citing *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982)). The threshold requires a showing that two criteria are met:

> First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security. To satisfy this requirement of a 'nexus,' the agency should be able to identify a particular individual or a particular incident as the object of its investigation and the *connection between that individual or incident and a possible security risk or violation of federal law*. . . . Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least *'a colorable claim' of its rationality*.

*Pratt*, 673 F.2d at 420–21 (emphasis added). Defendant cannot meet this law enforcement threshold.

Even though one particular individual, Dr. Barnard, can be consistently identified in a majority of Defendant's records, the agency has not identified a connection to any possible security risk or violation of federal law. At a minimum, the identification of a nexus is required to satisfy the law enforcement purposes threshold in FOIA exemption (b)(7) before any of the enumerated harms can be addressed. Defendant's failure to establish any nexus between Dr. Barnard and a possible security risk or violation of law for any of the seventeen airport incidents weighs heavily against Defendant. Further, Defendant has not demonstrated any information sufficient to support a colorable claim of the rationality of such a nexus.

The law enforcement exemption "was not meant to include investigatory activities wholly unrelated to law enforcement agencies' legislated functions of preventing risks to the national security and violations of the criminal laws and of apprehending those who do violate the laws." *Id.* at 420. Detaining an international traveler without identifying any possible violation or security risk is "wholly unrelated" to Defendant's legislated functions. Baseless airport detentions are not the type of investigatory activities for which Congress sought to exempt records from disclosure under (b)(7).

Defendant cannot "establish that its investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated or that national security may be breached." *See id.* at 421. Absent the showing of a "plausible basis and a . . . rational connection to the object of the agency's investigation," *id.*, there is no sufficient justification to withhold or redact records. Defendant's inability to identify a possible security risk or violation "establish[es] that the agency . . . merely engage[ed] in a general monitoring of private individuals' activities." *Id.* at 420. Due to Defendant's failure to satisfy the threshold criteria under (b)(7), summary judgment should be awarded for Dr. Barnard and the documents should be disclosed to him.

      i.     Defendant has not demonstrated that disclosure of the requested records would interfere with enforcement proceedings for other ongoing investigations under Exemption (b)(7)(A)

By letter dated June 19, 2008, and received by Dr. Barnard on the day that this brief was due to the Court, Defendant withheld in their entirety 4 responsive ICE pages located after the Court's judgment. (*See* Barnard Declaration ¶ 33; Barnard Declaration Ex. 9.) Defendant invoked FOIA exemption (b)(7)(A), asserting that release of these 4 pages "could reasonably be expected to interfere with enforcement proceedings" and "have a negative impact on other

ongoing investigations." (Barnard Declaration Ex. 9.) Defendant offered no explanation for its failure to provide a *Vaughn* Index for these 4 pages (*see id.*), despite a Court order requiring it to do so. (*See* Minute Order of Feb. 6, 2008.) To the extent that Defendant relies upon its letter to demonstrate the existence of "other ongoing investigations," Defendant's letter is hearsay. In the absence of an affidavit "made on personal knowledge, [setting] forth such facts as would be admissible in evidence, and [showing] affirmatively that the affiant is competent to testify to the matters stated therein," *see* FED. R. CIV. P. 56(e), this Court has no reason to accept Defendant's invocation of this FOIA exemption, all the more so given 1) the unreliability of Defendant's prior statements (whether sworn or not) and 2) Defendant's withdrawal of the same exemption with respect to 300 responsive CBP pages (*see* Def. Consent Mot. to Amend the Court's May 19, 2008 Order, at 1). Thus, Dr. Barnard is entitled to summary judgment regarding exemption (b)(7)(A).

        ii.    Disclosure of the names and positions of federal employees in Dr. Barnard's presence would not lead to an unwarranted invasion of privacy under Exemption (b)(7)(C)

Defendant's repeated reliance upon the sweeping general claim that "the document was generated for general law enforcement purposes" is unacceptable to justify the withholding of information under FOIA exemption (b)(7)(C). *See Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("FOIA places the burden of justifying nondisclosure on the agency seeking to withhold information, and this burden cannot be shifted to the courts by sweeping, generalized claims of exemption."). Defendant's claims fail to demonstrate that disclosure of the requested records "could reasonably be expected to constitute an unwarranted invasion of privacy." *See* 5 U.S.C. § 552(b)(7)(C).

