# Exhibit 1



## U.S. Customs Service

1300 Pennsylvania Avenue, N.W.   Washington, D.C. 20229

JAN 1 6 2003

DIS 6 OI:APP:ID
03-TC-11027 SBP

Neal D. Barnard, M.D.
5500 Friendship Boulevard
Chevy Chase, Maryland 20815

Dear Dr. Barnard:

This is in further reference to your letter dated January 9, 2003, wherein you expressed concerns regarding problems you have been experiencing clearing Customs when returning to the United States from foreign travel.

Please be assured that it is not the intent of the U.S. Customs Service to subject travelers to unwarranted scrutiny. You are entitled to the utmost courtesy and professionalism that can be offered within the limits of our enforcement responsibilities. However, we trust that individuals like yourself will understand that the mission of the Customs Service is, not only to ensure the security and protection of our borders in the highest tradition, but also to serve the traveling public to the best of our ability, while providing maximum service with minimum interruptions. These two positive objectives sometimes overlap and necessitate some inconvenience in the processing of travelers.

Please be advised that our review of the Treasury Enforcement Communications System (TECS), which houses the Interagency Border Inspection System (IBIS), leads us to believe there are two situations that are altering the routine nature of your Customs processing. First, as you can imagine, the September 11, 2001, attack on our Nation has placed all of our airports, seaports and land border crossings on a high state of alert, which means that travelers are being more intensely examined than ever before. This elevated level of scrutiny is essential to the public's confidence that the government has indeed made their safety and security a premier concern. Second, if you are traveling frequently to and from the United States, your repetitive entry and exit can increase the likelihood that you may receive a higher level of scrutiny than would normally be the case. This is due to a random selection process that is directly based on travel frequency. Under either of these two circumstances, we routinely rely on the independent judgement of our Customs officers to determine the extent of examination necessary in order to satisfy any inquiries and concerns they

TRADITION

SERVICE

HONOR

- 2 -

may have.  That examination can many times include an array of screening tools and methodologies, as well as interview techniques, which we always attempt to employ in a professional and accurate manner.

Should you have any further questions regarding these matters, please feel free to contact my Assistant Director, Stephen Plitman, at (202) 927-0970.

Sincerely,

Gloria L. Marshall
Director, Information Disclosure
Administration, Planning and Policy
Office of Investigations

# Exhibit 2

**Neal D. Barnard, MD**
5500 Friendship Blvd., Apt. 1112-N
Chevy Chase, MD 20815
Tel: 202-686-2210 (w)
Fax: 202-686-2216

July 20, 2005

Privacy Act/Freedom of Information Act Request
Bureau of Customs and Border Protection
Office of Field Operations, Customer Satisfaction Unit
1300 Pennsylvania Avenue, NW, Suite 5.5 C
Washington, D.C. 20229

**PRIVACY ACT/FOI ACT REQUEST**

Dear FOI/PA Officer:

Pursuant to both the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, I request access to and copies of all records about me that are in IBIS or any other system used by the Bureau of Customs and Border Protection at any and all ports of entry to the United States.

To assist with your search for these records, I am providing the following additional information about myself:

Full Name: Neal Dana Barnard ████████████████████████

Date and Place of Birth: Ft. Devens, Massachusetts; ████████████████

Since January 2003, I have been repeatedly stopped and questioned by Customs Officers at U.S. Customs in the Toronto, Canada airport and at Dulles International Airport in Washington D.C. After a Customs Officer scans my passport, I am sent for further security checks where I am questioned and my bags searched. I am detained until an official can "green-light" my exit.

I agree to pay reasonable duplication fees for the processing of this request in an amount not to exceed $25. If the estimated fees will be greater than that amount, please contact me by telephone before such expenses are incurred.

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions in either act. If you determine that any portions of these documents are exempt under either of these statutes, I will expect you to release the non-exempt portions to me, as the law requires. I reserve the right to appeal your decision to withhold information.

If you have any questions regarding this request, please contact me by telephone. Thank you for your assistance. I will look forward to receiving your reply within 20 business days, as the statute requires.

Sincerely,

Neal D. Barnard, M.D.

