## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEAL D. BARNARD, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  06-CV-1393 (CKK) |
| ) | |
| DEPARTMENT OF HOMELAND SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE: PLAINTIFF'S THIRD AMENDED COMPLAINT

### I.    INTRODUCTION

This memorandum is submitted in opposition to Defendant's Motion for Summary Judgment Re: Plaintiff's Third Amended Complaint.  Plaintiff Neal D. Barnard, M.D., seeks summary judgment against Defendant Department of Homeland Security for its failure to provide Dr. Barnard with certain records requested pursuant to the Freedom of Information Act ("FOIA") and the Privacy Act (collectively "FOIA/PA").  Defendant acknowledges that it has searched for and found more than 340 pages of responsive records and alleges that portions of these documents are exempt from disclosure in accordance with certain FOIA exemptions, including exemption (b)(7)(A), which pertains to records maintained as part of an ongoing criminal investigation.

As set forth in prior briefs, Dr. Barnard is an author, speaker, and founder of a non-profit public charity that advocates for better nutrition and more effective, ethical, and compassionate scientific research.  (Pl. Mot. Summ. J. Barnard Decl. ¶ 1.)  Dr. Barnard seeks nothing more than the reason that Defendant's employees consistently, over a period of four years, harassed him

during his international travels.  (*See id.* ¶¶ 2–20.)  Defendant has never provided a rationale for

its actions, nor has it provided an adequate justification for withholding this information from Dr.

Barnard.  Instead, Defendant has conjured up a series of worst-case scenarios involving

harassment, stigmatization, and vaguely identified secret information to justify withholding the

requested records, thereby contravening the goals of the FOIA/PA statutes and nullifying Dr.

Barnard's statutory right to amend his record to prevent future harassment by Defendant.

As demonstrated below, Defendant has failed to meet its burden of proving that it

properly withheld the requested records as exempt due to an ongoing criminal investigation

because Defendant's supporting declaration relies, in part, upon inadmissible hearsay.

Defendant has failed to provide a declaration that establishes that disclosure of the requested

records would interfere with any ongoing criminal investigation(s), and therefore Defendant's

declaration is insufficient to achieve summary judgment on this ground.  Additionally,

Defendant's invocation of FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E) are invalid to the

extent that Defendant has withheld public information, such as the names of federal employees

within Dr. Barnard's presence, the positions of federal employees, the names of third parties

within Dr. Barnard's presence, and law enforcement inspection procedures witnessed by Dr.

Barnard.  Finally, Defendant's invocation of exemptions (b)(7)(A), (b)(7)(C), and (b)(7)(E) must

be rejected because Defendant cannot demonstrate the existence of any ongoing criminal

investigation for which disclosure of information in the responsive records would interfere with

reasonably anticipated law enforcement proceedings.

Defendant has failed to demonstrate that any and all exempt portions of the withheld

records could not be segregated from the non-exempt portions.  Defendant has relied upon

wholly conclusory statements that restate the legal standards for non-segregability and for the

exemptions that Defendant has claimed.  Accordingly, this Court should grant summary

judgment in Dr. Barnard's favor, enter an order enjoining Defendant to provide the requested

records, and deny Defendant's motion for summary judgment.

## II.    ARGUMENT

### A.    Defendant's Declaration Improperly Relies Upon Hearsay as to the Existence of Ongoing Criminal Investigations and Therefore Defendant has Failed to Meet its Burden of Proving that it Properly Withheld the ICE Records

This Court cannot rely upon Defendant's statements, in its declarations, that disclosure of

responsive records would interfere with ongoing criminal investigations because, as a matter of

black letter evidence law, Defendant's statements regarding the existence of the alleged

investigations constitute nothing more than inadmissible hearsay.  Thus, Dr. Barnard challenges

as improper Defendant's invocation of FOIA exemption (b)(7)(A)[1] in the 4 pages of ICE records

withheld by letter dated June 19, 2008—as well as the 7 pages of ICE records that are the subject

of Dr. Barnard's motion for reconsideration—because Defendant has not demonstrated that the

alleged ongoing criminal investigations actually exist.

### 1.    The Fields declaration is demonstrably false

Beginning with the declaration of Marshall Fields, which Defendant submitted with its

first motion for summary judgment, Defendant's declarations have been woefully inadequate.

According to the Fields declaration, dated February 20, 2007, Defendant located 6 responsive

ICE pages and withheld all of them in their entirety, invoking FOIA exemptions (b)(2),

(b)(7)(A), (b)(7)(C), and (b)(7)(E).  (*See* Def. Mot. for Summ. J. Fields Decl. ("Fields

---

[1]    In the parties' Joint Status Report of May 1, 2008, Dr. Barnard limited his challenge of Defendant's invocation of FOIA (b)(7)(A) in *CBP* records "to the extent that [the] exemption relies on [a] criminal investigation into Plaintiff's activities."  (Joint Status Report of May 1, 2008 ¶¶ 2–3.)  As Defendant correctly notes, Dr. Barnard then confirmed, on June 20, 2008, his intent to maintain the challenges, regarding *CBP* records, set forth in the Joint Status Report of May 1, 2008.  (*See* Def. Mot. for Summ. J. Re: 3d Am. Compl., at 3 n.2, 6.)  However, Dr. Barnard's statements concerning the CBP records did not in any way limit his challenges to Defendant's invocation of FOIA exemptions in the ICE records, all the more so given that Dr. Barnard did not receive notice of Defendant's invocation of FOIA exemption (b)(7)(A) in the newly-discovered ICE records until *after* June 20, 2008.

