## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NEAL D. BARNARD, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No.: 06-1393 (CKK) |
| | ) | ECF |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## FOR RECONSIDERATION AND SECOND MOTION FOR SUMMARY JUDGMENT

**I.      Introduction.**

In this Freedom of Information Act (FOIA) action, Plaintiff Dr. Neal Barnard seeks documents pertaining to himself from U.S. Immigration Custom Enforcement (ICE) and U.S. Customs and Border Patrol (CBP) – two components of Defendant Department of Homeland Security (DHS). On January 29, 2008, the Court granted summary judgment in Defendant's favor as to documents that ICE has withheld from disclosure under Exemptions (b)(2) and 7(A). Barnard v. DHS, 531 F. Supp.2d 131 (D.D.C. 2008). After CBP found and produced documents responsive to Plaintiff's FOIA request, Plaintiff amended his complaint to include CBP as a defendant.

At present, Plaintiff seeks reconsideration of the Court's January 29, 2008 order arguing that the basis for the Court's ruling (*i.e.*, Plaintiff was the subject of a criminal investigation) no longer exists. Plaintiff also files a cross motion for summary judgment asserting that Defendant improperly withheld documents under the various FOIA exemptions.

1

As elaborated further below, Plaintiff's motion for reconsideration lacks merit because information pertaining to Plaintiff is also related to other on-going criminal investigations; therefore, even if Plaintiff is no longer the subject of the investigation, Defendant has properly invoked FOIA Exemptions (b)(2), (b)(6), 7(A), 7(C), and 7(E) to withhold those documents. Plaintiff's cross motion for summary judgment fails as a matter of law for the same reasons.

Accordingly, the Court should deny Plaintiff's motion for reconsideration and cross motion for summary judgment, and dismiss this case with prejudice.

**II.    Factual Background**

The factual background of this case has been previously set forth in the Court's January 29, 2008 Memorandum Opinion granting summary judgment in Defendant's favor.  See Barnard v. DHS, 531 F. Supp.2d 131 (D.D.C. 2008).  Additional relevant factual background is also set forth in Defendant's June 25, 2008 Motion for Summary Judgment Re: Plaintiff's Third Amended Complaint. See Dkt. No. 39.  Defendant, therefore, will not repeat those facts here but will only address certain inaccurate facts described in Plaintiff's Motion for Reconsideration and Second Motion for Summary Judgment.  See Dkt. No. 40.

Plaintiff's "Statement of Facts" contains many innuendoes and mischaracterizations. Indeed, Plaintiff's factual background is more akin to an argument rather than a mere recitation of the events that actually occurred in this case.  See Plaintiff's Motion for Reconsideration/for Summary Judgment ("Pl. Mot.") at 3-13.  There are numerous inaccuracies but they are not material to the resolution of this FOIA action.

However, Defendant will address three factual assertions, in which Plaintiff accuses Defendant of lying or making false statements to the Court.  See Pl. Mot. at 5 (stating that

Defendant "lied to Dr. Barnard in its August 5, 2006 letter"); Pl. Mot. at 8 (stating that Defendant "lied to the Court, and Defendant has offered no explanation for that lie"); Pl. Mot. at 9 (stating Defendant "did not notify the Court or Dr. Barnard of the CBP records" before the Court's January 29, 2008 ruling).

First, Plaintiff accuses Defendant of lying to him in August 2006 when ICE informed him that it had no responsive documents to his FOIA request. Pl. Mot. at 5. Plaintiff points out that the Marshall Fields Declaration, submitted to the Court in February 2007, revealed that ICE in fact found responsive documents in May 2006. Id. Putting "two and two together" Plaintiff alleges that ICE "lied to [him] in its August 5, 2006 letter" when it informed that it had no responsive records. Id. It is regrettable that Plaintiff harbored this suspicion only because Plaintiff did not have all of the facts.

As set forth in the Marshall Fields Declaration, in May 2006, ICE searched for responsive documents to Plaintiff's March 2006 FOIA request. Marshall Fields Decl. at ¶ 16 (Dkt. No. 14-3). In June 2006, ICE found responsive records in TECS. Second Reba McGinnis Decl. at ¶ 11. However, ICE was informed by law enforcement personnel that Plaintiff was the subject of an open investigation and that Plaintiff was not aware of said investigation. Id. Based on this information, ICE determined that disclosure of the responsive records would interfere with the investigation. Second Reba McGinnnis Decl. at ¶ 11. As a result, ICE invoked "the (c)(1) exclusion of the FOIA and responded on August 5, 2006, that ICE had no records responsive to [Plaintiff's FOIA] request." Id.[1]

---

[1]    "The (c)(1) exclusion authorizes federal law enforcement agencies, under specified circumstances, to shield the very existence of records of ongoing investigation or proceedings by excluding them entirely from the FOIA's reach." Second Reba McGinnnis Decl.

Three months later, in November 2006, ICE revisited Plaintiff's FOIA request and supplemented its response by informing Plaintiff that ICE found responsive records but they were exempt from disclosure under FOIA Exemption 7(A).  Second Reba McGinnis Decl. at ¶ 11; see also Marshall Fields Decl. at ¶12 (Dkt. No. 14-3).  In short, ICE did not "lie" to Plaintiff but, as explicitly authorized under the FOIA, it chose to not inform Plaintiff of the existence of responsive records to protect the interest of an ongoing law enforcement investigation, of which Plaintiff was the subject.  Second Reba McGinnnis Decl. at ¶ 11; § 5 U.S.C. § 522(c)(1).

Second, citing the Marshall Fields Declaration and the Second Gloria Marshall Declaration (Dkt. No. 29-3), Plaintiff accuses Defendant of making "false statements to the Court regarding both the existence of a criminal investigation and the number of responsive pages." Pl. Mot. at 8.[2]  Plaintiff then charges that Defendant did not even try to determine whether the Marshall Fields Declaration "was knowingly false."  Id.  Plaintiff further alleges that "Defendant's key witness lied to the Court."  Id.  Plaintiff's unsubstantiated accusation stems from his misunderstanding of the facts.

Indeed, in making this accusation, Plaintiff ignores the reality that he was the subject of a criminal investigation in February 2007 but, due to the passage of time, in February 2008, he

---

at ¶ 10; see also 5 U.S.C. § 552(c)(1)(B).

