IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Neal D. Barnard, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 06-CV-1393 (CKK) |
| ) | |
| U.S. Department of Homeland Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## SECOND DECLARATION OF REBA A. MCGINNIS

### I. INTRODUCTION

1. I, Reba A. McGinnis, make the following statement, under penalty of perjury pertinent to the above styled and numbered cause, and, being over 18 years of age, I am fully competent to make the statements contained in this Declaration.

2. I am the Unit Chief of the Information Disclosure Unit (IDU), Mission Support Division, Office of Investigations (OI), GS-15, at U.S. Immigration and Customs Enforcement (ICE) within the U.S. Department of Homeland Security (DHS). I have held the position of Unit Chief since September 4, 2007.[1] My office is located at 425 I Street, NW, Washington, DC 20536.

3. As the Unit Chief of the IDU, my official duties and responsibilities include the general management, oversight, and supervision of the IDU which includes the Freedom of Information Act/Privacy Act (FOIA/PA) Section. The FOIA/PA Section processes the FOIA/PA requests received by OI and has oversight of the FOIA/PA functions in the twenty-six (26) Offices of the Special Agents in Charge of OI, within ICE.

---

[1] I concurrently held the title of Unit Chief with Gloria L. Marshall from September 4, 2007 – February 28, 2008.

4. I am familiar with the facts of this case. The statements contained in this Declaration are based on my personal knowledge and experience, review of documents kept in the course of business, and information conveyed to me in the course of my official duties.

## II. BACKGROUND

5. On January 29, 2008, the Court issued a Memorandum Opinion indicating, among other things, that the parties could file supplemental briefings as to Plaintiff's Privacy Act claim, if necessary. On June 25, 2008, Plaintiff filed a "Motion for Reconsideration, Second Motion for Summary Judgment and Request for Oral Argument."

## III. CATEGORIES OF RECORDS

6. Documents determined to be responsive to Plaintiff's FOIA request were retrieved from two separate Privacy Act systems of records: (1) the *Treasury Enforcement Communications System (TECS)*, and (2) the *Investigations Record System*.

7. As indicated in the Declaration of Marshall H. Fields, Jr. (Fields Decl.), dated February 20, 2007, for the most part, TECS is an evolving electronic database used for storage, tracking, and retrieval of law enforcement information. *See* Government's Exhibit 1 at ¶ 15. All of ICE OI offices have access to TECS. Id. Information is stored on various media, e.g., magnetic disc and tape and laser optical disks, with backups in microfiche and hardcopy. Id. Categories of individuals covered by the system are convicted/suspected violators of customs, immigration, banking, terrorism, arms and weapons, hazardous material, drug, or related laws; individuals who are suspected of, or who have been arrested for, thefts from international commerce; foreign nationals who are in the U.S. illegally; fugitives with outstanding warrants – Federal and State; victims of U.S. law violations; owners, operators and/or passengers of vehicles, vessels or aircraft traveling across U.S. borders; and individuals participating in financial transactions

reportable under the Bank Secrecy Act (BSA), *inter alia*. Id. Information of every description from a variety of Federal, State, and local sources that contributes to effective law enforcement may be maintained in the TECS system of records. Id. Retrievability is accomplished via computerized search engines linked to names, unique identifiers, addresses, or in association with enforcement reports or other system documents. Id. TECS records pertaining to Plaintiff were found by querying Plaintiff's name. *See* Id. at ¶ 16. Those TECS records constitute the six (6) pages of ICE records found and discussed in the Fields Decl., as well as the seventh page that was found and discussed in the first Declaration of Gloria L. Marshall dated January 23, 2008. Id. and Government's Exhibit 2 at ¶ 6.

8.  The *Investigations Record System* (IRS) may contain any identifying and other relevant information on subject individuals which might relate to the following categories of investigations: *Smuggling, Diamonds & Jewelry; Smuggling, Liquor; Smuggling, Narcotics; Smuggling, All Other; Prohibited Importations; Navigations, Airplane and Vehicle Violations; Neutrality Violations; Illegal Exports; Baggage Declaration Violations; Customhouse Brokers and Customs Attorneys; Applications for Licenses; Theft, Loss, Damage, and Shortage; Irregular Deliveries; All Other Criminal Cases; Currency Violations; Organized Crime; Personnel Derelictions; Other Departments, Bureaus, and Agencies; Federal Tort Claims; Personnel Background Investigations; Undervaluation and False Invoicing; Petitions for Relief; Drawback; Marking of Merchandise; Customs Bonds; Customs Procedures; Collections of Duties and Penalties; Trademarks and Copyrights; Foreign Repairs to Vessels and Aircraft; Classification; Market Value; Dumping; and Countervailing Duties*. Records in the IRS are maintained in hardcopy files, microfiche, and electronically. The record system is indexed by reference to the individual's name and/or identification number correlated to the investigative

case number to which the information relates. The hardcopy file and microfiche records are retrieved by the investigative case number and the electronic files are retrieved by name and/or other personal identifiers. The Fields Decl. indicated that all records in the IRS are linked into TECS and that any query of TECS would have indicated the existence of any IRS records. *See* Government's Exhibit 1 at ¶ 16. The Fields Decl. further stated that the TECS query conducted in this matter did not indicate that records responsive to Plaintiff's request existed in the IRS. Id. As it turns out, the additional ICE records discussed in my June 24th, 2008, Declaration (*See* Government's Exhibit 3 at ¶ 19) were maintained in a file that is part of the IRS. Upon re-querying TECS, it is apparent that TECS does indeed link to the existence of such records. It appears that the IDU Analyst who conducted the original query of TECS in response to Plaintiff's request inadvertently overlooked the linked records in IRS.