Moreover, FOIA exemption (b)(7)(C) was designed "to protect . . . the personal privacy of citizens against the uncontrolled release of information . . . requir[ing] the courts to balance the competing interests in privacy and disclosure." *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (2004). This balancing, which serves to determine "whether disclosure of a private document under Exemption 7(C) is warranted[,] must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny[,] rather than on the particular purpose for which the document is being requested." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989) (quotation and citation omitted). Disclosure of the requested documents would uphold the basic purpose of the FOIA by ensuring that there is a continued "broad right of access to 'official information'" that opens agency action to the light of public scrutiny. *See id.*

Where the requested information "is not a compilation but rather a direct record of 'what the Government is up to,' it would seem likely that any privacy interest is at its nadir." *Summers v. DOJ*, 140 F.3d 1077, 1083 (D.C. Cir. 1998) (citing *Reporters Comm. for Freedom of Press*, 489 U.S. at 780). Personal privacy concerns are at their apex when requested documents would reveal little or nothing about government conduct. *See Reporters Comm. for Freedom of Press*, 489 U.S. at 773. In this case, the requested information constitutes records of "what the Government is up to," namely the baseless monitoring of the activities of private citizens. Such records are not protected under this exemption. *See Pratt*, 673 F.2d at 421 (stating that investigatory activities must relate to legitimate concerns for violations of federal laws or breaches of national security). When balancing the public interest in disclosure against minimal privacy concerns—here, the names and positions of federal employees and third parties in Dr. Barnard's presence—the balance weighs in favor of the public interest in disclosure.

FOIA exemption (b)(7)(C) does not exempt the disclosure of information that is or has been made public. As set forth above, Dr. Barnard is already familiar with the publicly-displayed names and positions of more than two dozen federal officials. Although exemption 7(C) "takes particular note of the strong interest of individuals . . . in not being associated unwarrantedly with alleged criminal activity," *Brunetti v. FBI*, 357 F. Supp. 2d 97, 105 (D.D.C. 2004), merely being within Dr. Barnard's presence during his lawful travels does not cause individuals to become associated unwarrantedly with alleged criminal activity. Thus, the privacy interest is far from its apex, and closer to its nadir. Because Defendant has failed to make any meaningful argument regarding unwarranted invasion of privacy interests, summary judgment should be granted in favor of Dr. Barnard on this ground.

> iii.    Defendant cannot invoke FOIA exemption (b)(7)(E) to
>         withhold inspection procedures witnessed by Dr. Barnard

Under FOIA exemption (b)(7)(E), an agency can withhold law enforcement records only to the extent that their production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Absent a showing by Defendant that disclosure of the requested records could reasonably be expected to risk circumvention of the law, Defendant must disclose the requested documents. Defendant's failure to satisfy this requirement entitles the award of summary judgment in favor of Dr. Barnard for the unjustified withholdings under FOIA exemption (b)(7)(E).

Defendant bears the burden of justifying its decision to withhold requested information. *See PHE, Inc.*, 983 F.2d at 250. Specifically, Defendant "must establish that releasing the

withheld materials would risk circumvention of the law." *Id.* Defendant repeatedly uses the same general, sweeping assertion to justify the exemptions, stating that the documents set forth

> CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators.

(*See* Barnard Ex. 6, at 2–5, 7–12; Barnard Ex. 7, at 1–9, 11.) This "[c]ategorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987). Defendant's repetitive use of the same categorical description of the withheld or redacted records fails to "adequately describe[ ] each withheld record or deletion and set[ ] forth the exemption claimed and why that exemption is relevant." *Id.* (citing *Paisley v. CIA*, 712 F.2d. 686, 690 n.12 (D.C. Cir. 1983)). Defendant must describe each portion redacted or withheld and discuss the consequences of disclosure absent the withholding. *Id.* at 223. Defendant is required to "disclos[e] as much information as possible without thwarting the exemption's purpose." *Id.* at 224.

Contrary to the general philosophy of FOIA's full disclosure, Defendant's correspondence, affidavits, and *Vaughn* Indices fail to satisfy these requirements with respect to FOIA exemption (b)(7)(E). Without the required descriptions and discussions for each withholding and each redaction, Defendant's proof is "wholly lacking in that specificity of description [the courts] have repeatedly warned is necessary to ensure meaningful review of an agency's claim to withhold information subject to a FOIA request." *Id.* at 223.