District of Columbia : SS
Subscribed and Sworn to before me, in my presence, this 20 day of July , 2005

Ronald S. Little, Notary Public, D.C.
My commission expires May 31, 2009

# Exhibit 3



**DANIEL KINBURN**
**Associate General Counsel**
**Writer's Direct Number: (202) 686-2210 ext. 308**
**Writer's Direct Fax: (202) 686-2155**
**Writer's E-Mail: DKinburn@pcrm.org**

March 21, 2006

FOIA/PA Section
Information Disclosure Unit
Mission Support Division
Office of Investigations
U.S. Immigrations and Customs Enforcement
425 I Street, NW - Room 4038
Washington, D.C. 20536

Re:   **REQUEST UNDER FREEDOM OF INFORMATION AND PRIVACY ACTS**

This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. § 552,
the Privacy Act, 5 U.S.C. § 552a, and the Department of Homeland Security implementing
regulations, 6 C.F.R. §§ 5.3, 5.21, by Neal D. Barnard, M.D.:

| | |
|---|---|
| Name: | Neal Dana Barnard, M.D. |
| Current Address: | 5500 Friendship Blvd, Apt. 1112-N |
| | Chevy Chase, MD 20815 |
| Daytime Telephone: | (202) 686-2210, ext. 303 |
| | ████████████████ |
| Place of Birth: | Ft. Devens, MA |

Dr. Barnard verifies his identity in accordance with 28 U.S.C. § 1746 and 5 C.F.R. §§ 5.3(a),
5.21(d).

I.    **About Neal D. Barnard, M.D.**

Neal D. Barnard, M.D., is the president and founder of the Physicians Committee for
Responsible Medicine ("PCRM"), a 501(c)(3) public charity that advocates preventive health
care through better nutrition and by promoting more effective, ethical, and compassionate
scientific research. Dr. Barnard is the author of several dozen publications in scientific and
medical journals as well as numerous nutrition books for lay readers, and he is frequently called
on by news programs to discuss issues related to nutrition, research, and other areas of modern

Freedom of Information and Privacy Act Request
March 21, 2006
Page 2

medicine. His activities are reported to over 120,000 physician and lay members in PCRM's quarterly publication, "Good Medicine." Dr. Barnard previously filed a request with U.S. Customs and Border Projection ("CBP"), No. "DIS-6-OFO:FP RR; 2005T2952," to which he received a letter, dated August 15, 2005, advising him to contact Immigrations and Customs Enforcement for information on the records requested below. Dr. Barnard has no commercial interest in the records being sought.

## II.    The Request for Information

Dr. Barnard seeks disclosure of any records[1] created from January 1, 2002 to the present that were prepared, received, transmitted, collected and/or maintained by Immigrations and Customs Enforcement relating or referring to the following:

1.    Any records relating or referring to Dr. Barnard, including but not limited to records that document any collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard or his activities;[2]

2.    Any orders, agreements, or instructions to collect information about, monitor, conduct surveillance of, observe, question, interrogate, and/or investigate Dr. Barnard;

3.    Any records relating or referring to how, why or when Dr. Barnard was selected for collection of information, monitoring, surveillance, observation, questioning, interrogation, and/or investigation;

4.    Any records relating or referring to Dr. Barnard's selection for collection of information, monitoring, surveillance, observation, questioning, interrogation, and/or investigation at the following times:

a.    January 4, 2003: CBP officials questioned, searched, and delayed Dr. Barnard for 20 minutes upon his return from vacation abroad. Officials informed him that his passport had been flagged for scrutiny.

---

[1] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

[2] The term "activities" as used herein includes, but is not limited to, any activities of Dr. Barnard described in Section I above and any advocacy, provision of services, lobbying, organizing, fundraising, meetings, conventions, or campaigns, and any media or communications to, from or about Dr. Barnard in any form (including any oral, written, electronic, or online communications, including but not limited to any books, pamphlets, brochures, newsletters, fundraising letters, correspondence, action alerts, e-mail, web communications, discussion groups, or listservs).

Freedom of Information and Privacy Act Request
March 21, 2006
Page 3

    b.    May 10, 2003: CBP officials detained Dr. Barnard at Toronto Pearson International Airport for 20 to 30 minutes, interrogated him about the nature of his work, and searched his belongs. At this time, Dr. Barnard observed "Terrorist Organization Member - Caution" in large block letters on the CBP computer screen;

    c.    June 3, 2003: CBP officials searched and questioned Dr. Barnard at Dulles International Airport for 30 minutes upon his return from a vacation in Europe. Officials searched Dr. Barnard's baggage and removed, to make photocopies, a personal calendar and address book, correspondence, and a job applicant's résumé;

    d.    July 16, 2003: CBP officials detained Dr. Barnard in the screening room at Toronto Pearson International Airport for questioning for more than 20 minutes;

    e.    August 28, 2003: CBP officials, including Officers Weimer and Hanna, delayed and screened Dr. Barnard for 15 minutes at Toronto Pearson International Airport, at which time Dr. Barnard observed the "Terrorist Organization Member" notice on the CBP computer screen;

    f.    January 3, 2004: CBP Officers Tweed and Grove stopped Dr. Barnard at Dulles International Airport upon his return from the United Kingdom and searched his baggage;