Declaration") ¶¶ 12, 16–24.) Defendant based its invocation of (b)(7)(A) and (b)(7)(E) on its assertion that Dr. Barnard was the subject of an open and pending criminal investigation. (*See* Fields Declaration ¶¶ 22, 24.) In its January 23, 2008 court papers regarding in camera review of the ICE records, however, Defendant revealed, in the sworn declaration of Gloria Marshall, that the Fields Declaration was false because Defendant possessed 7, not 6, responsive pages from ICE. (*See* Notice Re: Compliance Marshall Decl. ("First Marshall Declaration") ¶ 6.) Defendant again withheld all of the pages in their entirety, invoking the same FOIA exemptions previously invoked by Mr. Fields. (*See id.*)

Despite the discrepancy in the amount of responsive pages, this Court, on January 29, 2008, found that Mr. Fields was "competent to testify" and "that Defendant ha[d] properly withheld exempt information in the responsive records." *Barnard v. DHS*, 531 F. Supp. 2d 131, 139, 140 (D.D.C. 2008). Less than a week after the Court's ruling, however, Defendant filed a motion to stay along with a second sworn declaration by Gloria Marshall, revealing that contrary to Defendant's prior assertion, and despite the Court's reliance upon that assertion, Dr. Barnard *was not* the subject of an open and pending criminal investigation. (*See* Def. Mot. Stay, at 3 n.2; Def. Mot. Stay Ex. B ("Second Marshall Declaration") ¶ 7.) This admission of a party, which is not hearsay, *see* FED. R. EVID. 801(d)(2), is proof that, at the time of the Court's ruling, Dr. Barnard was *not* under criminal investigation. It is not, however, evidence that such a criminal investigation ever existed; the alleged "official notification" cited by Defendant's declarant (*see* Second Marshall Declaration ¶ 7) concerning an end to any investigation into Dr. Barnard's activities is hearsay for the proposition that any criminal investigation ever existed because it is "a statement, other than one made by the declarant . . . , offered in evidence to prove the truth of the matter asserted." *See* FED. R. EVID. 801(c).

The Second Marshall Declaration further revealed that in identifying only 6 (and then 7) responsive ICE pages, Defendant had not fully complied with Dr. Barnard's request because it had not referred to "the appropriate third agenc[ies]" any non-ICE records possessed by ICE. (*See* Second Marshall Declaration ¶ 6.) Indeed, Defendant later revealed that ICE possessed additional responsive CBP and ICE records. (*See* Def. Mot. for Summ. J. Re: 3d Am. Compl. ("MSJ") McGinnis Decl. ("McGinnis Declaration") ¶ 19.) Put more bluntly, the Second Marshall Declaration demonstrated that the Fields declaration was false, and Defendant was at a loss to explain how Mr. Fields had come to make false statements to the Court regarding both the existence of a criminal investigation and the number of responsive pages.

### 2.    The second Marshall declaration and the McGinnis declaration rely upon inadmissible hearsay

A court may grant summary judgment on the basis of agency affidavits "if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). "A declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question." *Barnard*, 531 F. Supp. at 138 (citations and quotations omitted).

In its Memorandum Opinion of January 29, 2008, this Court found that Mr. Fields was "competent to testify," noting that "[b]ecause a declarant is deemed to have personal knowledge

if he has a general familiarity with the responsive records and procedures used to identify those records, the declarant is not required to independently verify the information contained in each responsive record." *Id.* at 138–39.  The Court concluded that "[b]ecause Mr. Fields is familiar with the processes used to search for the records at issue, and *because he has reviewed the records himself*, he is competent to testify as to the information contained in those records." *Id.* at 139 (emphasis added).  In other words, this Court accepted as valid the statements in the Fields declaration because 1) Mr. Fields was familiar with Defendant's record search procedures *and* 2) Mr. Fields based his statements upon his own review of the content of the records.  *See id.*

Unlike the Fields declaration, which was based on the content (albeit factually false content) of actual records reviewed by the declarant, portions of the second Marshall declaration are based on inadmissible hearsay not contained within the records under review.  In claiming that FOIA Exemption (b)(7)(A) still applies to the first 7 responsive ICE pages withheld by Defendant (the subject of Dr. Barnard's pending motion for reconsideration), Ms. Marshall stated that she had "been informed that the disclosure of information related to Plaintiff could have a negative impact on other ongoing investigations."  (Second Marshall Declaration ¶ 7.)  This statement is inadmissible hearsay because it is "a statement, other than one made by the declarant . . . , offered in evidence to prove the truth of the matter asserted."  FED. R. EVID. 801(c).