[2]     Plaintiff's claim that Defendant made "false statements to the Court" on the "number of responsive pages" is nothing more than a red herring.  On January 23, 2008, Defendant fully explained to the Court that ICE found one additional page of records when it was gathering the documents for its in camera submission, as ordered by the Court.  The Court was well aware of this fact when it granted summary judgment in ICE's favor.  Barnard, 531 F. Supp.2d at 141 n.9 (describing that the first Gloria Marshall Declaration explained that ICE discovered 7 pages of documents, not six as previously noted in the Marshall Fields Declaration, when it gathered the information for in camera submission).

was no longer the subject of that investigation.  This is precisely what happened.[3]  As explained in the Marshall Fields Declaration, filed in February 2007, Plaintiff was "the subject of an open and pending criminal investigation."  Marshall Fields Decl. at ¶ 22 (Dkt. No. 14-3).  As a consequence, Defendant invoked FOIA Exemption 7(A) to protect from disclosure any documents pertaining to Plaintiff.  Id.

One year later, in February 2008, ICE learned that "Plaintiff was no longer the subject of the open and pending criminal investigation originally cited in the Fields Declaration."  Second Gloria Marshall Decl. at ¶ 7 (Dkt. No. 29-3).  Indeed, the Second Gloria Marshall Declaration, submitted in February 2008, explained that Ms. Marshall "received official notification" that Plaintiff was no longer the subject of a criminal investigation after January 23, 2008.  Id.  Ms. Marshall elaborated that she did not receive "official notification until February 1, 2008, regarding the closure of the investigation."  Id.

Given these facts, there is nothing contradictory between the Marshall Fields Declaration and the Second Gloria Marshall Declaration.  The Marshall Fields Declaration was accurate and valid when it was made in February 2007.  One year later, in February 2008, the criminal investigation changed and the Second Gloria Marshall Declaration merely informed the Court and Plaintiff of that change – namely that Plaintiff was no longer  the subject of a criminal investigation.  Under these facts, there is no evidence showing that Defendant made "false statements" to the Court, as alleged by Plaintiff.

---

[3]     Defendant's two proposed *in camera* declarations would provide the Court with additional factual circumstances surrounding the investigation and additional explanations on the focus of the investigation.  See Defendant's Motions for Leave To File Declaration *In Camera* (Dkt. No. 40 & 41).

Third, Plaintiff alleges that Defendant "**never explained** why it did not notify the Court or Dr. Barnard of the CBP records or third agency records when it filed the First Gloria Marshall Declaration before the *Court's [January 29, 2008] ruling*." Pl. Mot. at 9 (bold emphasis added, italics emphasis provided). This is a revisionist account of the facts. Furthermore, this is a red herring because Plaintiff is not prejudiced at all by the late discovery of the CBP records.

The circumstances surrounding the discovery of additional records held by CBP have been fully described in Defendant's Motion to Stay. See Dkt. No. 29. In that Motion, Defendant explained that upon learning that CBP had not processed Plaintiff's July 2005 FOIA request the undersigned counsel contacted Plaintiff's counsel (Mark Kennedy) and apprised him of the development. Motion to Stay at 2 n.2 (Dkt No. 29). CBP searched for and found responsive records on January 17, 2008. See Shari Suzuki Decl. at ¶ 6 (Dkt. No. 39-7). The undersigned counsel also informed Plaintiff's counsel of this discovery. In fact, in a January 23, 2008 e-mail message to Plaintiff's counsel, the undersigned counsel indicated that he was following up on the parties' conversation of the previous week regarding the CBP records. See Jan. 23, 2008 E-mail from Truong to Kennedy (Gov. Exh. 9). In that same e-mail, the undersigned counsel circulated to Plaintiff's counsel a copy of a draft motion to stay in an attempt to obtain his consent for the motion. Id. The draft motion to stay explained the circumstances surrounding the documents recently found by CBP. Id. The undersigned counsel also indicated to Plaintiff's counsel that Defendant would not file the motion to stay until Friday, January 25, 2008, to allow Plaintiff time to consider the draft motion to stay. Therefore, as early as January 23, 2008, Plaintiff was well aware of the CBP records. It is simply contrary to the record for Plaintiff to claim that "Defendant never explained . . . to [him] the CBP records" prior to the Court's January 29, 2008

6

ruling.

In any event, Defendant's Motion to Stay also explained to the Court that Defendant intended to file the stay motion before the Court ruled on the then-pending cross motions for summary judgment. Motion to Stay at 2 n.1 (Dkt. No. 29).  However, Defendant was still gathering the necessary information to support the stay motion when the Court ruled on the then pending dispositive motion. Id.  Again, it is simply inaccurate for Plaintiff to claim that Defendant "never explained" to the Court why it did not inform the Court of the CBP records prior the Court's January 29, 2008 ruling.

Furthermore, at the end of the day, Plaintiff was not prejudiced in any way because CBP produced records responsive to Plaintiff's FOIA request and withheld other documents under various FOIA exemptions.  See Shari Suzuki Declaration (Dkt. No. 39-7).  Armed with information provided by CBP, Plaintiff then sought leave to amend his complaint – without Defendant's opposition – for a *third* time to include CBP as a defendant.  See Dkt. No. 36. Under these facts, Plaintiff is  making a mountain out of a mole hill with his unsubstantiated accusations of lies and false statements.

## III.  Argument

### A.  Plaintiff's Motion for Reconsideration Lacks Merit.

#### 1.  The Court's Jan. 29, 2008 Opinion.

Plaintiff argues that the Court should reconsider its January 29, 2008 Opinion because of newly discovered evidence.  Pl. Mot. at 13-20.  The test for relief due to newly discovered evidence is similar under both Rule 59(e) and 60(b).  See 12 Moore's Federal Practice, §60.42[1][b] n. 3 (Matthew Bender 3d.).  Therefore, under either Rule 59 or Rule 60, Plaintiff

must meet the three pronged test: (1) the evidence existed at the time of trial, (2) that it could not

have been discovered despite Plaintiff's due diligence; and (3) the evidence is sufficiently

significant that it is likely to change the outcome of the case. See id. at §60.42[2].   In this case,

to prevail on reconsideration, Plaintiff must show that (1) he **was not** the subject of investigation

in February 2007, and (2) now that he is no longer the subject of a criminal investigation,

Exemption 7(A) no longer applies to allow ICE to withhold the seven pages of records at issue in

the Court's January 29, 2008 Opinion.  Plaintiff, however, will be unable to do so.