## IV. THE PRIVACY ACT OF 1974, 5 U.S.C. § 552a

9. ICE processes all requests by individuals for records under both the FOIA and PA in order to provide requesters with the maximum disclosure authorized by law. Certain ICE investigative records are stored within the TECS and IRS Privacy Act systems of records. Both systems of records, however, are exempt from disclosure pursuant to subsections (j)(2) and (k)(2) of the Privacy Act, 5 U.S.C. §§ 552(j)(2) & (k)(2). Those systems' exemption from the Privacy Act has been set forth in the TECS and IRS system of records notices that have been published in the Federal Register at 66 Fed. Reg. at page 53029 (October 18, 2001) and 66 Fed. Reg. at pages 53007-53008 (October 18, 2001), respectively. *See* Government's Exhibits 4 and 5. Both the TECS and IRS system of records notices explicitly state, "RECORD ACCESS PROCEDURES: This system of records may not be accessed under the Privacy Act for the purpose of inspection." *See* Government's Exhibit 4 at page 53029 and Government's Exhibit 5

at page 53008. Accordingly, the TECS and IRS records withheld by ICE in this matter are exempt from disclosure to Plaintiff under the Privacy Act.

### V. THE (c)(1) EXCLUSION, 5 U.S.C. § 552(c)(1)

10. 5 U.S.C. § 552(c)(1) (the "(c)(1) exclusion") indicates that when a FOIA request is made which involves access to records described in section (b)(7)(A) of the FOIA, 5 U.S.C. § 552(b)(7)(A); the investigation or enforcement proceeding involves a possible violation of criminal law; there is reason to believe that the subject of the investigation or proceeding is unaware of its pendency; and disclosure of the existence of the records could reasonably be expected to interfere with the enforcement proceedings; the agency may, during only such time as the circumstances continue, treat the records as not subject to the requirements of this section. Essentially, the (c)(1) exclusion authorizes federal law enforcement agencies, under specified circumstances, to shield the very existence of records of ongoing investigations or proceedings by excluding them entirely from the FOIA's reach.

11. In May 2006, Plaintiff's FOIA request was assigned to an Analyst in the IDU. *See* Government's Exhibit 1 at ¶ 16. On June 1, 2006, the IDU Analyst queried TECS and located TECS records responsive to Plaintiff's FOIA request. In June 2006, the IDU was informed by federal law enforcement personnel that Plaintiff was the subject of an open investigation and that Plaintiff was unaware of that investigation. Based on that information, and the IDU's review of the records, the IDU determined that disclosure of the existence of the requested records could reasonably be expected to interfere with the investigation. Accordingly, ICE utilized the authority provided under the (c)(1) exclusion of the FOIA and responded with its August 5, 2006, letter advising Plaintiff that ICE had no records responsive to his request. *See* Government's Exhibit 6. Subsequently, the IDU received information indicating that the (c)(1)

exclusion was no longer applicable. Accordingly, upon receipt of this information, ICE re-examined Plaintiff's FOIA request and issued its November 16, 2006, supplemental FOIA response indicating that ICE records responsive to his request were exempt from disclosure, in their entirety, pursuant to exemptions (b)(2), (b)(7)(A), (b)(7)(C), and (b)(7)(E) of the FOIA. *See* Government's Exhibit 7.

### VI. FOIA EXEMPTION (b)(7)(A)

12. The Second Declaration of Gloria Marshall indicated that she had been informed that disclosure of information related to Plaintiff could have a negative impact on other ongoing investigations and, therefore, (b)(7)(A) was applicable to the seven pages of ICE records that were submitted to the Court for *in camera* review on January 23, 2008. *See* Government's Exhibit 8 at ¶ 7. Similarly, I stated in my June 24, 2008, Declaration that I had been informed that there is information related to Plaintiff contained in the "ICE Significant Incident Reports"[2] that is also relevant to other ongoing investigations; it has been conveyed to me that the release of such information could have a negative impact on the other ongoing investigations; the release of such information could reasonably be expected to interfere with those investigations; and FOIA exemption (b)(7)(A) is applicable to the "ICE Significant Incident Reports." *See* Government's Exhibit 3 at ¶ 24.

13. Release of the eleven (11) pages of ICE records that were withheld in their entirety could negatively impact the other ongoing investigations by revealing the focus of those investigations. Disclosure of such information would allow the subject(s), or potential subject(s), of those investigations the ability to alter their behavior in order to circumvent the law and avoid detection. Further, tipping off such individuals as to the existence of the other investigations

---

[2] The "ICE Significant Incident Reports" constitute four (4) pages of ICE records and were withheld in their entirety pursuant to FOIA exemption (b)(7)(A) as well as the other FOIA exemptions asserted in my June 24, 2008, declaration. *See* Government's Exhibit 3 at ¶¶ 19-26.

would enable those individuals the opportunity to destroy evidence and intimidate witnesses. This would not only interfere with the ongoing investigations, but could also hamper any potential prosecutions.

### VII. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 25th day of July, 2008.

*Reba A. McGinnis*

Reba A. McGinnis
Chief, Information Disclosure Unit
Mission Support Division
Office of Investigations
Immigration and Customs Enforcement
United States Department of Homeland Security
425 I Street, NW
Washington, DC 20536