The inspection procedures witnessed by Dr. Barnard—which include detention, searches, marking of travel documents, use of a computer database, and inclusion on a "no fly" list—are common knowledge to the general public. While "techniques or procedures that are commonly known to the public 'may be protected from disclosure if the disclosure could reduce or nullify their effectiveness,'" *Keys v. DHS*, 510 F. Supp. 2d 121, 129 (D.D.C. 2007) (citation omitted), Defendant has not shown that disclosure of the inspection procedures employed upon Dr. Barnard could reduce or nullify their effectiveness. Indeed, any person who regularly travels by air has been subjected, at one time or another, to such inspection procedures by Defendant or its domestic travel counterpart, the Transportation Security Administration. Thus, the invocation of exemption (b)(7)(E) on this basis is improper. Defendant's failure to identify, describe, and discuss any reasonable risk of circumvention of the law or even a potential reduction in the effectiveness of techniques and procedures employed by Defendant calls for summary judgment in favor of Dr. Barnard regarding exemption (b)(7)(E).

### 3. Defendant Failed to Conduct a Reasonably Detailed Segregability Analysis

Defendant's failure to conduct a segregability analysis renders unacceptable the withholding of documents in their entirety. An "agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct with regard to part of the information." *Vaughn*, 484 F.2d at 825. Under the FOIA, the agency must "demonstrate that all reasonably segregable material has been released." *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). This requirement arises in light of the narrow construction placed on the exemptions from disclosure, so as "to provide maximum access consonant with the overall purpose of the Act." *Vaughn*, 484 F.2d at 823. Here, Defendant merely provided sweeping, categorical descriptions and explanations and sought to broadly

construe the exemptions to withhold documents in their entirety.  (*See generally* Barnard

Declaration Exs. 6–7, 9.)  However, Defendant's failure to provide any segregability analysis

necessarily voids any of Defendant's purported explanations.

      "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory

precept, agencies must be required to provide the reasons behind their conclusions in order that

they may be challenged by FOIA plaintiffs and reviewed by the courts."  *Mead Data Central,*

*Inc*, 566 F.2d at 261.  Furthermore, Defendant "should also describe what proportion of the

information in a document is non-exempt and how that material is dispersed throughout the

document.  Armed with such a description, both litigants and judges will be better positioned to

test the validity of the agency's claim that the non-exempt material is not segregable."  *Id.*  At no

point did Defendant attempt to describe the proportion of non-exempt information contained in

allegedly exempt documents to justify withholding documents in their entirety.  With neither a

sufficient segregability analysis nor a proportional description of non-exempt and exempt matter,

this Court is poorly positioned to carry out its responsibility to review agency FOIA

determinations *de novo*.

      The line-by-line analysis "to weigh the repercussions of disclosure" is a "burden [that]

has been placed specifically by statute on the Government."  *Weissman v. CIA*, 565 F.2d 692,

698 (D.C. Cir. 1977) (quotation and citation omitted).  Even if Defendant were to argue for *in*

*camera* review of the entirely withheld documents, the Court should be loath to burden the

judicial system with such an investment of energy, as such an analysis is best completed under

the expertise more appropriately found in the agencies.  Summary judgment therefore should be

granted to Dr. Barnard based on Defendant's failure to satisfy its burden of demonstrating non-

segregabilty

### 4.    Defendant Failed to Conduct a Reasonable Search for Responsive Records

When an agency cannot "show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents," summary judgment will not be granted in favor of the agency. *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The adequacy of a search is not determined based on "whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Id.* (citation omitted).  This adequacy is then "measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.'" *Id.* (citations omitted).

Defendant did not engage in a search reasonably calculated to uncover all relevant documents.  Defendant has not shown "which files were searched or by whom[,] . . . any systematic approach to document location, and . . . information specific enough to enable [the plaintiff] to challenge the procedures utilized." *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980).  It is the "appropriateness of the methods used to carry out the search" upon which a court will judge the adequacy of a FOIA search. *People for the American Way Found. v. NPS*, 503 F. Supp. 2d 284, 294 (D.D.C. 2007) (citation omitted).  Defendant has demonstrated the inadequacy of its searches by consistently supplementing the administrative record, as recently as June 19, 2008, with the results of subsequent searches for responsive records.  The inadequate, if not absent, discussion of the methods employed and reasonableness of Defendant's search weighs in favor of granting summary judgment in favor of Dr. Barnard.