    g.    September 10, 2004: Upon Dr. Barnard's return from a trip to Belgium and France, CBP Officer Berg marked a yellow line on Dr. Barnard's customs card, after which Officer Greskovic searched his baggage;

    h.    January 1, 2005: CBP officials delayed Dr. Barnard for 30 minutes upon his return from a trip to the United Kingdom. After Officer Messina marked a yellow line on Dr. Barnard's customs card, Officers Cromwell and Perlas searched his baggage;

    i.    May 13, 2005: Police officers briefly detained Dr. Barnard as he checked in with Air France at Dulles International Airport because his name appeared on a "no-fly" list;

    j.    May 28, 2005: CBP officials delayed Dr. Barnard for 12 minutes at Dulles International Airport upon his return from France. Officer Wilkinson marked a yellow line on Dr. Barnard's customs card and Officers Stuart and Greene, assisted by a third officer, checked his passport, after which Officer Stuart searched his baggage;

Freedom of Information and Privacy Act Request
March 21, 2006
Page 4

     k.     August 27, 2005: CBP Officers Ulloa, Miller, Comas, and Brodie delayed, questioned, and searched Dr. Barnard for 20 minutes at Dulles International Airport upon his return from Marseilles;

     l.     September 22, 2005: While checking in at Dulles International Airport, Dr. Barnard learned from United Airlines that his name matched the name of a person on the "no-fly" list. Dr. Barnard was later sidelined for screening and inspected by Earle Biassey;

5.     Any records relating or referring to any "no-fly" or other lists that include Dr. Barnard's name and that would cause him to be stopped, searched, and/or screened by CBP during international travel in the ways described in number 4 above.

6.     Any records relating or referring to how collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard was or will be conducted;

7.     Any records relating or referring to the names of any other federal, state, or local government agencies participating in any collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard;

8.     Any records relating or referring to the specific role of any federal, state, or local government agency participating in any collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard;

9.     Any records relating or referring to how, why or when collection of information about, monitoring, surveillance, observation, questioning, interrogation, and/or investigation of Dr. Barnard was or will be suspended or terminated.

10.     Any records relating or referring to how records about Dr. Barnard have been, will be, or might be used;

11.     Any policies or procedures for analyzing records about Dr. Barnard;

12.     Any policies or procedures for cross-referencing records about Dr. Barnard with information contained in any database;

13.     Any policies or procedures for cross-referencing records about Dr. Barnard with information about any other individuals or organizations;

14.     Any policies or procedures for cross-referencing records about Dr. Barnard with any other information not covered in numbers 10 and 11 above;

15.     Any policies or procedures regarding retention of records about Dr. Barnard;

Freedom of Information and Privacy Act Request
March 21, 2006
Page 5

16.  Any records referring or relating to the destruction of records about Dr. Barnard, including any policies permitting or prohibiting the destruction of records;

17.  Any records referring or relating to how records about Dr. Barnard were destroyed or might be destroyed in the future;

18.  Any records referring or relating to the recipient(s) of records about Dr. Barnard.

**III.   Limitation of Processing Fees**

Dr. Barnard requests a limitation or restriction of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . ."), 6 C.F.R. § 5.11(c)(1)(i), (c)(3), (d)(1) (search and review fees shall not be charged to "representatives of the news media"), and 6 C.F.R. § 5.29 (Privacy Act fees will be charged in accordance with 6 C.F.R. § 5.11). As a "representative of the news media" who lectures frequently and authors articles for numerous publications, Dr. Barnard fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

**IV.   Partial Response or Denial**

If this request is denied in whole or in part, please justify all deletions by reference to specific exemptions to FOIA and the Privacy Act. Dr. Barnard expects the release of all segregable portions of otherwise exempt material.

Thank you for your prompt attention to this matter. If you have any questions or comments, please call.

Very truly yours,

Daniel Kinburn

I hereby authorize Daniel Kinburn access to my records. I declare under penalty of perjury that the foregoing is true and correct. Executed on March 21, 2006.

Neal D. Barnard, M.D.

DK/dk
Enclosure

# Exhibit 4



U.S. Department of Homeland Security
Washington, DC 20229

**U.S. Customs and
Border Protection**

DIS-6-OFO:FP  RR
2005T2952

August 15, 2005

Neal D. Barnard
5500 Friendship Blvd., Apt. 1112-N
Chevy Chase, MD 20815

Dear Mr. Barnard:

Thank you for your letter concerning the difficulties you are experiencing when
processing through U.S. Customs and Border Protection (CBP).  Please allow
me to address your concerns.