Ms. Marshall is not competent to testify about the existence of other ongoing investigations because such information was not contained in the records before her.  She did not purport to have "been informed" by the contents of the responsive records or by information obtained from searching other records in ICE's possession.  Indeed, she merely repeated information of which she had "been informed" by an unidentified outside source.  (*See* Second

Marshal Decl. ¶ 7.)  Therefore, the Second Marshall declaration did not satisfy the personal

knowledge requirement of Rule 56(e) because her statement did not rely upon "personal

knowledge of the procedures used in handling [a FOIA] request and [her] familiarity with the

documents in question."  *Cf. Barnard*, 531 F. Supp. 2d at 138 (citations omitted).

      Defendant's most recent declaration suffers from similar defects.  In discussing the initial

7 ICE pages withheld by Defendant, the declarant, Reba McGinnis, twice cited the Second

Marshall Declaration for the notion that "disclosure of information related to plaintiff could have

a negative impact on other ongoing investigations."  (McGinnis Declaration ¶¶ 18, 24.)  Ms.

McGinnis took no steps to describe the source of this assertion; instead, she stated simply that

Ms. Marshall had "indicated that she had been informed" of the alleged other investigations.  (*Id.*

at 24.)  Ms. McGinnis then withheld 4 newly-identified ICE pages, citing the very same FOIA

exemptions.  Instead of basing her invocation of exemption (b)(7)(A) upon a review of the

responsive records, however, Ms. McGinnis merely noted that she too "*ha[d] been informed*" that

there is information . . . that is also relevant to other ongoing investigations" and that it had

"been *conveyed to [her]* that the release of such information could have a negative impact on the

other ongoing investigations."  (*Id.* (emphasis added).)  In other words, Ms. McGinnis, like Ms.

Marshall, improperly withheld responsive records from Dr. Barnard on the basis of information

obtained from a source other than the records themselves.  For all Dr. Barnard or this Court

knows, this source may have been a conversation overheard at the water cooler in Defendant's

Office of Investigations.  As such, Defendant's statements in its declarations alleging the

existence of other ongoing investigations do not meet the personal knowledge requirement of

Rule 56(e).

Rule 56(e)'s "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented." *Londrigan v. FBI*, 670 F.2d 1164, 1175 (D.C. Cir. 1981). Because Defendant has failed to provide a declaration, made upon personal knowledge, regarding the existence of ongoing investigations that would be compromised by the disclosure of the requested records, Defendant has failed to meet its burden of proving that it properly withheld the requested records.

    **B.    Defendant has Failed to Justify Redacting or Withholding Responsive Records**

        **1.    Defendant has failed to demonstrate that disclosure of the requested records would lead to an unwarranted invasion of privacy under FOIA exemption (b)(6)**

Invocation of FOIA exemption (b)(6) involves a balancing analysis "between the protection of an individual's right to privacy and the preservation of the public's right to government information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982) (hereinafter *Washington Post*). In this balancing analysis, courts most regularly "tilt the balance in favor of disclosure" and there is a "presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act." *Wash. Post Co. v. DHHS*, 690 F.2d 252, 261 (D.C. Cir. 1982). To invoke exemption (b)(6), an agency must show that the release of the requested information "compromise[s] a substantial, as opposed to a *de minimis*, privacy interest." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002).

Citing *Washington Post*, Defendant asserts that exemption (b)(6) was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Washington Post*, 456 U.S. at 602. The Supreme Court's analysis in *Washington Post* focused specifically on whether the passport information at issue constituted a file "similar" to personnel or medical files. *Id.* at 600–01. The Court held that because passport information

would exist in files containing information like "place of birth, date of birth, date of marriage, employment history, and comparable data" it would "strain[ ] the normal meaning of the word to say that such files are not 'similar' to personnel or medical files." *Id.* Here, however, Defendant can point to no such similar file from which information about the bare names and positions of federal employees or the names of third parties might be disclosed that would invade the realm of protected information. Even if the requested records arguably were "similar" to personnel and medical files, "Congress also made clear that nonconfidential matter was not to be insulated from disclosure merely because it was stored by an agency in its 'personnel' files." *Id.* at 601.

Defendant has failed to demonstrate any substantial privacy interest that would outweigh the public interest in disclosure to shed light on agency action. *See DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772–73 (1989) (hereinafter *Reporters Committee*) (citations omitted). "Exemption 6 does not protect against disclosure of every incidental invasion of privacy[—]only such disclosures as constitute 'clearly unwarranted' invasions of personal privacy." *U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352, 382 (1976). The "real thrust of Exemption (6) is to guard against unnecessary disclosure of files . . . which would contain 'intimate details' of a 'highly personal' nature." *Getman v. NLRB*, 450 F.2d 670, 675 (D.C. Cir. 1971). Accordingly, contrary to Defendant's protestations, bare names and positions of federal employees and the bare names of third parties, all of whom were in Dr. Barnard's presence, are not the highly personal and intimate information that exemption (b)(6) seeks to protect. *See id.* (stating that disclosure of "a bare name and address give[s] no information about an individual which is embarrassing").

Although undercover agents whose special occupations depend on covert status may have a substantial privacy interest in their identities, ICE and CBP officials do not have a similar

interest because they regularly hold themselves out to the public in the nation's airports.