On January 29, 2008, the Court granted summary judgment in Defendant's favor

allowing ICE to withhold seven pages of records in their entirety.  See Barnard v. DHS, 531 F.

Supp.2d 131 (D.D.C. 2008) (Kollar-Kotelly, J.).  In doing so, the Court noted that "Plaintiff

concedes that Defendant properly withheld information pertaining to TECS, special agents, and

internal codes, and that Defendant may properly withhold portions of the records if they pertain

to an on-going criminal investigation."  Id. at 138.

The Court observed that Plaintiff only challenged the sufficiency of the Marshall Fields

Declaration submitted in support of Defendant's motion for summary judgment.  Id.  In that

vein, the Court devoted the majority of the January 29 Opinion to addressing Plaintiff's

arguments that the Marshall Fields Declaration contained hearsay statements and therefore

Defendant had failed to show that the 7 pages of records were properly withheld.  Id.

The Court rejected Plaintiff's arguments and noted that "Plaintiff misunderstands the

personal knowledge requirements for FOIA Declarations."  Barnard, 531 F. Supp.2d at 138.  The

Court found that Mr. Fields "is familiar with the processes used to search for the records at issue,

and because he has reviewed the records himself, he is competent to testify as to the information

contained in those records." Id. at 139.  After finding that the Marshall Fields Declaration was

adequate under the FOIA, the Court concluded that "[b]ecause Plaintiff has not challenged

Defendant's decision to withhold information under FOIA Exemptions 2 and 7 or any other

basis, the Court finds that Defendant has properly withheld exempt information in the responsive

records." Barnard, 531 F. Supp.2d at 140.  After reviewing the 7 pages of records *in camera* for

segregability determination, the Court then granted summary judgment in Defendant's favor.[4]

     At present, Plaintiff seeks reconsideration of the January 29, 2008 Opinion by advancing

two arguments.  First, Plaintiff argues that, in granting summary judgment, the Court "relied on

the now completely discredited declaration of Marshall Fields and on the first declaration of

Gloria Marshall, in which Ms. Marshall did not make an adequate determination that an ongoing

criminal investigation ever existed."  Pl. Mot. at 15.  Citing the Second Gloria Marshall

Declaration out of context, Plaintiff argues that the Marshall Fields Declaration is "now

completely discredited" because the Second Gloria Marshall Declaration indicated that Plaintiff

"is no longer the subject of an ongoing criminal investigation." See Pl. Mot. at 15, 18.  Plaintiff

then contends that the discovery that he is not the subject of an ongoing criminal investigation

meets the newly discovered evidence test under Fed. R. Civ. P. 60(b).  Pl. Mot. at 15.  Second,

Plaintiff argues that Defendant improperly relied on Exemption 7(A) to continue to withhold

these seven pages of records.   Plaintiff's assertions lack merit.

     First, there is no "new" evidence that undermines the statements in the Marshall Fields

Declaration.  In fact, the Marshall Fields Declaration and the Second Gloria Marshall

---

[4]    The Court exercised its discretion and ordered Defendant to submit the 7 pages of
records for *in camera* review for segregability determination.  Barnard, 531 F. Supp.2d at 140-
41.

Declaration *do not* contradict each other.  As previously discussed, the focus of the investigation simply changed between February **2007** and February **2008**.[5]  As explained in the Marshall Fields Declaration, submitted in **February 2007** in support of Defendant's initial motion for summary judgment, Plaintiff was the subject of ongoing criminal investigations.  Fields Decl. at ¶ 22 (Dkt. No. 14-3).  One year later, in **February 2008**, Ms. Gloria Marshall submitted a declaration in support of Defendant's motion to stay proceedings, in which she indicated that she "received official notification that plaintiff is no longer the subject of the open and pending criminal investigation originally cited in the Fields Declaration."  Second Gloria Marshall Decl. at ¶ 7 (Dkt. No. 29-3).  In that same declaration, Ms. Marshall elaborated that the investigation of Plaintiff "was closed **after** the Fields Declaration was filed, but before [her] January 23, 2008, declaration was completed."  Id. (emphasis added).[6]  Ms. Marshall also explained that she "did not receive the official notification until February 1, 2008, regarding the closure of the investigation."  Id.

Under these facts, the Marshall Fields Declaration was accurate when it was submitted in February 2007 and the Court properly relied upon the statements in that declaration in granting summary judgment on January 29, 2008.  The Second Gloria Marshall Declaration does not undermine the Fields Declaration in any way but merely explains the change in the subject of an

---

[5]     This is another basis for the Court to grant Defendant's two motions for leave to file two additional declarations *in camera*.  See Dkt. Nos. 41 & 42.  As explained in those two motions for leave, Defendant wishes to provide the Court with additional information surrounding certain pending criminal investigations that cannot be disclosed to Plaintiff and the public.  Id.

[6]     In support of Defendant's compliance of the Court's order requiring Defendant to submit the 7 pages of records for *in camera* review, Ms. Marshall submitted a declaration dated January 23, 2008.  See Barnard, 531 F. Supp. at 141 n.9.

ongoing criminal investigation (i.e., Plaintiff is no longer the subject).

Second, Exemption 7(A) presently applies with equal force to allow ICE to withhold the

7 pages of records in their entirety, as the Court previously held.  See Barnard, 531 F. Supp.2d at

140.  Under Exemption 7(A), an agency can withhold information compiled for law enforcement

purposes when the disclosure of the said information would "reveal the size, scope, and direction

of the investigation."  Boyd v. Dep't. of Justice, 475 F.3d 381, 385-86 (D.C. Cir. 2007).