## IV.    REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7(f), Dr. Barnard hereby requests an oral hearing as to the issues raised herein.  While ordinarily FOIA cases are susceptible to decisions on the papers, the tortured procedural history of Defendant's FOIA responses and its numerous false statements,

first to Dr. Barnard and then to the Court, make this case unusually complex. Dr. Barnard respectfully requests that the Court allow oral argument so that the parties can fully explore what happened here, determine why it happened, and assist the Court in its search for the truth and for the correct conclusion to this matter.

## V.    <u>CONCLUSION</u>

For all of the above stated reasons, this Court should grant Dr. Barnard's motion for reconsideration, grant Dr. Barnard's second motion for summary judgment, and deny Defendant's second motion for summary judgment.

Respectfully submitted,

/s/ Daniel Kinburn

_____

Daniel Kinburn
PHYSICIANS COMMITTEE FOR
 RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W., Suite 400
Washington, D.C. 20016
Attorney for Plaintiff
(202) 686-2210 ext. 380
(202) 686-2155 (fax)

Dated: June 25, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| NEAL D. BARNARD, M.D.,                          ) | |
| ) | |
| Plaintiff,                          ) | |
| ) | |
| v.                                  )                    Case No.:  06-CV-1393 (CKK) | |
| ) | |
| DEPARTMENT OF HOMELAND SECURITY,  ) | |
| ) | |
| Defendant.                          ) | |
| _____ ) | |

**STATEMENT OF MATERIAL FACTS AS TO**
**WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rules 7.1(h) and 56.1, Plaintiff submits its statement of material facts as to which there is no genuine issue:

1.      By letter dated July 20, 2005, Plaintiff Neal D. Barnard, M.D., submitted a request under the Freedom of Information Act and the Privacy Act (collectively "FOIA/PA") to U.S. Customs and Border Protection ("CBP") requesting all records pertaining to him.  (*See* Barnard Decl. ¶ 25; Ex. 2.)

2.      On August 15, 2005, Defendant, through CBP, informed Plaintiff that U.S. Immigration and Customs Enforcement ("ICE") owned and maintained the requested records and that Dr. Barnard should contact that agency.  (*See* Barnard Decl. ¶ 26; Ex. 4.)  Defendant's response to Dr. Barnard's FOIA/PA request did not provide any records maintained by CBP, nor did it advise Dr. Barnard of his rights to appeal the response under FOIA and the Privacy Act. (*See* Barnard Decl. ¶ 26; Ex. 4.)

3.      By letter dated March 21, 2006, Plaintiff submitted a FOIA/PA request to ICE requesting "any records created from January 1, 2002 to the present that were prepared, received,

transmitted, collected and/or maintained by Immigration and Customs Enforcement relating to

[fifteen specifically enumerated areas]." (*See* Barnard Decl. ¶ 25; Ex. 3.)

7.    On August 5, 2006, Defendant responded to Dr. Barnard's March 21, 2006

FOIA/PA request, advising him that ICE did not have any records responsive to his request. (*See*

Barnard Decl. ¶ 28; Ex. 5.)

8.    In its motion for summary judgment, dated February 20, 2007, Defendant stated

that ICE had retrieved 6 responsive pages from the Treasury Enforcement Communications

System ("TECS") database. (*See* Def. Mot. for Summ. J., at 2.) Defendant withheld all of these

pages in their entirety, invoking FOIA exemption 2, see 5 U.S.C. § 552(b)(2), and three

subsections of exemption 7, see 5 U.S.C. § 552(b)(7)(A), (C), (E). (*See* Notice Re: Compliance,

at 1.)

10.    In its court papers regarding in camera review of the records, dated January 23,

2008, Defendant revealed that it possessed 7, not 6, responsive ICE pages. (*See* Notice Re:

Compliance, at 1.) Defendant withheld all of these pages in their entirety, invoking FOIA

exemption 2, see 5 U.S.C. § 552(b)(2), and three subsections of exemption 7, see 5 U.S.C. §

552(b)(7)(A), (C), (E). (*See id.*)

11.    In its motion to stay, dated February 4, 2008, and an accompanying declaration,

Defendant revealed that Dr. Barnard is not the subject of an open and pending criminal

investigation. (*See* Def. Mot. Stay, at 3 n.2; Def. Mot. Stay Ex. B ("Second Marshall Decl.").)