Please be assured that it is not the intent of CBP to subject travelers to
unwarranted scrutiny.  Each traveler is entitled to the utmost courtesy and
professionalism that can be offered within the limits of our enforcement
responsibilities.  Regrettably, our efforts can occasionally cause inconvenience.

After careful review of our records, we have determined that the records to which
you are referring are owned and maintained by Immigration and Customs
Enforcement, 425 I Street, NW, Chester Arthur Building, Room 4038,
Washington, DC 20536.  In order for any changes to be made to this record you
would need to contact their office.  We are not able to amend the records at this
time, as it can only be done by the originating agency.

We regret any inconvenience you have experienced during CBP processing.  We
hope your future encounters with CBP will be of a more pleasant nature.

If you have any questions or need additional information regarding this matter,
please contact me or a member of my staff at (202) 344-1850.

Sincerely,

Kathleen Dailey McKevitt
Acting Director, Field Programs
Office of Field Operations

# Exhibit 5



*Office of Investigations*
U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536

## U.S. Immigration and Customs Enforcement

DIS 2-01 OI:MS:ID
06-FOIA-22113 AAA
AUG 5 2006   X04-FOIA-15780 AAA

Mr. Daniel Kinburn
5100 Wisconsin Avenue, N.W.
Washington, DC 20016

Dear Mr. Kinburn:

This is in further response to your request dated March 21, 2006 and Mr. Barnard's requests dated August 8, 2003 and July 20, 2005, wherein you and Mr. Barnard, requested pursuant to the Freedom of Information Act (FOIA), access to records pertaining to Mr. Neal D. Barnard, himself.

With respect to your FOIA submission, please be advised that we have no records responsive to your request.

First let us apologize for any inconvenience or unpleasantness you may have experienced. On behalf of the Department of Homeland Security (DHS), let me assure you that it is not our intent to subject the traveling public to unwarranted scrutiny. The traveling public is entitled to, and is accorded, the utmost courtesy and facilitation we can offer within the limits of our enforcement responsibilities. Regrettably, our efforts cannot always be as you might hope.

Please understand that in order to detect those international travelers involved in illicit activities we must, at times, unfortunately, inconvenience law abiding travelers. We are especially aware of how those selected for inspection may perceive the inspection process as upsetting, uncomfortable, inconvenient, and stressful. That is why on a nation-wide basis we emphasize to our officers the need to perform their duties with the highest level of courtesy and professionalism.

While no one can guarantee complete freedom from intensive inspections, whether they are random or specific, we can strive for a better understanding of our mutual needs. DHS must rely upon the professional judgment of individual inspection officers to determine the extent of examination necessary and to do their best to differentiate between travelers who are of interest to DHS, and those who are not.

Mr. Daniel Kinburn
Page 2

If you are dissatisfied with our response, you may challenge the adequacy of our search. Therefore, you may appeal this determination, in writing, within 35 days after the date of this notification to the Privacy Office, Attn: FOIA Appeals, Department of Homeland Security, 245 Murray Lane, SW, Building 410, Washington, D.C. 20528.

Also, enclosed is an information sheet pertaining to exemptions from disclosure under the FOIA, and your right to administrative appeal and judicial review.

Sincerely,

Gloria L. Marshall
Chief, Information Disclosure Unit
Mission Support Division
Office of Investigations

Enclosure

# Exhibit 6

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*

Case No. 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 001 | Port of Toronto | Internal report regarding an entry to the U.S. on July 14, 2006. The internal report pertains to the inspection of the Plaintiff that occurred on July 14, 2006. | 1 | The internal identification codes and record identification numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The document sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. Names and positions of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the report sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop |

Government's Exhibit E

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No. 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 002 | Located in internal CBP database at CBP Headquarters, Washington, D.C. | Automated Targeting System (ATS) record display regarding entry to the U.S. on June 8, 2006. ATS assists CBP officers at the borders in effectively and efficiently identifying cargo, individuals, or conveyances that may present a risk to the United States. Specifically, | 1 | The internal identification codes, record identification numbers, and fax/telephone numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The document sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. Names and positions of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the record sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and |
|  |  | countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. |  |  |

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | ATS uses information from CBP's law enforcement databases, derived from the Terrorist Screening Database (TSDB), information on outstanding wants or warrants, information from other government agencies, and risk-based rules developed by analysts to assess and identify high-risk cargo, conveyances, and travelers that | | internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. |

Government's Exhibit E

Government's Exhibit E

## DOCUMENTS RELEASED IN PART

### Vaughn Index for *Barnard v. Department of Homeland Security*
### Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 003 | Located in the Treasury Enforcement Communications System (TECS) | TECS record display dated September 2, 2006. TECS is an overarching law enforcement information collection, risk assessment, and information sharing environment. It is also a repository for law enforcement | 1 | The computer codes, internal identification codes, record identification numbers, and fax/telephone numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The document sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. As stated above, the record sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing |
| | | may pose a greater risk of terrorist or criminal activity and therefore should be subject to further scrutiny or examination. | | |