Defendant simply cannot argue that federal officials who are seen daily by thousands of travelers

have a privacy interest, essential to their occupation, in the secrecy of their identities.

Additionally, there is no overriding privacy interest for private citizens who are identified in

agency records merely as bystander or fellow travelers, especially when their identities already

are known to the person requesting the records.  Therefore, Defendant's invocation of exemption

(b)(7)(A) is invalid to the extent that Defendant has invoked it to withhold names of federal

employees within Dr. Barnard's presence, the positions of federal employees, and the names of

third parties within Dr. Barnard's presence.

      2.      **Defendant has failed to demonstrate the existence of concrete law enforcement proceedings and relevant harm thereto required by FOIA exemption (b)(7)(A)**

Before FOIA exemption (b)(7) can be applied, an agency must complete a two-step

analysis to show that the requested documents pass the threshold for law enforcement purposes.

"First, the agency's investigatory activities that give rise to the documents sought must be related

to the enforcement of federal laws or to the maintenance of national security. . . .  Second, the

nexus between the investigation and one of the agency's law enforcement duties must be based

on information sufficient to support at least 'a colorable claim' of its rationality." *Pratt v.*

*Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982).  When elaborating upon the nexus between the

documents and the enforcement of federal laws, "the agency should be able to identify a

particular individual or a particular incident as the object of its investigation and the connection

between that individual or incident and a possible security risk or violation of federal law." *Id.* at

420.

Defendant's general statements do not support the existence of a nexus. (*See* McGinnis Declaration ¶ 23; Def. MSJ Suzuki Decl. ("Suzuki Declaration") ¶ 28). Indeed, Defendant did not elaborate or even mention the possible security risk or violation of federal law posed by any specific individual. As set forth above, there is no investigation into Dr. Barnard's activities, and Defendant has not identified any other specific individuals under investigation. Defendant merely provided a general summary of agency functions (*see* McGinnis Declaration ¶ 23) and characterized the responsive records as "used for law enforcement purposes" (*see* Suzuki Declaration ¶ 28). Defendant must do more than rely on its role as a law enforcement agency. If this Court were to accept Defendant's argument at face value, *all* records maintained by *all* law enforcement agencies in *all* circumstances would be exempt from disclosure under the FOIA. In such a case, the exemption would swallow the rule; had Congress so intended, however, it would have explicitly and fully exempted law enforcement agencies from the FOIA and the Privacy Act.

The Court of Appeals for the D.C. Circuit has noted that the nexus between an investigation and an agency's statutory duties is necessary in order to demonstrate that the agency is acting "within its principal function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities." *Pratt*, 673 F.2d at 420. With no colorable claim of a nexus between Defendant's monitoring of Dr. Barnard and its law enforcement duties, this Court can determine only that Defendant has engaged in "general monitoring of private individuals' activities." *Id.* Therefore, invocation of FOIA exemption (b)(7)(A), (b)(7)(C), and (b)(7)(E) is inappropriate.

Defendant also has not made the requisite two-part demonstration that there is "a concrete prospective law enforcement proceeding" and that Defendant's case in court against the

subject of an investigation would be harmed by the premature release of evidence or information.
*See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232 (1978). It is not the role of the

courts to "speculate as to whether Exemption 7 might, under some possible congruence of

circumstances not proven or even asserted be properly applied." *Coastal States Gas Corp. v.*

*Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980). Thus, "Exemption 7(A) would not provide

protection to the agency's decision" when the agency has "fail[ed] to 'demonstrate that the . . .

documents [sought] relate to any ongoing investigation or . . . would jeopardize any future law

enforcement proceedings." *Robbins Tire & Rubber*, 437 U.S. at 235–36. Defendant's failure to

demonstrate the existence of any concrete, pending enforcement proceeding prohibits its

invocation of exemption (b)(7)(A).

Defendant has not even hinted that an enforcement proceeding arising out of any alleged

ongoing investigation is reasonably anticipated. Because Dr. Barnard is not the subject of an

ongoing investigation, there is no indication of agency initiative to bring an enforcement action

against him. Moreover, Defendant's conclusory hearsay statements regarding "other ongoing

investigations" (*see* Def. MSJ, at 7) are insufficient to meet Defendant's burden to demonstrate

the existence of a reasonably anticipated enforcement proceeding regarding other individuals.

Therefore, Defendant cannot be permitted to withhold the 4 pages of ICE records.

Even if there were an ongoing investigation, Defendant has failed to meet exemption

(b)(7)(A)'s "reasonably expected to interfere" standard. Defendant "must show that disclosure

of those [requested] documents would, in some particular, discernible way, disrupt, impede, or

otherwise harm the enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir.

1989). "[T]he government must show, by more than conclusory statement, how the particular

kinds of investigatory records requested would interfere with a pending enforcement

proceeding." *Campbell v. DHHS*, 682 F.2d 256, 259 (D.C. Cir. 1982).  At best, Defendant has

simply employed conclusory statements that "the release of such information *could* have a

negative impact on the other ongoing investigations and . . . *could* reasonably be expected to

interfere with those investigations."  (McGinnis Declaration ¶ 24 (emphasis added); *see also*

Second Marshall Declaration ¶ 7.)  For its failure to describe any possible interference with a

known investigation, Defendant cannot withhold the 4 pages of ICE records by invoking

exemption (b)(7)(A).