Here, as explained in the Second Gloria Marshall Declaration and the *first* Reba

McGinnis Declaration, even though Plaintiff is no longer the subject of an ongoing investigation,

the information pertaining to Plaintiff is also relevant to other ongoing investigations.  See

Second Gloria Marshall Decl. ¶ 7; Reba McGinnis Dec. at ¶ 24 (Dkt. No. 39-2).  The disclosure

of information related to Plaintiff could have a negative impact on other ongoing investigations

because it would reveal "the direction of the investigation."   See Boyd, 475 F.3d at 385; see also

Second Gloria Marshall Decl. at ¶ 7.  Furthermore, the Second Reba McGinnis Declaration

further explains that the release of the seven pages of records at issue in the January 29, 2008

Opinion would disclose the focus of other ongoing investigations.  Second Reba McGinnis Decl.

at ¶ 13.[7]   Indeed, the disclosure of these seven pages of records "would allow the subject(s), or

potential subject(s), of those investigations the ability to alter their behavior in order to

circumvent the law and avoid detection."  Id.; see also Boyd, 475 F.3d at 387 (observing that

Exemption 7(A) protects from disclosure information that would "allow for the destruction or

alteration of relevant evidence, and the fabrication of fraudulent alibis.").  In light of these facts,

_____

[7]    The "eleven (11) pages of ICE records" referenced in the Second Reba McGinnis
Declaration include seven pages of records at issue in the January 2008 opinion and four pages
of records recently found and withheld in June 2008.

the Court should find that Exemption 7(A) is properly asserted to allow ICE to continue to

withhold these 7 pages of records and deny Plaintiff's motion for reconsideration.[8]

### 2.    Plaintiff's Challenge of the Second Gloria Marshall Declaration.

Plaintiff also attempts to seek reconsideration of the January 29, 2008 Opinion by

challenging the sufficiency of the Second Gloria Marshall Declaration. Specifically, citing

primarily Fed. R. Evid. 801(c) and Fed. R. Civ. P. 56(e), Plaintiff attacks the Second Gloria

Marshall Declaration as containing hearsay statements and that Ms. Marshall is "not competent

to testify about the existence of other on-going investigations." Pl. Mot. at 20-21. The Court

rejected this identical argument in Plaintiff's *initial* cross motion for summary judgment by

noting that "Plaintiff misunderstands the personal knowledge requirements for FOIA

declarations." Barnard, 531 F. Supp.2d at 138.[9]

Indeed, the Second Gloria Marshall Declaration is substantially similar to the Court's

*approved* Marshall Fields Declaration. See Barnard, 531 F. Supp.2d at 139 (concluding that

"Plaintiff is incorrect that Mr. Fields' declaration contains impermissible hearsay"). As the

Court cogently explained in its January 29, 2008 Opinion, "a declarant in a FOIA case satisfies

---

[8]    As a last ditch effort, Plaintiff argues that since CBP is not invoking Exemption
7(A) for 300 pages of records, ICE "in good faith cannot stand behind its hearsay claim that
FOIA exemption (b)(7)(A) still applies to the 7 responsive ICE pages." Pl. Mot. at 21.
Plaintiff's argument misses the point. This is comparing "apples to oranges." ICE and CBP are
two different components within DHS and the two sets of records are also different. Indeed, the
fact that CBP withdrew its Exemption 7(A) application further supports the contention that
Defendant does not arbitrarily invoke FOIA exemptions to withhold records.

[9]    Plaintiff devotes much ink to complaining that since the grant of summary
judgment in January 2008, CBP processed his FOIA request and produced responsive records.
Pl. Mot. at 18-19. This argument is not relevant in any way to whether the Court should
reconsider its January 2008 Opinion granting summary judgment. The Court's January 2008
Opinion only pertains to ICE and its withholding of its records under Exemption 7(A).

the personal knowledge requirement in Rule 56(e) if in [her]declaration, [she] attests to [her]

personal knowledge of the procedures used in handling a FOIA request and [her] familiarity with

the records in question. Declarants are not required to participate in the search for records.

Consistent with these requirements, hearsay in FOIA declarations is often permissible."

Barnard, 531 F. Supp.2d at 138 (internal quotation marks and citations omitted).  The Court

further elaborated that "[b]ecause a declarant is deemed to have personal knowledge if he has a

general familiarity with the responsive records and procedures used to identify those records, the

declarant is not required to independently verify the information contained in each responsive

record."  Barnard, 531 F. Supp.2d at 138-39.

 Here, the Second Gloria Marshall Declaration satisfies the personal knowledge

requirement.  Specifically, Ms. Marshall attested that she is "the Unit Chief of the Information

Disclosure Unit (IDU)" for ICE.  Second Gloria Marshall Decl. at ¶ 2 (Dkt. No. 29-3).  She has

held that position since 2003.  Id.  As the Unit Chief, Ms. Marshall explained that her "official

duties and responsibilities include the general management, oversight, and supervision of the

IDU which includes the Freedom of Information Act/Privacy Act (FOIA/PA) Section."  Second

Gloria Marshall Decl. at ¶ 3.

 Ms. Marshall also attested that she is "familiar with the facts of this case."  Second Gloria

Marshall Decl. at ¶ 4.  She also indicated that the statements in her declaration "are based on

[her] personal knowledge and experience, review of records kept in the course of business, and

information conveyed to [her] in the course of [her] official business."  Id.  The Second Gloria

Marshall Declaration also references her *first* declaration, in which she specifically attested that

she "[has] reviewed all seven pages of the records and determined that all records are exempt

from disclosure."   First Gloria Marshall Decl. at ¶ 6 (Dkt. No. 25-2).

Notwithstanding Ms. Marshall's clear statements of her familiarity with the records and the processes involved, Plaintiff claims that her statement "does not rely upon personal knowledge of the procedures in handling a FOIA request and the documents in question."  Pl. Mot. at 21.  Aside from this conclusory assertion, Plaintiff fails to offer any factual basis in the record to refute Ms. Marshall's statements.  See, e.g., Stolt-Nielsen Transp. Group Ltd. v. U.S., 480 F.Supp.2d 166, 176 (D.D.C. 2007) (noting that, in a FOIA context, an agency affidavit is afforded substantial weight); see also In re Wade, 969 F.2d 241, 246 (7th Cir. 1992) ("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned."); Gardels v. CIA, 689 F.2d 1100, 1104 (D.C. Cir. 1982); Taylor v. Dep't of the Army, 684 F.2d 99, 106-07 (D.C. Cir. 1982).