12.    When Defendant filed its motion to stay, dated February 4, 2008, Dr. Barnard

learned for the first time that the open and pending criminal investigation alleged in Defendant's

court papers had closed. (Barnard Decl. ¶ 30.)

13.    In a declaration accompanying its motion to stay, Defendant explained that it had

not yet fully complied with Dr. Barnard's March 21, 2006 request to ICE as of February 4, 2008:

> ICE was in possession of non-ICE records owned by third agencies. Generally,
> ICE would refer such records to the appropriate third agency for review.
> However, ICE did not do so in this case. ICE did not document in its file why this
> was not done. Furthermore, the individual (Marshall H. Fields, Jr.) who reviewed
> those records is no longer employed at ICE. . . . [T]he third agency records are
> now being referred to the appropriate third agencies by CBP.

(Second Marshall Decl. ¶ 6.)

14.    In a declaration accompanying its motion to stay, Defendant explained that it did

not begin to process Dr. Barnard's July 20, 2005 FOIA/PA request to CBP until on or about

January 17, 2008.  (*See* Def. Mot. Stay Ex. C ¶¶ 3–6.)

15.    From February 5, 2008, to April 17, 2008, Defendant provided from CBP a total

of 12 unredacted pages and 163 redacted pages and withheld another 137 pages in their entirety.

(Joint Status Report of May 1, 2008 ¶ 2.)  As before, Defendant invoked FOIA exemptions

(b)(2), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).  (*See id.* ¶¶ 2–3.)

16.    On April 29, 2008, Dr. Barnard notified Defendant of his intent to challenge the

invocation of FOIA exemptions in certain redacted CBP documents and in all withheld CBP

documents as follows:

- (b)(6) – names of federal employees within Dr. Barnard's presence
- (b)(6) – positions of all federal employees
- (b)(6) – names of third parties within Dr. Barnard's presence
- (b)(7)(A) – law enforcement techniques and procedures to the extent that exemption
  relies on criminal investigation into Dr. Barnard's activities
- (b)(7)(C) – names of federal employees within Dr. Barnard's presence
- (b)(7)(E) – inspection procedures witnessed by Dr. Barnard

(*Id.* ¶¶ 3–4.)  Defendant did not agree to withdraw any of the exemptions at this time.  (*See id.* ¶¶

4–5.)

17.     After this Court issued a scheduling order, Defendant requested an amendment to the briefing schedule to allow it time to consider whether to withdraw one or more of the exemptions invoked by CBP.  (*See* Def. Consent Motion to Amend the Court's May 5, 2008 Minute Order, at 1–2).

18.     Defendant then withdrew invocation of exemption of (b)(7)(A) for all 300 redacted or withheld CBP pages.  (*See* Def. Consent Mot. to Amend the Court's May 19, 2008 Order, at 1.)

19.     On June 16, 2008, Defendant informed the Court that ICE had located additional documents responsive to Dr. Barnard's request and had referred certain of these documents to CBP for processing.  (*See id.* at 2).  Defendant requested another amendment to the briefing schedule to allow time to process and review the remaining documents.  (*See id.*)

20.     By letter dated June 16, 2008, Dr. Barnard received from Defendant 13 additional CBP pages, all of which were partially redacted under the same FOIA exemptions Defendant had cited previously for CBP documents.  (*See* Barnard Decl. ¶ 32; Barnard Decl. Ex. 8.)

20.     By letter dated June 19, 2008, Dr. Barnard received 7 pages of ICE records responsive to his request of March 21, 2006.  Defendant entirely withheld 4 pages of ICE records, invoking FOIA exemption 2, *see* 5 U.S.C. § 552(b)(2), and three subsections of exemption 7, see 5 U.S.C. § 552(b)(7)(A), (C), (E).  (*See* Barnard Decl. ¶ 33; Barnard Decl. Ex. 9.)

Respectfully submitted,

/s/ Daniel Kinburn

_____

Daniel Kinburn
PHYSICIANS COMMITTEE FOR
 RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W., Suite 400

Washington, D.C. 20016
Attorney for Plaintiff
(202) 686-2210 ext. 380
(202) 686-2155 (fax)

Dated: June 25, 2008