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | and investigative information. TECS is comprised of several modules that collect, maintain and evaluate screening data and makes information available to appropriate law enforcement officers of the U.S. government. | | procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. |
| 004 | Located in TECS | TECS record display dated September 2, 2006. The record shows traveler details. | 1 | The computer codes and the record identification number are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. |
| 005 | Located in TECS | TECS Record Display dated September 2, | 1 | The computer codes and the record identification number are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The document |

DOCUMENTS RELEASED
IN PART

*Vaughn Index for Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | 2006. This record shows more information on the traveler. | | sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. As stated above, the record sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. |
| 006-007 | Located in TECS | TECS Record Display dated September 14, 2005 (TECS II Screen Print) | 2 | The computer codes, internal codes, record identification numbers, and telephone numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The document sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop |

6

## DOCUMENTS RELEASED
## IN PART
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | | | countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators  As stated above, the record sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. |
| 008-024 | Located in TECS | TECS Record Display (TECS II Person Subject Display). These records include details about a specific person and is the result of a person subject query in TECS. | 17 | The computer codes, internal identification codes, record identification numbers, referral codes, and fax/telephone numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The documents sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also |

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No. 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 025-032 | Located in TECS | TECS II Display. These records provide information on reported incidents at the time of entry | 8 | reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. Names and positions of federal employees and names of third parties are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy, and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the documents set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators.

The computer codes, internal identification codes, record identification numbers, referral codes, and fax/telephone numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The documents set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP |

Government's Exhibit E

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 033-049 | Located in TECS | TECS Record | 17 | into the U.S. and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. Names and positions of federal employees and names of third parties are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy, and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the record sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. The computer codes, referring officer codes, incident numbers, |

Government's Exhibit E

9

DOCUMENTS RELEASED
IN PART
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | Display (TECS II Secondary Inspection). These records report details of secondary inspections conducted at the Ports of Entry. | | category violation codes and indicators, site codes, record identification numbers, and telephone numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The document sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators.. Names and positions of federal employees and names of third parties are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the documents set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential |

Government's Exhibit E

10

11

# DOCUMENTS RELEASED
## IN PART
### Vaughn Index for *Barnard v. Department of Homeland Security*
### Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 050-052 | Located in TECS | TECS Record Display (TECS II IO95 Inspection Results). These records provide details of IO95 inspections that occur at the Ports of Entry. | 3 | The computer codes, referral codes, internal identification numbers and the record identification number are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The documents set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. As stated above, the documents set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may |
|  |  |  |  | be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. |

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 053 | Located in TECS | TECS Record Display (Passenger Activity Report Search Screen). This record is a search query screen indicating that a query of the system conducted on January 17, 2008 regarding passenger activity. | 1 | The handwritten note indicating an internal search code is redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. |
| | | | | be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. |
| 054-068 | Located in the Treasury Enforcement Communications System | TECS Record Display (Passenger Activity Report). These records are the | 15 | The internal identification codes, printer location numbers, site codes and record identification numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The documents set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and are withheld pursuant to Exemption (b)(2) (high 2) that |

Government's Exhibit E

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 069-142 | Located in TECS | TECS Record Display (Advance Passenger Information (API) data). These records include details from the passenger and result of a query of the system conducted on January 17, 2008 and show the international travel/passenger activity. | 74 | The internal identification codes and printer location numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The documents set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to evade detection, inspection and targeting methods.<br><br>allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Names and social security numbers of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and social security numbers could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the documents set forth CBP procedures, methods, intra/inter-agency coordination (if any) and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. |

Government's Exhibit E

## DOCUMENTS RELEASED IN PART

### Vaughn Index for *Barnard v. Department of Homeland Security*
### Case No: 06–CV–1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 143–163 | Located in ATS– Passenger | Passenger Name Record (PNR). crew manifests for international travel. The API information is collected in advance of a passenger's arrival or departure from the United States in order to perform law enforcement queries to identify security risks to the aircraft or vessel, to its occupants, or to the United States and in order to expedite CBP processing. | 21 | Air carrier information regarding specific passengers that consists of confidential business information is withheld pursuant to Exemption (b)(4) that provides for the protection of commercial or financial inspection and targeting methods. The social security numbers of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the social security numbers could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the report sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. |

14

DOCUMENTS RELEASED
IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | Passenger Name Record (PNR) data, is data provided to commercial air carriers by or on behalf of air passengers seeking to book travel. CBP has required air carriers to transmit PNR for flights to and from the U.S. to CBP since June, 25, 2002. | | information obtained from a person that is privileged or confidential. Names of third parties and other personally identifiable information associated with third parties are withheld pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the third party information could reasonably be expected to be an unwarranted invasion of personal privacy. |
| 301-303* | Referred by U.S. Immigration and Customs Enforcement | Customs Declarations | 3 | The badge numbers of federal employees and fax numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows the withholding of internal agency matters of a relatively trivial nature. The documents set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP |

---
* Please note that Bates Stamp Numbers 164-300 are discussed on the <u>Vaughn</u> Index for Documents Withheld in Full.