> 3.  **Defendant has failed to demonstrate that disclosure of the responsive
> ICE and CBP records could constitute an unwarranted invasion of
> privacy under FOIA exemption (b)(7)(C)**

Courts must "balance the competing interests in privacy and disclosure" to determine if

the release of the requested information could reasonably be expected to be an unwarranted

invasion of privacy.  *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

However, exemption (b)(7)(C) "does not apply to information in law enforcement reports that is

not inculpatory or inflammatory and does not jeopardize an inchoate or ongoing criminal

investigation."  *Ctr. to Prevent Handgun Violence v. U.S. Dep't of Treasury*, 981 F. Supp. 20,

24 (D.D.C. 1997) (citing *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir.

1995)).  It is impermissible "to exempt from disclosure all material in an investigatory record

solely on the grounds that the record includes some information which identifies a private citizen

or provides that person's name and address."  *Nation Magazine*, 71 F.3d at 896.

Given the lack of justification provided by Defendant, it is impossible to determine if the

material withheld by Defendant is of an inculpatory or inflammatory nature.  It is also impossible

to ascertain whether Defendant withheld records in their entirety due only to some mere mention

of a private citizen's name.  Defendant has premised the withholding of documents on alleged

ongoing investigations.  Yet the fairness of the judicial adversarial process and the requirements of agency justification when invoking narrowly-construed FOIA exemptions demands additional information regarding the withheld documents, if not complete disclosure of the documents.

Defendant cites *Fitzgibbon v. CIA* for the notion that "individuals, whether they be suspects, witnesses, or investigators," have a strong interest "in not being associated unwarrantedly with alleged criminal activity."  911 F.2d 755, 767 (D.C. Cir. 1990).  Defendant also argues that "[t]he privacy consideration here is to protect federal personnel and third parties as individuals from unnecessary, unofficial questioning, harassment and stigmatization."  (Def. MSJ, at 15; *see also id.* at 9.)  While this consideration may be of concern to government officials whose special occupations depend on covert status, Defendant cites no case in which officials like the ICE and CBP officials described in the responsive records, who daily interact with thousands of travelers while handling routine security matters, have an overriding privacy interest in their names and positions.  There is at best, a *de minimis* privacy interest in the names and positions of federal employees, such as Defendant's officials, who regularly engage in and present themselves, their identities, and even their positions to the public during their daily routine.  Additionally, when, as here, Defendant engages in monitoring activities not necessarily stemming from its statutory responsibilities, *see supra*, at 11, a FOIA/PA requester may take on an important watchdog role that is recognized as a public interest.  *See Ctr. to Prevent Handgun Violence*, 981 F. Supp. at 24.  Accordingly, the public interest in shedding light on agency action outweighs the insubstantial privacy interests.

Defendant's employees are not at risk of stigmatization due to an alleged association with criminal activities.  As a preliminary matter, those who work in law enforcement are regularly identified as such without suffering from any stigma.  Second, there can be no stigma associated

with an investigation of Dr. Barnard, because, as set forth above, Defendant cannot demonstrate that any such investigation ever existed. Even if there were such an investigation at some time in the past, Defendant asserts that the investigation has closed (*see* Second Marshall Declaration ¶ 7), and no law enforcement proceedings have resulted. Finally, Defendant has provided nothing more than inadmissible hearsay regarding the existence of "other ongoing investigations," and even if Defendant could prove their existence, Dr. Barnard does not seek the release of the details of other investigations.

When, as here, an agency makes assertions and "bald claims, unsupported by any factual evidence, that the release of . . . names, will subject [agency] personnel to harassment," a court may find the redaction of "the names or identifying information" of such personnel to be improper. *Butler v. DOJ*, No. 86-2255, 1994 WL 55621, at *5 (D.D.C. Feb. 3, 1994). Further, federal agents "may not have as great a claim to privacy as that afforded ordinarily to private citizens," *Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980), and there is no "blanket exemption for [withholding] the names of all [agency] personnel in all documents." *Id.* Because Defendant has provided no factual evidence that the release of the agents' names would lead to some form of harassment, Defendant cannot be permitted to withhold the names and positions of federal officials.

Defendant's claim that third parties who "provided information or other cooperation to the government could be humiliated by being identified in connection with a criminal investigation; they could become targets of harassment or physical danger" (*see* McGinnis Declaration ¶ 25) is irrelevant under exemption (b)(7)(C). This type of concern is addressed by FOIA exemption (b)(7)(D), not invoked by Defendant, which specifically addresses documents

that "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C.

§ 552(b)(7)(D).

Defendant expends much energy bemoaning the remote possibility of stigmatization and

unwarranted association with criminal activity that Defendant alleges might befall its employees

if it discloses the records at issue in this case.  In doing so, Defendant turns this lawsuit on its

head.  Whereas Defendant's concern is at best conjectural, given that its employees have

intentionally sought very public law enforcement positions, Dr. Barnard's concern is actual and

demonstrable.  Defendant has, on at least seventeen occasions, detained, searched, and/or

interrogated Dr. Barnard, a private citizen, in plain view of his fellow travelers.  (Pl. Mot. Summ.