Plaintiff then takes issue with the fact that Ms. Marshall "has 'been informed' by an unidentified outside source."  Pl. Mot. at 20.  The Court considered and rejected this very same argument when Plaintiff challenged Mr. Marshall Fields' declaration on this basis.  Barnard, 531 F. Supp.2d at 139.  In finding that Mr. Fields' declaration does not contain impermissible hearsay, the Court noted that Mr. Fields had personal knowledge for purposes of a FOIA declaration because of the "information conveyed to him in the course of his official duties."  Id. Like the Marshall Fields Declaration, Ms. Gloria Marshall gained certain knowledge from "information conveyed to [her] in the course of her official duties."  Under these facts, the Court should similarly reject Plaintiff's argument here and hold that the Second Gloria Marshall Declaration does not contain impermissible hearsay.  Clearly, Ms. Gloria Marshall is the most appropriate declarant to attest to the issues relating to Plaintiff's FOIA request, including the fact

14

that disclosure of information pertaining to Plaintiff could have a negative impact on other ongoing criminal investigations. Second Gloria Marshall Decl. at ¶ 7. Accordingly, the Court should deny Plaintiff's motion for reconsideration on the basis that the Second Gloria Marshall Declaration satisfies the FOIA personal knowledge requirement.

**B.    Plaintiff's Second Motion for Summary Judgment**

Defendant incorporates by reference the summary judgment standard of review set forth in its June 25, 2008 Motion for Summary Judgment Regarding Plaintiff's Third Amended Complaint. See Dkt. No. 39. Furthermore, the Court previously set forth the "Legal Standard" for reviewing a motion for summary judgment under the FOIA in Barnard v. DHS, and therefore, there is no need to reiterate that same standard of review here. 531 F. Supp.2d 131, 135 (D.D.C. 2008).

**1.    Plaintiff's Privacy Act Claim.**

Plaintiff conclusorily argues that Defendant has not shown that it lawfully withheld information under the Privacy Act. Pl. Mot. at 22. Plaintiff's argument lacks merit because the Privacy Act specifically prohibits the disclosure of certain law enforcement systems of records at issue here (see 5 U.S.C. 552a(j)(2) & (k)(2)) or is otherwise inapplicable to those records not maintained in a Privacy Act System of Records.

**a.    ICE**

In processing Plaintiff's FOIA request, ICE searched two separate "Privacy Act systems of records, which include the Treasury Enforcement Communications Systems (TECS) and the Investigations Record System [(IRS).]" Second Reba McGinnis Decl. at ¶ 6. These two systems are exempt from disclosure under the Privacy Act. Id. at ¶ 7.

15

TECS is "an overarching law enforcement information collection, risk assessment, and information sharing environment.  It is also a respository for law enforcement and investigative information."  72 Fed. Reg. 43650 (Aug. 6, 2007) (Gov. Exh. 10).  The IRS contains identifying and other information on individuals subject to investigations.  Second Reba McGinnis Decl. at ¶ 8.  IRS is indexed by names or other identification information.  Id.

Under the Privacy Act, both TECS and IRS are exempt from disclosure.  Id. at ¶ 9. Specifically, published Federal Register Notices identify TECS and IRS as "system[s] of records [that] may not be accessed under the Privacy Act for the purpose of inspection."  See 66 Fed. Reg. 53029 (Oct. 18, 2001) (relating to TECS – under "Record Access Procedures" heading) (Gov. Exh. 4); 66 Fed. Reg.53007-08 (Oct. 18, 2001) (relating to IRS – under "Record Access Procedure" heading) (Gov. Exh.5).   Furthermore, these two systems of records "contain[] investigatory material compiled for law enforcement purposes whose sources need not be reported."  See 66 Fed. Reg. 53029 (Oct. 18, 2001) (relating to TECS – under "Record Source Categories" heading) (Gov. Exh. 4); 66 Fed. Reg.53007-08 (Oct. 18, 2001) (relating to IRS – under "Record Source Categories" heading) (Gov. Exh.5).   Accordingly, under the Privacy Act, both TECS and IRS are exempt from disclosure.  See 5 U.S.C. §522a(j)(2) & (k)(2); see also Second Reba McGinnis Decl. at ¶ 9.  Plaintiff's motion for summary judgment pertaining to his Privacy Act claim absolutely fails as a matter of law because the record systems at issue are exempt from the Privacy Act.

       **b.**    **CBP**

Plaintiff claims that CBP failed to invoke the Privacy Act to withhold records.  Pl. Mot. at 22.  This argument also lacks merit.

CBP's documents located at Bates Stamp Numbers 3-142; 237; 304-313 are records found in the TECS, which are exempted from the access provisions of the Privacy Act. 31 C.F.R. §1.36(c)(iv), 66 Fed. Reg. 53029 (Oct. 18, 2001).[10]  In addition, CBP's documents located at Bates Stamp Numbers 2, 143-163, 168-215, 223-226, 227-230, 238-300 are records maintained in the Automated Targeting System (ATS), a system which, pursuant to 5 U.S.C. § 552a(e)(4), is compiled for law enforcement purposes and is also exempted from the disclosure provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2) and (k)(2).  See 72 Fed. Reg. 43,567 (Aug. 6, 2007); 72 Fed. Reg. 43,650 (Aug. 6, 2007); see also Privacy Impact Assessment for the Automated Targeting System (Aug. 3, 2007) (Gov. Exh. 11).  Therefore, these Bates stamp documents are exempt from disclosure under 5 U.S.C. § 552a(j)(2) and (k)(2).

Finally, CBP's documents located at Bates Stamp Numbers 1, 164-167, 216-222, 231-233 are maintained in the Targeting Framework (TF), a part of the ATS.  See Declaration of Laurence Castelli at ¶ 4.  As discussed above, ATS is exempt from disclosure under the Privacy Act and, therefore, the TF is similarly exempt.

CBP's documents located at Bates Stamp Numbers 234-236 and 301-303 were neither maintained in any CBP Privacy Act system of records, nor are they indexed or retrieved using Plaintiff's name or a unique identifier and, therefore, the Privacy Act does not apply to these records.  Castelli Decl. at ¶5-6.  Moreover, documents with Bates Stamp Numbers 301-303 were maintained in an ICE investigative file, which are exempt from disclosure under 5 U.S.C. § 552a(j)(2) and (k)(2) to the extent that they are maintained in and retrieved by ICE from an

---

[10]    CBP's Bates stamp documents are described in Defendant's Exhibits E & F, attached to Defendant's Motion for Summary Judgment.

investigative file.  Castelli Dec. at ¶ 7.[11]

> **2.    Plaintiff's Freedom of Information Act Claims.**

Plaintiff claims that ICE and CBP fail to properly provide sufficient justification to withhold records under the various stated FOIA exemptions.  Pl. Mot. at 23-35.  Since Plaintiff's motion for summary judgment addresses the issues by each FOIA exemption, Defendant will similarly track Plaintiff's organization.