## DOCUMENTS RELEASED IN PART

### Vaughn Index for *Barnard v. Department of Homeland Security*
### Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | | | and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. The badge numbers of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the badge numbers could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the report sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. |
| 304-313 | Referred by U.S. Immigration and Customs Enforcement | TECS II Display. These records provide information on reported | 10 | The internal identification codes, incident report numbers, incident type codes, and fax numbers are redacted pursuant to Exemption (b)(2) (low 2) which allows for the withholding of internal agency matters of a relatively trivial nature. The documents set forth CBP investigative procedures, methods, intra/inter-agency coordination (if |

Government's Exhibit E

## DOCUMENTS RELEASED
## IN PART

Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | incidents at the time of entry into the U.S. | | any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. Names and positions of federal employees and names of third parties are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy, and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the record sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and such information is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. |

17

# Exhibit 7

**DOCUMENTS WITHHELD IN FULL**
*Vaughn Index for Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 164-167 | Located at the Toronto Port of Entry and in an internal CBP database maintained at Office of Field Operations | CBP Internal Memoranda | 4 | The memos contain internal identification codes, phone/fax numbers that pursuant to Exemption (b)(2) (low 2) should not be released because they relate to internal agency practices. The documents as a whole set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and are withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. The memos contain the names and titles of federal employees and are withheld pursuant to Exemption (b)(6) as information the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; and Exemption (b)(7)(C) as information that was generated for general law enforcement purposes and the disclosure of names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the memos as a whole set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection |

1

DOCUMENTS WITHHELD IN FULL

Vaughn Index for *Barnard v. Department of Homeland Security*

Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 168-215 | Located in internal CBP database, maintained at CBP Headquarters, Washington, D.C. | Automated Targeting System (ATS) Record Display | 48 | The documents contain internal identification codes, record identification numbers, reference numbers, and telephone/fax number(s) which pursuant to Exemption (b)(2) (low 2) should not be released because they relate to internal agency practices. The documents as a whole set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and are withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. Names and positions of federal employees and third parties are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the documents as a whole set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld |
| | | | | and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. |

DOCUMENTS WITHHELD IN FULL

Vaughn Index for *Barnard v. Department of Homeland Security*

Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 216-222 | Located in internal CBP database and/or hard copy form, maintained at Office of Field Operations | Communication Log | 7 | The logs contain various internal identification codes, record identification numbers, reference numbers, handling codes and telephone/fax number(s) and pursuant to Exemption (b)(2) (low 2) should not be released because they relate to internal agency practices. The logs as a whole set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and are withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. Names and positions of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated |
| | | | | pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. |

3

DOCUMENTS WITHHELD IN FULL
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 223-226 | Located in internal CBP database, maintained at CBP Headquarters, Washington, D.C. | ATS Record Display | 4 | above, the logs as a whole set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. <br><br> The documents contain various internal identification codes, reference numbers, and telephone number(s) which pursuant to Exemption (b)(2) (low 2) should not be released because they relate to internal agency practices. The documents as a whole set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and are withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. Names and positions of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law |

DOCUMENTS WITHHELD IN FULL
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 227-230 | Located in internal CBP database, maintained at CBP Headquarters, Washington, D.C. | ATS Record Display | 4 | enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the documents as a whole set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. The documents contain various internal identification codes, reference numbers, and telephone number(s) which pursuant to Exemption (b)(2) (low 2) should not be released because they relate to internal agency practices. The documents as a whole set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and are withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. Names and positions of federal employees are redacted pursuant to Exemption (b)(6) because release would be |

DOCUMENTS WITHHELD IN FULL
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 231-233 | Toronto Port of Entry | CBP Internal Report | 3 | considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the documents as a whole set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators.