J. Barnard Decl. ¶¶ 2–20.)  On at least two occasions, Dr. Barnard has observed "Terrorist

Organization Member" in large block letters, within sight of both Dr. Barnard and others, on

Defendant's computer screen.  (*Id.* ¶¶ 4, 7.)  Worse, Defendant has, on several occasions,

baselessly asserted in its publicly-accessible court papers that Dr. Barnard is or was the subject

of an ongoing criminal investigation.  Thus, to the extent that stigmatization and unwarranted

association with criminal activity are considered, they tilt the balance in favor of disclosure.

Because Defendant has failed to demonstrate that disclosure of the responsive ICE and

CBP records could constitute an unwarranted invasion of privacy, and because Dr. Barnard's

interest in disclosure outweighs the conjectural privacy interests asserted by Defendant,

Defendant's invocation of FOIA exemption (b)(7)(C) in ICE and CBP records must be rejected.

        4.     **Defendant has failed to demonstrate that disclosure of the requested
ICE and CBP documents could risk circumvention of the law under
FOIA exemption (b)(7)(E)**

Investigative techniques and procedures that are widely known must be released unless

"the disclosure could reduce or nullify their effectiveness."  *Judicial Watch, Inc. v. DOJ*, 337 F.

16

Supp. 2d 146, 181 (D.D.C. 2004).  When the techniques are "nothing exceptional or secret," such that "[a]nyone who is familiar with the media . . . is aware that the police use these and similar techniques[,] . . . the government should . . . release such information to plaintiff voluntarily." *Albuquerque Publ'g Co. v. DOJ*, 726 F. Supp. 851, 857–58 (D.D.C. 1989).

In *Brunetti v. FBI*, cited by Defendant, the court upheld the redaction of police officer notations regarding the use and efficacy of techniques because the release "would allow criminals to adapt their activities and methods in order to avoid detection."  357 F. Supp. 2d 97, 108 (D.D.C. 2004).  Here, however, Dr. Barnard seeks only the disclosure of information related to inspection procedures that he and countless other airport travelers regularly witness.  These procedures, namely detention, searches, marking of travel documents, use of a computer database, and inclusion on a "no fly" list, are routinely conducted before airport travelers all over the country and commonly depicted in the media.  Defendant has failed to show how the release of information related to these well-known procedures would nullify or reduce their effectiveness.  Unlike the private notations in *Brunetti*, the widespread knowledge of airport inspection procedures makes it highly unlikely that releasing information about them would enable criminals to avoid future detection.

Defendant further argues that the disclosure of techniques such as cooperative arrangements with other agencies, "could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed."  (Def. MSJ, at 11; *see also id.* at 17.)  This type of conclusory remark is insufficient to justify the invocation of exemption (b)(7)(E).  Defendant cites *Ctr. For Nat'l Sec. Studies v. INS*, No. 87-2068, 1990 WL 236133, at *5 (D.D.C. Dec. 19, 1990), as

support for its invocation of (b)(7)(E).  In that case, the defendant agency provided "highly

credible justification for non-disclosure" by noting, among other things, that

> the release of information contained in document 17 would allow illegal entrants
> to design plans for gaining entrance into this country in the event that the
> contingency plan is put into place: knowledge of the type of paperwork necessary
> to gain entrance and to pass inspection would aid illegal entrants in their
> circumvention of interdiction and border control plans.

*Id.* at \*6.  Here, however, Defendant engages in a "because I said so" approach, brazenly

expecting deference from the Court due to its executive status as a law enforcement agency.

Defendant's failure to provide any type of "highly credible justification for non-disclosure"

prohibits the invocation of exemption (b)(7)(E) to withhold ICE and CBP documents.

### C.  Defendant has Failed to Demonstrate that Any and All Exempt Portions of the Records Withheld in Their Entirety Could Not be Segregated from Non-exempt Portions

Under the FOIA, the agency must "demonstrate that all reasonably segregable material

has been released."  *Johnson v. Executive Office*, 310 F.3d 771, 776 (D.C. Cir. 2002).  An

"agency may not sweep a document under a general allegation of exemption, even if that general

allegation is correct with regard to part of the information."  *Vaughn v. Rosen*, 484 F.2d 820, 825

(D.C. Cir. 1973).  The line-by-line analysis "to weigh the repercussions of disclosure" is a

"burden [that] has been placed specifically by statute on the Government."  *Weissman v. CIA*,

565 F.2d 692, 698 (D.C. Cir. 1977) (quotation and citation omitted).  "In addition to a statement

of its reasons, an agency should also describe what proportion of the information in a document

is non-exempt and how that material is dispersed throughout the document."  *Mead Data*

*Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).  "[A]gencies must

be required to provide the reasons behind their conclusions in order that they may be challenged

by FOIA plaintiffs and reviewed by the courts."  *Id.*

Defendant's failure to provide any reasonably specific segregability analysis necessarily voids any of Defendant's purported explanations to justify withholding pages of records in their entirety. Defendant merely provided sweeping, conclusory remarks to justify withholding documents in their entirety. (*See, e.g.*, McGinnis Declaration ¶ 27.) At no point did Defendant attempt to provide a statement of reasons or a description of the proportion of non-exempt information in the documents withheld in their entirety. Although Defendant referenced a line-by-line approach (*see* McGinnis Declaration ¶ 27; Suzuki Declaration ¶ 32), this is nothing more than window dressing. Merely claiming that exempt information is "inextricably intertwined" with non-exempt information (*see* McGinnis Declaration ¶ 27; Suzuki Declaration ¶ 32), does not satisfy Defendant's statutory burden to conduct a detailed, line-by-line analysis to justify its decision to withhold records in their entirety.