> **a.    FOIA Exemption 7(A).**

Plaintiff asserts that ICE failed to offer any explanation for withholding four pages of responsive records under FOIA Exemption 7(A) and that ICE failed to provide a *Vaughn* Index for those records.  Pl. Mot. at 30-31.[12]  Plaintiff's argument elevates form over substance because ICE did provide a *Vaughn* Index for those four pages of records in the form of the Reba McGinnis Declaration (Dkt. No. 39-2).

On June 19, 2008, ICE informed Plaintiff that it located an additional 11 pages of responsive records.  See Reba McGinnis Decl. at ¶ 19 (Dkt. No. 39-2).  ICE released 7 pages in their entirety and withheld four pages in whole under (b)(2), 7(A), 7(C) and 7(E).  Id.  One week later, on June 25, 2008, Defendant filed its motion for summary judgment and submitted the Reba McGinnis Declaration in support of ICE's withholding of these four pages of records.  See Dkt. No. 39-2.  The Reba McGinnis Declaration constituted Defendant's *Vaughn* Index.

Indeed, as the Court pointed out, "[t]here is no set formula for a *Vaughn* index; so long as

---

[11]    In any event, as explained in the Shari Suzuki declaration (Dkt. No. 39-7), these Bates stamp documents are withheld under FOIA Exemptions (b)(2); (b)(4), (b)(6), (b)(7)(C) and (b)(7)(E).  See Dkt. No. 39-7.

[12]    CBP is not invoking Exemption 7(A) to withhold its records.

the agency provides the Court with materials providing a 'reasonable basis to evaluate the claim of privilege,' the precise form of the agency's submission – whether it be an index, a detailed declaration, or a narrative – is immaterial."   Hornbeck Offshore Transp., LLC v. U.S. Coast Guard, 2006 WL 696053, *6 (D.D.C. March 20, 2006) (Kollar-Kotelly, J.) (quoting Gallant v. Nat'l Labor Relations Bd., 26 F.3d 168, 173 (D.C.Cir.1994)).

Here, the Reba McGinnis Declaration provides a detailed narrative of the bases for withholding the four pages of records under FOIA Exemptions (b)(2), 7(A), 7(C) and 7(E).  See Reba McGinnis Decl. at ¶ 20-26 (Dkt. No. 30-2).  From these statements, the Court could certainly determine that ICE properly invoked these four FOIA exemptions.

As for the merit of ICE's invocation of FOIA Exemptions 7(A), Defendant refers the Court to Defendant's Motion for Summary Judgment Re: Plaintiff's Third Amended Complaint, which set forth the legal and factual bases justifying the invocation of this FOIA exemption.  See Def. Mot. at 6-7 (Dtk. No. 39).

### b.    FOIA Exemption 7(C)

Exemption 7(C) allows an agency to withhold law enforcement records the disclosure of which would reasonably be expected to constitute an unwarranted invasion of personal privacy. See Deglace v. DEA, 2007 WL 521896, *2 (D.D.C. Feb. 15, 2007) (Kollar-Kotelly, J.).  Here, Plaintiff complains that Defendant has not properly applied Exemption 7(C) because Defendant fails to show that the release of the requested records would intrude upon the personal privacy of the affected individuals.  Pl. Mot. at 31-32.  Without citing any authority, Plaintiff also maintains that disclosure of the names and positions of federal employees and third parties in Plaintiff's presence weighs in favor of the public interest in disclosure.  Pl. Mot. at 32.

19

The fatal flaw of Plaintiff's argument is his failure to identify what public interest would be served and how that particular public interest is advanced in this case by releasing the names and positions of federal employees or other third parties who happened to be in Plaintiff's presence.  See Edmonds v. FBI, 272 F. Supp.2d 35, 53 (D.D.C. 2003) (explaining that Plaintiff failed to show how the disclosure of the individual identities of FBI personnel and third parties would serve the public interest and discussing that release of FBI personnel names associated with particular investigation could subject personnel to harassment).  On the other hand, as explained in Defendant's Motion for Summary Judgment, disclosing the requested information would subject these federal employees and third parties to unwanted harassment and intrude upon their privacy.  See Def. Mot. 8-9, 15.

The public interest would outweigh the privacy interest only if there is "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and the information sought is to confirm or refute that evidence.  Deglace, 2007 WL 521896, at * 3. Nowhere in Plaintiff's motion for summary judgment did he argue that Defendant engaged in any illegal activity.  Therefore, without more, Plaintiff has not shown that the public interest outweighs the privacy interests in this case.

For additional explanations as to the merit of FOIA Exemption 7(C) used by ICE and CBP to withhold records, Defendant refers the Court to Defendant's Motion for Summary Judgment.  Def. Mot. at 8-9, 15.

### c.    FOIA Exemption 7(E)

Citing primarily King v. DOJ, 830 F.2d 210, 224 (D.C. Cir. 1987), Plaintiff argues that

Defendant's categorical description of the redacted material and the anticipated harm of disclosure is inadequate.  Pl. Mot. at 34.  As a preliminary matter, the portion of the King ruling cited by Plaintiff dealt with the FBI's invocation of Exemption 1, which is not at issue in this case.  In any event, Plaintiff's argument is infirm because Defendant's *Vaughn* Index is sufficiently detailed.