The internal report contains internal identification codes, reference numbers and telephone/fax/cell phone number(s), which pursuant to Exemption (b)(2) (low 2) should not be released because they relate to internal agency practices. The internal report as a whole sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and are withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special |

DOCUMENTS WITHHELD IN FULL

Vaughn Index for *Barnard v. Department of Homeland Security*

Case No.: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 234 | Located in internal CBP computer on a shared drive with limited access at CBP Headquarters, Washington, D.C. | CBP Internal Report | 1 | units that were deployed (if any), which could be similarly utilized by potential violators.  Names and positions of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy, and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy.  As stated above, the report as a whole sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods.  Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. The internal report contains internal identification codes, record identification numbers, reference numbers, and telephone/facsimile number(s) and the location of the reporting office which pursuant to Exemption (b)(2) (low 2) should not be released because they relate to internal agency practices.  The internal report as a whole sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and are withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which |

DOCUMENTS WITHHELD IN FULL
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 235-236 | Located in internal CBP computer on a shared drive with limited access at CBP Headquarters. | CBP Internal Report | 2 | The report includes report numbers, reference numbers and telephone/fax number(s) which pursuant to Exemption (b)(2) (low 2) should not be released as they pertain to internal agency matters. The report as a whole sets forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. As stated above, the report as a whole sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to low an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. Names and positions of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the federal names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the report as a whole sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to low an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, and special units that were deployed (if any), which could be similarly utilized by potential violators. |

DOCUMENTS WITHHELD IN FULL
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| 237 | Washington, D.C. | Treasury Enforcement Communications | TECS Record Display | 1 | in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. Names and positions of federal employees are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names and titles could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the report as a whole sets forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. The record contains computer codes, individual computer terminal codes, record numbers, other internal codes and a telephone number which pursuant to Exemption (b)(2) (low 2) should not be released |

9

DOCUMENTS WITHHELD IN FULL
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | System (TECS) | | | because they relate to internal agency practices. The TECS record also provides information about investigative techniques and intra-agency law enforcement coordination (if any) and is withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Similarly, the information containing investigative techniques and intra-agency law enforcement coordination (if any) are withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. |
| 238-300 | Located in internal CBP database, maintained at CBP Headquarters, Washington, D.C. | ATS Record Display | 63 | The documents contain internal identification codes and record numbers that pursuant to Exemption (b)(2) (low 2) should not be released because they relate to internal agency practices. The documents as a whole set forth CBP investigative procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and are withheld pursuant to Exemption (b)(2) (high 2) that allows for the withholding of information consisting of internal matters the disclosure of which would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential |

DOCUMENTS WITHHELD IN FULL
Vaughn Index for *Barnard v. Department of Homeland Security*
Case No: 06-CV-1393 (D.D.C.)

| Bates Stamp Number(s) | Location & Other Document Identifiers | Description | Total Number of Pages | Disposition & Exemption(s) |
|---|---|---|---|---|
| | | | | violators. Names and positions of third parties are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy; and Exemption (b)(7)(C), because this document was generated for general law enforcement purposes and disclosure of the names could reasonably be expected to be an unwarranted invasion of personal privacy. As stated above, the documents as a whole set forth CBP procedures, methods, intra/inter-agency coordination (if any) and internal routing procedures in regard to how an individual is processed through CBP and is withheld pursuant to Exemption (b)(7)(E) because disclosure would reveal CBP examination or inspection procedures and permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Release would also reveal internal reporting requirements and instructions on how to process international travelers, which could be similarly utilized by potential violators. |

11

# Exhibit 8

**U.S. Department of Homeland Security**
Washington, DC 20229



**U.S. Customs and
Border Protection**

DIS-2 OT:RR:RDL:FAPL
H021882

JUN 16 2008

Mr. Neal Barnard, M.D.
Physicians Committee for Responsible Medicine
5100 Wisconsin Ave., NW Suite 400
Washington, DC 20016

Dear Mr. Barnard:

This is in further reference to your July 20, 2005 Freedom of Information Act (FOIA)
request. On February 5, 2008, we provided you with eighty-one (81) pages of redacted
records, on April 1, 2008 we provided you with a one (1) page redacted record and on
April 17, 2008, we provided you with 82 pages of redacted records and 11 pages
released in full. Although we stated that our April 17, 2008 letter was our third and final
response, we were notified by U.S. Immigration and Customs Enforcement (ICE) on
June 6, 2008 that ICE had located an additional thirteen (13) pages of responsive
records belonging to U.S. Customs and Border Protection.

We note that ten (10) of the pages are Treasury Enforcement Communication System
(TECS) records which are almost identical to TECS records released previously.
However, since the records are not exact duplicates of the ten (10) pages previously
released, we processed the records.