## III.    <u>CONCLUSION</u>

For all of the above stated reasons, this Court should grant Dr. Barnard's motion for summary judgment and deny Defendant's motion for summary judgment.

Respectfully submitted,

/s/ Daniel Kinburn

_____
Daniel Kinburn
PHYSICIANS COMMITTEE FOR
 RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W., Suite 400
Washington, D.C. 20016
Attorney for Plaintiff
(202) 686-2210 ext. 380
(202) 686-2155 (fax)

Dated: July 25, 2008

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NEAL D. BARNARD, M.D., | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Case No.:  06-CV-1393 (CKK) |
|  | ) | |
| DEPARTMENT OF HOMELAND SECURITY, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## STATEMENT OF MATERIAL FACTS

¶ 1. By letter dated July 20, 2005, Plaintiff submitted a Freedom of Information Act ("FOIA") and Privacy Act ("PA") request to U.S. Customs and Border Protection (CBP) requesting "all records about me that are in IBIS or any other system used by the Bureau of Customs and Border Protection at any and all ports of entry to the United States."

Response: Admitted.

¶ 2. CBP erroneously processed Plaintiff's July 20, 2005, FOIA/PA request as a traveler redress complaint.  Therefore, by letter dated August 15, 2005, CBP responded to Plaintiff stating that records responsive to his request fell under the purview of Immigration and Customs Enforcement ("ICE").

Response: Admitted.

¶ 3. By letter dated March 21, 2006, Plaintiff submitted a FOIA/PA request to ICE requesting "any records created from January 1, 2002 to the present that were prepared, received, transmitted, collected and/or maintained by Immigration and Customs Enforcement relating to the following: . . . [fifteen (15) specifically enumerated areas]."

Response: Admitted.

¶ 4. By letter dated August 5, 2006, ICE responded to Plaintiff's March 21, 2006, FOIA request, advising Plaintiff that ICE had no records responsive to his request.

Response: Admitted.

¶ 5. On August 7, 2006, Plaintiff filed a Complaint with this Court for not having received a timely response.

Response: Admitted.

¶ 6. By letter dated November 16, 2006, ICE responded to Plaintiff with a supplemental response. The letter informed Plaintiff that ICE determined that any records responsive to his request were exempt from disclosure, in their entirety, pursuant to Exemptions (b)(2), (b)(7)(A), (b)(7)(C) and (b)(7)(E) of the FOIA.

Response: Admitted.

¶ 7. On February 20, 2007, Defendant filed a motion for summary judgment in this matter. In support of that motion, ICE submitted the Marshall Fields Declaration.

Response: Admitted.

¶ 8. On January 8, 2008, the Court ordered ICE to submit six (6) pages of records at issue in unredacted form to Chambers for an *in camera* review.

Response: Admitted.

¶ 9. On January 23, 2008, ICE submitted a total of seven (7) pages of records to the Court for the *in camera* review along with a declaration from Gloria Marshall.

Response: Admitted.

¶ 10. On January 29, 2008, the Court issued a Memorandum Opinion granting Defendant's motion for summary judgment.

Response: Admitted.

¶ 11. On February 1, 2008, ICE submitted a second declaration from Gloria Marshall ("Second Marshall Declaration") explaining, *inter alia*, that it had come to her attention that CBP might not have processed Plaintiff's July 20, 2005, letter as a FOIA request; that ICE followed up on this suspicion and consulted with CBP; and that after further review, CBP confirmed that indeed it did not process Plaintiff's July 2005 letter as a FOIA request under its FOIA procedures.

Response: Admitted, except that it is denied that the date of submission of the declaration was February 1, 2008.

¶ 12. The Second Marshall Declaration further indicated that Plaintiff was no longer the subject of the open and pending criminal investigation originally cited in the Fields Declaration. The Second Marshall Declaration also explained that, although Plaintiff was no longer the target of any investigation, the disclosure of information related to Plaintiff could have a negative impact on other ongoing investigations.  Therefore, the Second Marshall Declaration concluded that FOIA Exemption (b)(7)(A) was still applicable to the seven (7) pages of ICE records that were then at issue in the Court's January 29, 2008 Memorandum Opinion.

Response: Admit that the Second Marshall Declaration contains the aforementioned assertions.  Specifically admit that as of the date of the Second Marshall Declaration Plaintiff was not the subject of an open and pending criminal investigation.  Deny the remaining assertions in the Second Marshall Declaration.

¶ 13. Upon ICE's continuing review of this matter, ICE has determined that some of the ICE records that were previously withheld contained specific references to additional records.

Response: Admitted.