The Declarations of Shari Suzuki and Reba McGinnis, coupled with the indices of the records – which constitute Defendant's *Vaughn* Index and were submitted with Defendant's motion for summary judgment –  provide detailed explanations of the information withheld under Exemption 7(E).  For instance, as explained in Defendant's motion for summary judgment, the Suzuki Declaration explains that Exemption 7(E) applies to protect CBP's investigative techniques, disclosure of which would reveal CBP examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers, which could be used by potential violators to develop countermeasures to evade detection, inspection and targeting methods.  Def. Motion at 16 (citing Shari Suzuki Decl. ¶ 31).   Similarly, ICE relied on this exemption to protect its own law enforcement investigative techniques.  Id. at 10-11 (citing Reba McGinnis at ¶ 26).  The McGinnis declaration explains that ICE has cooperative arrangements with other agencies as part of its investigative techniques and the disclosure of such arrangements would compromise potential investigations.  Id.  Accordingly, the Court should find that Defendant's *Vaughn* Index properly provides the justification for invoking Exemption 7(E) to withhold law enforcement techniques and deny Plaintiff's motion for summary judgment on this issue.

Defendant also refers the Court to Defendant's motion for summary judgment for the

merit of this exemption.  Def. Motion at 10-11, 16-18.

**d.**      **FOIA Exemption (b)(6).[13]**

Defendant incorporates by reference its argument on Exemption (b)(6) as set forth in

Defendant's Motion for Summary Judgment.  See Dkt. No. 39.

Plaintiff maintains that "Defendant has failed to justify its invocation of FOIA exemption

(b)(6) to withhold the names and positions of federal employees, as well as the names of third

parties, who were in Dr. Barnard's presence during the numerous detentions, interrogations and

searches to which Defendant subjected Dr. Barnard."  Pl. Mot. at 26.  In support of Plaintiff's

argument, he primarily relies on Getman v. N.L.R.B., 450 F.2d 670 (D.C. Cir. 1971).  Plaintiff's

reliance on Getman is misplaced and ignores a subsequent landmark Supreme Court holding in

U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989).

In Getman, a group of labor law professors requested that the National Labor Relations

Board ("NLRB") "furnish them the names and home addresses of employees eligible to vote in

certain representation elections."  450 F.2d. at 671.  The list of employees was maintained "to

assure that unions have a fair chance to communicate with employees before elections and to

facilitate the Board's function of resolving challenges to voter eligibility."  Id.  The law

professors requested the list in order to complete a study on NLRB voting and wanted to use the

list to "facilitate scheduling of interviews with employees before and after certain elections."  Id.

"One of the primary goals of the study is to consider the feasibility of changing Board rules to

eliminate unnecessary grounds for challenges to elections, so as to streamline the entire process."

Id at 675.  In evaluating the public interest in releasing the list, the D.C. Circuit found that:

---

[13]     ICE does not invoke Exemption (b)(6).

> [t]he public interest need for such an empirical investigation into the assumptions underlying the Board's regulation of campaign tactics has for some time been recognized by labor law scholars.  This particular study has been reviewed and supported by virtually every major scholar in the labor law field.  The record is also replete with testimonials from leading management and union representatives and Government officials.  Appellees' research has also been approved by the prestigious National Science Foundation, which has awarded appellees the largest grant ever made available for law related research

Id. at 675-76.[14]

Here, unlike the professors in Getman, Plaintiff is not seeking a "list" of employees maintained by an agency for communication purposes, rather he is seeking the names of federal employees as well as third parties directly associated with law enforcement records.  Further, Plaintiff has failed to explain how the public interest would be advanced in this case by requiring Defendant to disclose the names and identifying information of the federal employees and third parties who were in his presence when he was questioned at the border.  See Pl. Mot. at 25-28.

Contrary to Plaintiff's assertion, in Reporters Committee, the Supreme Court narrowed the scope of the public interest to be considered under the FOIA's privacy exemptions, declaring for the first time that it is limited to "the kind of public interest for which Congress enacted the FOIA."   The Supreme Court elaborated that the "core purpose of the FOIA," is to "shed[] light on an agency's performance of its statutory duties."  489 U.S. at 773, 775.  Indeed, in Nat'l Archives and Records Admin. v. Favish, the Supreme Court clarified that mere allegations of

---

[14]    Further, the Court cautioned in a footnote that "[t]his decision, of course, goes only to the merits of appellees' request for disclosure. . . . our ruling for appellees in this case should not be understood automatically to compel the Board in the future to give out Excelsior lists to all other applicants, or applicants with a less carefully designed or more disruptive study would require a new balancing and might be found to involve a "clearly unwarranted invasion of personal privacy" which would justify nondisclosure."  Id. at 677 n.24.

wrongdoing are "insufficient" to satisfy the "public interest" standard required under the FOIA. 541 U.S. 157, 173 (2004).  Here, Plaintiff has provided no showing beyond conclusory allegations that the release of identifying information of the federal government employees and third parties will shed light on CBP's performance of its statutory duties.

Furthermore, even if Plaintiff were seeking a list of CBP employees not directly associated with law enforcement (which he is not), such lists have been properly withheld under FOIA Exemption (b)(6).  See Center for Public Integrity v. OPM, No. 04-1274, 2006 WL 3498089, at *5 (D.D.C. Dec. 4, 2006).  Plaintiff also urges that because certain CBP law enforcement personnel and third parties were in his presence during his border crossings and interactions with CBP, those individuals' names and titles should be disclosed under FOIA.  To the contrary, FOIA case law demonstrates that the privacy interest is not diminished or reduced just because personal information was at one time in the public domain.  Taylor v. U.S. Dep't of Justice, 268 F.Supp.2d 34, 38 (D.D.C. 2003) ("Plaintiff contends that because he already knows the identity of Mr. Roark, whom he notes was the best man in his wedding, there could be no invasion of privacy if the agency was ordered to provide confirmation of whether Mr. Roark has ever been charged or convicted of fraud. . . . However, the fact that the requestor might be able to figure out some or all of the individuals' identities through other means, or the fact that their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed.") (internal citation and alteration omitted); Sherman v. U.S. Dep't of Army, 244 F.3d 357, 363-64 (5th Cir. 2001) (discussing FOIA exemption 6 and explaining "the fact that otherwise private information at one time or in some way may have been placed in the public domain does not mean that a person irretrievably loses his or her privacy interest in the

information."); Halloran v. Veterans Admin., 874 F.2d 315, 322 (5th Cir. 1989) (same); Wiggins

v. Nat'l Credit Union Admin., No. 05-2332, 2007 WL 259941, at *8 (D.D.C. Jan. 30, 2007)

(discussing FOIA exemption 7(C) in explaining "[t]he fact that the identities of third parties have

already been disclosed elsewhere does not diminish their privacy interest in not having other

records disclosed. . . . Prior disclosure of personal information does not eliminate the privacy

interest in avoiding further disclosure by the government."); Linn v. U.S. Dep't of Justice, No.