After reviewing the 13 pages, we have decided to release all 13 pages with certain
information redacted pursuant to Exemptions (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E) of the
FOIA. Exemption (b)(2) of the FOIA, 5 U.S.C. § 552(b)(2), pertains to purely internal
agency practices; exemption (b)(6) of the FOIA, 5 U.S.C. § 552(b)(6), pertains to
information the release of which would constitute a clearly unwarranted invasion of the
personal privacy of third parties; exemption (b)(7)(C) of the FOIA, 5 U.S.C. §
552(b)(7)(C), pertains to records compiled for law enforcement purposes, the release of
which could reasonably be expected to constitute an unwarranted invasion of the
personal privacy of third parties; and, exemption (b)(7)(E) of the FOIA, 5 U.S.C. §
552(b)(7)(E), pertains to records compiled for law enforcement purposes, the release of
which would disclose certain techniques or procedures for law enforcement
investigations or prosecutions. For your information, the withheld material consists of,
but is not limited to, names, techniques used by law enforcement personnel, computer
codes and administrative markings.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal. If you are not satisfied with my action on your request, you may administratively appeal from this partial denial by writing to the FOIA Appeals Officer, Regulations and Rulings, Office of International Trade, U.S. Customs and Border Protection, 1300 Pennsylvania Ave., NW, Mint Annex, Washington, D.C. 20229, within sixty (60) days after the date of this determination letter. The appeal must be in writing and signed; contain your name and address; date of the initial request; date and control number of the letter denying your request; description of the records or information withheld; and reason(s) you believe that the records or information should be disclosed. Your appeal letter and mailing envelope should be marked "FOIA Appeal."

Sincerely,

Shari Suzuki, Branch Chief
FOIA Appeals, Policy, and Litigation Branch

Enclosure
(13 pages with redactions)

# Exhibit 9

*Office of Investigations*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536



U.S. Immigration
and Customs
Enforcement

JUN 1 9 2008

Mr. Daniel Kinburn
Physicians Committee for Responsible Medicine
5100 Wisconsin Avenue, N.W., Suite 400
Washington, DC 20016

Re:     DIS 2-01 OI:MS:ID
        06-LITI-26180
        06-FOIA-22113

Dear Mr. Kinburn:

This is a second supplemental response to your Freedom of Information Act (FOIA) request
dated March 21, 2006, and Dr. Neal D. Barnard's FOIA request dated July 20, 2005,
requesting access to records pertaining to Dr. Barnard.

Upon further review of your FOIA requests, this Office conducted an additional search for
documents responsive to your requests. As a result of our search, we located eleven (11)
additional pages of records responsive to your requests. We have determined to release seven
(7) pages of records in their entirety. Please note that three (3) of these pages are duplicates.
In addition, we have determined to withhold the remaining four (4) pages of records in their
entirety pursuant to exemptions (b)(2), (b)(7)(A), (b)(7)(C) and (b)(7)(E) of the FOIA, as
explained below.

Enclosed are the seven (7) pages of records released in full.  The above-referenced exemptions
applied to the withheld information are described below.

**FOIA Exemption 2(low)** protects information applicable to internal administrative personnel
matters to the extent that the information is of a relatively trivial nature and there is no public
interest in the document. Specifically, ICE asserted this FOIA exemption to internal agency
codes, the telephone numbers of ICE Special Agents and agency fax numbers.

**FOIA Exemption 7(A)** protects from disclosure records or information compiled for law
enforcement purposes, the release of which could reasonably be expected to interfere with
enforcement proceedings. Therefore, I am withholding all records, documents, and/or other
material, which if disclosed prior to completion, could have a negative impact on other
ongoing investigations.

**Exemption 7(C)** protects records or information compiled for law enforcement purposes that
could reasonably be expected to constitute an unwarranted invasion of personal privacy. This
exemption was applied to protect the names of government employees, including ICE Special
Agents. Special Agents handle a myriad of tasks relating to official investigations into the

criminal activities of third parties. They were, and still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of Special Agents. Third parties who were, and possibly still are, subjects of investigations or who provided information or other cooperation to the government could be humiliated by being identified in connection with a criminal investigation; they could become targets of harassment or physical danger. Also release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of third parties.

**Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, where such disclosures could reasonably be expected to risk circumvention of law. ICE employed certain law enforcement techniques designed to obtain information about plaintiff in furtherance of the government's criminal investigation of plaintiff. These techniques involved cooperative arrangements between ICE and other agencies and inter-agency communications prompting specific actions on the part of agency employees. The disclosure of these techniques could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed in investigations where they may be targets and identify such techniques as they are being employed. Additionally, the techniques and procedures at issue are not well known to the public.

If you have any questions concerning this response, please contact me at (202) 353-8906 and reference case number 06-LITI-26180.

Sincerely,

Reba A. McGinnis
Chief, Information Disclosure Unit
Mission Support Division
Office of Investigations

Enclosure: Seven (7) pages