¶ 14. In order to ensure that the referenced records existed and that they had not been previously overlooked, ICE made inquiries to the local ICE Special Agent in Charge ("SAC") office, which ICE believed would have likely maintained such records.  On June 5, 2008, the local SAC office conducted a search for the referenced records and, as a result of that search, located the referenced records as well as additional records relating to Plaintiff's FOIA request.

Response: Admitted.

¶ 15. In sum, a total of twenty-five (25) pages of records that were not previously accounted for were located.  It was determined that eleven (11) pages of these records were ICE records and fourteen (14) pages of the records belonged to CBP.  The fourteen (14) CBP records were referred to CBP on June 6, 2008.  The eleven (11) ICE records were processed by ICE under the FOIA.

Response: Admitted.

¶ 16. By letter dated June 19, 2008, ICE informed plaintiff that it had located eleven (11) additional pages of records responsive to Plaintiff's FOIA requests.  The letter further informed Plaintiff that seven (7) pages of records were being released in their entirety and four (4) pages of records were being withheld in their entirety pursuant to FOIA Exemptions (b)(2), (b)(7)(A), (b)(7)(C), and (b)(7)(E).

Response: Admitted.

¶ 17. Once CBP discovered that Plaintiff's July 20, 2005 FOIA request was processed as a traveler redress complaint and not under the FOIA, (see Para. 3 *supra*), CBP personnel in the Office of Field Operations (OFO) conducted an initial search of the Treasury Enforcement Communications System (TECS) on January 17, 2008, and initially found 82 pages of records

responsive to Plaintiff's request.  The following search terms were used: "Neal," "Barnard,"

"Bernard," and "07/10/53."

     Response: Admitted.

     ¶ 18. CBP processed the 82 pages of responsive records and released 80 pages with

redactions to Plaintiff on February 5, 2008, *withheld* one (1) page in full and *released* one (1)

page in full.

     Response: Admitted.

     ¶ 19. Thereafter, CBP then discovered one (1) additional TECS record and released that

document to Plaintiff with redactions on April 1, 2008.

     Response: Admitted.

     ¶ 20. In addition to searching TECS, CBP conducted searches of the Automated

Targeting System - Passenger (ATS-P) as well as records maintained at CBP Headquarters, and

the Ports of Entry for Toronto and Washington-Dulles.

     Response: Admitted.

     ¶ 21. The ATS-P was searched by CBP personnel at Headquarters on January 29, 2008.

Upon review of the records that resulted from the January 29, 2008 search of ATS-P, CBP

personnel at Headquarters conducted an additional search on April 8, 2008, to ensure that the

search was comprehensive.  The following search terms were used: "Neal," "Barnard,"

"Bernard," and "07/10/1953."

     Response: Admitted.

     ¶ 22. The port of Washington-Dulles records were searched on February 15, 2008, and

the port of Toronto records were searched on April 1, 2008.  No records were found at the port of

Washington-Dulles and five (5) pages of records were found at the port of Toronto.

Response: Admitted.

¶ 23. As a result of these searches of ATS-P, CBP Headquarters and ports of Toronto and Washington-Dulles, CBP located an additional 229 pages of responsive records.

Response: Admitted.

¶ 24. CBP processed the 229 pages of responsive records and on April 17, 2008, provided a final release of records to Plaintiff.  Of the 229 pages of responsive records, 82 pages were provided with redactions, 11 pages were released in full, and 136 pages were withheld in full.

Response: Admitted.

¶ 25. On April 23, 2008, CBP provided to Plaintiff two Vaughn indices explaining the exemptions applied to the records released in part and withheld in full.

Response: Admitted.

¶ 26. On June 4, 2008, upon further review, CBP decided to no longer invoke FOIA Exemption (b)(7)(A).  However, this decision did not result in any release of additional documents to Plaintiff.  As a result, CBP provided to Plaintiff two revised Vaughn indices reflecting this change.

Response: Admitted.

¶ 27. As explained in Paragraph 15 *supra*, on June 6, 2008, ICE referred to CBP 14 pages of records for review.  Based on this referral, CBP identified thirteen (13) pages that are responsive to Plaintiff's FOIA request.  The information contained in these TECS records is substantively the same as those previously released to Plaintiff at Bates Stamp Numbers 25-26, 28-29.  On June 16, 2008, CBP provided Plaintiff with 13 pages of records with redactions.  One page of records was deemed non-responsive.

Response: Admitted.

¶ 28. On June 20, 2008, CBP provided to Plaintiff two final and omnibus Vaughn Indices accounting for all documents processed to date.  The first omnibus Vaughn Index (attached as Government's Exhibit E) accounts for records released with redactions.  The second omnibus Vaughn Index (attached as Government's Exhibit F) accounts for all of the records withheld in full.

Response: Admitted with respect to CBP documents; denied with respect to ICE documents.

Respectfully submitted,

/s/ Daniel Kinburn

_____

Daniel Kinburn
PHYSICIANS COMMITTEE FOR
 RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W., Suite 400
Washington, D.C. 20016
Attorney for Plaintiff
(202) 686-2210 ext. 380
(202) 686-2155 (fax)

Dated: July 25, 2008