92-1406, 1995 WL 417810, at *31 (D.D.C. June 6, 1995) ("Although Plaintiff might be correct

that some of the names at issue were at one time released to the general public, individuals are

entitled to maintaining the 'practical obscurity' of personal information that is developed through

the passage of time.").

      Finally, Plaintiff argues that "Defendant cannot simply make conclusory statements in its

Vaughn Indices stating that the names and positions of federal employees and third parties 'are

redacted pursuant to Exemption (b)(6) because release would be considered a clearly

unwarranted invasion of privacy[.]'" Pl. Mot. at 28. This assertion ignores the fact that

Defendant provides a detailed description of the items of information withheld under (b)(6) in its

Vaughn Index. For example, in Bates Stamp Numbers 054-068, the "names and social security

numbers of federal employees" were redacted (Government's Ex. E at p. 13) (Dkt. No. 39) and

in Bates Stamp Numbers 301-303 "[t]he badge numbers of federal employees" were redacted

(Government's Ex. E at p. 16) (Dkt. No. 39). For each record that contained information exempt

from disclosure pursuant to Exemption (b)(6), CBP provided as much specificity as possible

without revealing the actual names, social security numbers and badges etc., the very

information that it seeks to protect.

Accordingly, because Plaintiff has failed to articulate a public interest in the disclosure of the names and other identifying information of law enforcement personnel and under the weight of authorities above, the Court should deny Plaintiff's second motion for summary judgment on this issue and find that Defendant properly invoked Exemption (b)(6) to withhold the requested information.

### 3.     Defendant Conducted Reasonable Searches.

Plaintiff contends that Defendant has not conducted an adequate search for responsive records as shown by Defendant's repeated supplementation of its production of records. Pl. Mot. at 37. As a preliminary matter, Plaintiff's Third Amended Complaint did not even allege that Defendant failed to conduct a reasonable search for records. See generally Third Amended Complaint (Dkt. No. 37). Plaintiff's motion for summary judgment is the first time that he challenges the sufficiency of Defendant's search for records. Pl. Mot. at 37. On this basis alone, the Court should simply reject Plaintiff's newly minted argument.

In any event, Plaintiff's argument defies logic. In effect, Plaintiff is faulting Defendant for being conscientious and continuing to search for responsive records. Contrary to Plaintiff's argument, the fact that Defendant supplemented its production of documents is a testament to Defendant's appreciation of its obligation under the FOIA to produce documents. Had Defendant not supplemented its production Plaintiff would not have any basis to complain about Defendant's document searches. And, Plaintiff would not have received the large number of documents that he currently has.

As to the merit of Defendant's searches, the Declarations of Shari Suzuki and Reba McGinnis describe in detail the systems of records searched and the terms used to search for

responsive records. See Dkt. No. 39. As the Court pointed out, "[i]n determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. 'The Court employs a 'reasonableness' test to determine the 'adequacy' of search methodology, consistent with the congressional intent tilting in favor of disclosure.'" Hornbeck, 2006 WL 696053, at * 8 (citing Campbell v. Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir.1998)). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Hornbeck, 2006 WL 696053, at * 11 (citing Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir.2003)).

Here, for instance, the Suzuki Declaration explained that CBP searched its TECS systems for responsive records. Suzuki Decl. at ¶ 6 (Dkt. No. 39-7). Thereafter, CBP also searched its Automated Targeting System – Passenger (ATS-P), the records maintained at CBP Headquarters, and the ports of entry for Toronto and Washington-Dulles. Id. at ¶ 10. CBP also described the terms used for its search, including "Neal," "Barnard," "Bernard," and "07/10/53". Id. at ¶ 6.

As for ICE, in addition to the search described in the Marshall Fields Declaration (Dkt. No. 14-3),[15] the McGinnis Declaration explained that it was ICE's initiative to inquire its local ICE Special Agent in Charge Office that resulted in the discovery of additional responsive records. McGinnis Decl. at ¶ 19 (Dtk. N0. 39-2). Given the numerous systems searched and the number of times that Defendant produced documents, Defendant's search is more than reasonable as required under the FOIA.

---

[15]    Plaintiff did not challenge the sufficiency of ICE's search for responsive documents. See Barnard, 531 F. Supp.2d at 136 n.6.

### 4.    Segregability

As explained in Defendant's motion for summary judgment, both ICE and CBP reviewed the withheld documents "line by line" to determine whether the non-exempt information could be segregated from the exempt information.  Def. Motion at 11-12, 18 (citing the Suzuki and McGinnis Declarations).  At the end, both ICE and CBP determined that the non-exempt information could not be disclosed without also revealing the protected information. Accordingly, Defendant has satisfied its obligation to segregate non-exempt information from the protected information.

**IV.     Conclusion.**

For the foregoing reasons and those set forth in Defendant's Motion for Summary

Judgment, the Court should deny Plaintiff's Motion for Reconsideration and Second Motion for

Summary Judgment (Dkt. No. 40).

Dated July 25, 2008                    Respectfully  submitted,


                    /s/     Jeffery A. Taylor
                    JEFFREY A. TAYLOR, D.C. BAR # 498610
                    United States Attorney


                    /s/     Rudolph Contreras
                    RUDOLPH CONTRERAS, D.C. BAR #  434122
                    Assistant United States Attorney


                    /s/     John C. Truong
                    JOHN C. TRUONG, D.C. BAR # 465901
                    Assistant United States Attorney
                    555 4th Street, N.W.
                    Washington, D.C. 20530
                    202-307-0406

                    Attorneys for the Defendant

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NEAL D. BARNARD, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No.: 06-1393 (CKK) |
| | ) | ECF |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER

Upon consideration of Plaintiff's Motion for Reconsideration and Second Motion for Summary Judgment, Defendant's Opposition thereto, and the entire record herein, it is this

_____ day of _____, 2008,

ORDERED that Plaintiff's Motion for Reconsideration and Second Motion for Summary Judgment, be and is hereby DENIED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED with prejudice.

SO ORDERED.

_____
U.S. District Judge