## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NEAL D. BARNARD, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.:  06-CV-1393 (CKK) |
| | ) |
| DEPARTMENT OF HOMELAND SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

This memorandum is submitted in reply to Defendant's Opposition to Plaintiff's Motion for Reconsideration and Second Motion for Summary Judgment.  Plaintiff Neal D. Barnard, M.D., seeks reconsideration of this Court's January 29, 2008, judgment that Defendant Department of Homeland Security ("DHS") properly withheld as exempt in their entirety 7 pages of records responsive to Dr. Barnard's request to Immigration and Customs Enforcement ("ICE") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a (collectively "FOIA/PA").  Dr. Barnard also seeks summary judgment against Defendant for its failure to provide more than 300 additional pages, responsive to his FOIA/PA requests to ICE and U.S. Customs and Border Protection ("CBP"), identified by Defendant after the Court's judgment.

**II.    STATEMENT OF FACTS**

Dr. Barnard respectfully refers the Court to the Statement of Facts contained in his Memorandum of Points and Authorities in Support of Plaintiff's Motion for Reconsideration,

Second Motion for Summary Judgment, and Request for Oral Argument ("Second Barnard MSJ"). However, Dr. Barnard takes issue with Defendant's mischaracterization of certain facts.

Defendant devoted more than a page of its Opposition to Plaintiff's Motion for Reconsideration and Second Motion for Summary Judgment ("Opposition") to demonstrating that it notified Dr. Barnard of the existence of the CBP pages prior to the Court's judgment regarding the first 7 ICE pages. (*See* Opposition, at 6–7.) Defendant then concluded that its failure to be candid with *the Court*, which would have spared the Court from prematurely ruling on Defendant's incomplete FOIA/PA response, did not prejudice Dr. Barnard "in any way." (*See id.* at 7.) Defendant's wishful thinking does not change the facts.

On January 23, 2008, in its papers regarding *in camera* review, Defendant notified the Court that it possessed 7, not 6, ICE pages and that it was withholding all of them in their entirety pursuant to several FOIA exemptions. (*See* Notice Re: Compliance Marshall Decl. ("First Marshall Declaration") ¶ 6.) Yet Defendant knew as early as January 17, 2008, *before it filed the First Marshall Declaration*, that it also possessed "third agenc[y]" records responsive to the FOIA/PA request and at least 82 CBP records responsive to an earlier FOIA/PA request submitted by Dr. Barnard. (Def. Mot. Stay Ex. B ("Second Marshall Declaration") ¶ 6.) On January 29, 2008, the Court, not possessing this information, issued its ruling on the 7 ICE pages, the only pages that it knew to be at issue in this dispute. If Defendant had notified the Court—and not just Dr. Barnard—of the existence of additional records at the time that it submitted its papers regarding *in camera* review, the parties and this Court could have been spared a great deal of lost time and effort.[1]

---

[1]     Dr. Barnard learned for the first time that Defendant had misled him and the Court about the number of responsive documents in Defendant's possession during the work week ending Friday, January 18, 2008. (*See* Opposition Ex. 9.) At that time, the parties' motions for summary judgment had been pending, fully briefed, since April 26, 2007. Dr. Barnard did not immediately inform the Court of Defendant's misrepresentation, because, *inter*

III.  **ARGUMENT**

A.  **This Court Should Vacate Its Judgment That All Seven Pages Withheld By ICE Are Exempt From Disclosure Because Newly Discovered Evidence Establishes That Dr. Barnard Is Not The Subject Of An Ongoing Criminal Investigation.**

A party may move for relief from final judgment when there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."[2] FED. R. CIV. P. 60(b)(2).  To meet the requirements of Rule 60(b)(2), the newly discovered evidence:

> (1) must have been in existence at the time of the disputed judgment; (2) "could not by the exercise of due diligence have been discovered in time to present it in the original proceeding;" (3) "must not be merely cumulative or impeaching;" and (4) "must be admissible and credible, and of such a material and controlling nature as will probably change the outcome."

*Int'l Ctr. for Tech. Assessment v. Leavitt*, 468 F. Supp. 2d 200, 206 (D.D.C. 2007) (citation omitted).

Defendant cited a non-binding treatise for the notion that the new evidence must have "existed at the time of trial" and then chose "February 2007" as "the time of trial."  (*See* Opposition, at 8 ("Plaintiff must show that (1) he **was not** the subject of investigation in February 2007.").)  February 2007 is neither the date that Dr. Barnard initiated this lawsuit, nor the date of the Court's judgment.  Defendant appears to have chosen February 2007 simply

---

*alia*, if Defendant had turned over the new pages to him, there would have been no reason to involve the Court in this issue.  In discussions among the parties beginning during the week of January 18, Defendant proposed to submit a consent motion to stay that would inform the Court of the newly discovered pages and allow time for Defendant to process the pages and for Dr. Barnard to review any pages provided to him.  On January 23, 2008, Defendant provided Dr. Barnard with a draft consent motion in which Defendant formally acknowledged the existence of the new pages and its intent to process them by February 5, 2008.  (*See id.*)  Because the parties did not concur as to the extent of the stay and the procedure by which Dr. Barnard would challenge any new pages withheld by Defendant, the parties agreed to file separate motions.  While the parties were engaged in good faith discussions intended to eliminate or limit, to the extent possible, any disputes about the new documents, the Court issued its ruling on January 29, 2008.

[2]      "[G]enerally speaking, a motion for reconsideration is treated as a [Rule] 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *Dean v. Am. Fed'n of Gov't Employees*, 549 F. Supp. 2d 115, 119 (D.D.C. 2008) (citation omitted).

because that is when Defendant first took a position regarding the status of an investigation into

Dr. Barnard's activities. (*See* Def. Mot. for Summ. J. Fields Decl. ("Fields Declaration") ¶¶ 22,

24.) As set forth above, however, the newly discovered evidence "must have been in existence

at the time of the disputed judgment," which occurred on January 29, 2008—not February 2007.

*See United Mine Workers of America 1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir.

1993) ("[A] District Court may reconsider its final judgments based on newly discovered

evidence if that evidence was unavailable at the time of the judgment."); *Lightfoot v. District of

Columbia*, No. 04-12802008, WL 2067994, at *4 (D.D.C. May 16, 2008) ("facts that existed at

the time of trial or other dispositive proceeding"); *Lans v. Gateway 2000, Inc.*, 110 F. Supp. 2d 1,

4 (D.D.C. 2000) ("time of the disputed judgment"); *Canady v. Erbe Elektromedizin GmbH*, 99 F.

Supp. 2d 37, 44 (D.D.C. 2000) ("the time of trial [in this case, at the time of the court's

September 1998 summary judgment decision]"). Thus, Dr. Barnard need only demonstrate that

the newly discovered evidence came into existence prior to this Court's judgment.

In ruling that Defendant properly withheld the first 7 ICE pages in their entirety, this

Court found, first, that "Defendant . . . properly withheld exempt information in the responsive

records," *Barnard v. DHS*, 531 F. Supp. 2d 131, 140 (D.D.C. 2008), and, second, that there were

"no reasonably segregable non-exempt portions of the records," *id.* at 141. The Court relied

upon Defendant's assertion, including the supporting declarations of two government employees,

that Dr. Barnard was the subject of an ongoing criminal investigation, such that certain FOIA

exemptions applied. *See id.* at 137, 141 n.9. Less than a week after the Court's ruling,

Defendant informed the Court that Dr. Barnard is *not* the subject of an ongoing investigation.

(*See* Def. Mot. Stay, at 3 n.2.) This newly discovered evidence, which existed prior to judgment

(*see* Second Marshall Declaration ¶ 7), but was not available to Dr. Barnard or the Court until

after judgment (*see id.*), casts doubt on both of the Court's primary findings. Even if, as Defendant asserts, the "Marshall Fields Declaration was accurate when it was submitted in February 2007" (Opposition, at 10), the declaration was not accurate when the Court relied upon it and issued judgment. Thus, this is precisely the type of situation that warrants relief from judgment.

Defendant bizarrely maintains that "there is no 'new' evidence that undermines the statements in the Marshall Fields Declaration" (*see id.* at 9) despite its complete reversal of position between February 2007, when it asserted that Dr. Barnard was the subject of an ongoing criminal investigation (Fields Declaration ¶¶ 22, 24), and February 2008, when it conceded that Dr. Barnard is *not* the subject of an ongoing criminal investigation (Second Marshall Declaration ¶ 7). Defendant apparently believes that the change in status of Dr. Barnard's alleged investigation does not constitute new evidence simply because Defendant now invokes FOIA exemption (b)(7)(A) with respect to another, unnamed individual. (*See* Opposition, at 10–11.) However, Defendant's new rationale for invoking (b)(7)(A) is invalid because it is based upon inadmissible hearsay.

Declarations submitted in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). Rule 56(e)'s "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented." *Londrigan v. FBI*, 670 F.2d 1164, 1175 (D.C. Cir. 1981). "A declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA]

request and his familiarity with the documents in question." *Barnard*, 531 F. Supp. at 138 (citations and quotations omitted).

This Court found that Mr. Fields was "competent to testify," noting that "[b]ecause a declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records, the declarant is not required to independently verify the information contained in each responsive record." *Id.* at 138–39. The Court concluded that "[b]ecause Mr. Fields is familiar with the processes used to search for the records at issue, *and because he has reviewed the records himself*, he is competent to testify as to the information contained in those records." *Id.* at 139 (emphasis added). In other words, this Court accepted as valid the statements in the Fields Declaration because 1) Mr. Fields was familiar with Defendant's record search procedures *and* 2) Mr. Fields based his statements upon his own review of the content of the records. *See id.*

Unlike the Fields Declaration, the Second Marshall Declaration does not meet the personal knowledge requirement of Rule 56(e). In incorrectly asserting that "the Second Gloria Marshall Declaration is substantially similar to the Court's *approved* Marshall Fields Declaration" (*see* Opposition, at 12), Defendant overlooks the critical difference between the two declarations: the Fields Declaration was based on the content (albeit factually false content) of actual records reviewed by the declarant, whereas statements in the Second Marshall Declaration are based on inadmissible hearsay not contained within the records under review. Specifically, Ms. Marshall invoked FOIA Exemption (b)(7)(A) because she had "been informed that the disclosure of information related to Plaintiff could have a negative impact on other ongoing investigations." (Second Marshall Declaration ¶ 7.) This statement is inadmissible hearsay because it is not based on the content of the records under review. Thus, the Second Marshall

Declaration fails to meet the requirements of Rule 56(e) to the extent that it refers to other ongoing investigations.

Ms. Marshall is not competent to testify about the existence of other ongoing investigations because such information was not contained in the records before her. She did not purport to have "been informed" by the contents of the responsive records or by information obtained from searching other records in ICE's possession. Indeed, she merely repeated information of which she had "been informed" by an unidentified outside source. (*See* Second Marshal Decl. ¶ 7.) Unlike the Fields Declaration, which was based upon a review of the records at issue, Ms. Marshall's statements in the Second Marshall Declaration regarding other ongoing investigations did not rely upon her "familiarity with the documents in question." *Cf. Barnard*, 531 F. Supp. 2d at 138 (citations omitted). Thus, it is disingenuous—and incorrect—for Defendant to claim that the "Court rejected this identical argument in Plaintiff's *initial* cross motion for summary judgment." (*See* Opposition, at 12.)

The first declaration of Reba McGinnis, submitted in support of Defendant's Motion for Summary Judgment Re: Plaintiff's Third Amended Complaint ("First McGinnis Declaration"), suffers from defects similar to those of the Second Marshall Declaration. In discussing the initial 7 ICE pages withheld by Defendant, Ms. McGinnis twice cited the Second Marshall Declaration for the notion that "disclosure of information related to plaintiff could have a negative impact on other ongoing investigations." (*See* First McGinnis Declaration ¶¶ 18, 24.) Ms. McGinnis did not purport to obtain this information from a review of the 7 ICE pages at issue; instead, she stated simply that Ms. Marshall had "indicated that she had been informed" of the alleged other investigations. (*Id.* ¶ 24.) Therefore, as with the Second Marshall Declaration, Ms. McGinnis's statements regarding the existence of ongoing investigations that justify invocation of FOIA

exemption (b)(7)(A) do not satisfy Rule 56(e)'s personal knowledge requirement because her statements do not rely upon her "familiarity with the documents in question."[3]  *Cf. Barnard*, 531 F. Supp. 2d at 138 (citations omitted).

Contrary to Defendant's hopeful mischaracterization, Rule 56(e)'s personal knowledge requirement is not satisfied by information "conveyed . . . in the course of . . . official duties." (*See* Opposition, at 14.)  "[T]he most critical part of the [declaration] does not rise to the level Rule 56(e) demands [because] . . . a great deal of what it says could not possibly have been based on the affiant's *personal knowledge of the documents in question or the details of the investigation that produced them*."  *Londrigan*, 670 F.2d at 1174 (emphasis added); *see also Carter, Fullerton & Hayes LLC v. FTC*, 520 F. Supp. 2d 134, 146 (D.D.C. 2007) (stating that "[t]he declaration of an agency official who is knowledgeable about the way in which information is processed and is familiar with the documents at issue satisfies the personal knowledge requirement").  In short, Defendant's statements in the Second Marshall Declaration and First McGinnis Declaration regarding the existence of other ongoing investigations are insufficient under Rule 56(e) because they do not originate from a review of the records at issue.

Because there is no ongoing investigation of Dr. Barnard, and because Defendant's statements regarding other ongoing investigations are mere hearsay, Defendant may not withhold information from Dr. Barnard by citing FOIA exemption (b)(7)(A).  Therefore, to the extent that Defendant relied upon this exemption in withholding the first 7 ICE pages maintained by ICE, Defendant *did not* "properly with[o]ld exempt information in the responsive records," *see Barnard*, 531 F. Supp. 2d at 140, contrary to the Court's finding.  Additionally, because Defendant overstated the number of exemptions applicable to the responsive records, this

---

[3]     As set forth in Dr. Barnard's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment Re: Plaintiff's Third Amended Complaint, other hearsay statements in the First McGinnis declaration pertained to Defendant's improper withholding of 4 additional ICE pages.

Court's determination that the exempt and non-exempt portions were not segregable is subject to doubt.

Dr. Barnard incorporates by reference his argument in support of his motion for reconsideration.  (*See generally* Second Barnard MSJ, at 14–20.)  As set forth therein, the discovery that Dr. Barnard is not the subject of an ongoing criminal investigation meets the four-part test for newly discovered evidence.  First, the evidence existed at the time of the disputed judgment.  This Court issued its ruling on January 29, 2008, and the investigation, if there ever was one, closed sometime before January 23, 2008.  (*See* Second Marshall Declaration ¶ 7.)  Further, the evidence was not known to Dr. Barnard prior to the Court's judgment, nor was it in Dr. Barnard's possession until Defendant filed its Motion to Stay on February 4, 2008.  (*See* Second Barnard MSJ Barnard Decl. ¶ 30.)

Second, Dr. Barnard could not, by the exercise of due diligence, discover the evidence in time to present it in the original proceeding.  The details of pending criminal investigations by federal agencies rarely are publicly available and were not in this case.  Even Defendant's declarant claimed not to have known of the existence of this new evidence until February 1, 2008, three days after the Court's ruling.  (*See* Second Marshall Declaration ¶ 7.)  Therefore, Dr. Barnard could not, by the exercise of due diligence, discover the evidence in time to present it in the original proceeding.

Third, the evidence is not "cumulative of evidence offered at the original proceeding, and . . . the evidence [is not] impeaching in nature."  *Lans*, 110 F. Supp. 2d at 8.  "[N]ewly-discovered evidence will not support a motion for relief from judgment if it merely tends to impeach the credibility of a witness rather than provide substantive evidence concerning a material issue of fact."  *See Int'l Ctr. for Tech. Assessment*, 468 F. Supp. 2d at 207 (citation

omitted). Here, the newly discovered evidence is contradictory, not cumulative, of prior evidence. The evidence does more than impeach the credibility of the declarants; it provides substantive evidence concerning a material issue of fact, namely the status of an alleged ongoing criminal investigation into Dr. Barnard's activities.

Fourth, the newly discovered evidence is "admissible and credible, and of such a material and controlling nature as will probably change the outcome." *See id.* at 206. The evidence is Defendant's declaration, made under penalty of perjury, stating that the supposed criminal investigation was closed at the time of the Court's ruling. As explained in detail in Dr. Barnard's motion for reconsideration, the new evidence casts doubt on *all* of the FOIA exemptions claimed by Defendant, in turn calling into question the Court's determination regarding segregability.

**B. Defendant Has Cited No Privacy Act Exemptions And Therefore Must Release All Responsive Records In Their Entirety.**

DHS regulations implementing the Privacy Act mandate that:

[a] component making an adverse determination denying a request for access in any respect shall notify the requester of that determination in writing. Adverse determinations, or denials of requests, consist of: a determination to withhold any requested record in whole or in part; a determination that a requested record does not exist or cannot be located; a determination that what has been requested is not a record subject to the Privacy Act; a determination on any disputed fee matter; and a denial of a request for expedited treatment. The notification letter shall be signed by the head of the component, or the component head's designee[.]

6 C.F.R. § 5.23. An agency may not rely solely upon FOIA exemptions in denying a request for records under the Privacy Act. 5 U.S.C. § 552a(t)(1). "In order to withhold these documents from [a requester's] twin Privacy Act/FOIA request, then, [the agency] must demonstrate that the documents fall within some exemption under each Act." *Martin v. Office of Special Counsel*, 819 F.2d. 1181, 1184 (D.C. Cir. 1987).

Defendant has invoked only FOIA exemptions in withholding records responsive to Dr.

Barnard's FOIA/PA requests.  Indeed, Defendant did not even address the Privacy Act until it

filed its Opposition brief.  It is too late, however, for Defendant to amend the administrative

record.  Because the record is devoid of any response by Defendant on Privacy Act grounds,

Defendant must release all records responsive to Dr. Barnard's FOIA/PA requests.  *See id.*  ("If a

FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents

must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption

applies, the documents must be released under FOIA.").

Even if the Court disregards Defendant's tardy attempt to amend the record by

considering Defendant's invocation of law enforcement exemptions (j)(2) and (k)(2) under the

Privacy Act, Dr. Barnard still is entitled to all of the responsive records of their entirety.  The

Privacy Act exemptions provide that "[t]he head of any agency may promulgate rules, in

accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3),

(c), and (e) of this title, to exempt any system of records within the agency from" certain

provisions of the Privacy Act if  the system of records is "maintained by an agency or component

thereof which performs as its principal function any activity pertaining to the enforcement of

criminal laws," 5 U.S.C. § 552a(j)(2), or other "investigatory material compiled for law

enforcement purposes," 5 U.S.C. § 552a(k)(2).  "To implement a subsection (j) or (k) exemption,

an agency must promulgate, in accordance with the notice and comment provisions of the

Administrative Procedure Act ("APA"), 5 U.S.C. § 553 (1988), an exemption rule that contains a

statement of the reasons for the exemption."  *Doe v. FBI*, 936 F.2d 1346, 1351 (D.C. Cir. 1991).

Defendant has not cited a single DHS rule promulgated in accordance with these

subsections of the Privacy Act.  Instead Defendant has relied upon, and provided partial copies

of, several notices published in the Federal Register.  (*See* Opposition, at 16.)  However, these

notices do not constitute agency rules promulgated after notice and comment.[4]  Further,

Defendant's regulation regarding "DHS Systems of Records Exempt From the Privacy Act," 6

C.F.R. Pt. 5, App. C, does not list any of the systems of records from which Defendant retrieved

records responsive to Dr. Barnard's FOIA/PA requests (*see* Opposition, at 15–17).  As such,

Defendant is not entitled to invoke withhold responsive records from Dr. Barnard by invoking

these exemptions with respect to records obtained from the Investigations Record System, the

Automated Targeting System, and the Targeting Framework.

>    **C.**    **The Court Should Grant Dr. Barnard's Second Motion For Summary
>    Judgment Because Defendant has Failed To Satisfy Its Burdens To Show
>    That FOIA Exemptions (b)(6), (b)(7)(A), (b)(7)(C), And (b)(7)(E) Apply To
>    The Redacted And Withheld Materials.**

Defendant has not met its FOIA burden to justify the non-disclosure of responsive

documents.  The FOIA placed this burden on the withholding party in light of the strong

presumption in favor of disclosure "to pierce the veil of administrative secrecy and to open

agency action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361

(1976).  The requester's characteristic lack of knowledge and legal imprecision when

challenging non-disclosure, *see Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973), make it

essential for a trial court to properly carry out its responsibility to conduct a *de novo* review.  *See*

Rose, 425 U.S. at 379–80.  The trial court must ensure that "the agency's explanation was full

and specific enough to afford the FOIA requester a meaningful opportunity to contest, and [there

was] an adequate foundation [for the court] to review, the soundness of the withholding."  *King

v. DOJ*, 830 F.2d 210, 218 (D.C. Cir. 1987).  Due to the distorted FOIA adversary process and

---

[4]        In a footnote in one declaration, Defendant cited a Department of Treasury regulation for the proposition
that law enforcement exemptions apply to the Treasure Enforcement Communications Systems.  The Department of
Treasury is, of course, not the relevant agency for purposes of this matter.

the trial court's responsibility, anything less than sufficiently detailed *Vaughn* indices and/or their equivalents is impermissible. Because Defendant has not satisfied these significant FOIA burdens in invoking FOIA exemptions (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E), Dr. Barnard's motion for summary judgment should be granted.

1.    **Defendant has failed to overcome the FOIA exemption (b)(6)
       presumption of disclosure.**

Defendant cannot meet its burden to prove that "a clearly unwarranted invasion of privacy would result" from disclosure by relying on generalizations and conclusory, sweeping statements. 5 U.S.C. § 552(b)(6). "[T]o discharge its burden, the agency must provide a 'relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Linn v. DOJ*, No. 9201406, 1995 WL 417810, at *27 (D.D.C. June 6, 1995) (citing *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). Under exemption (b)(6), the "presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Wash. Post Co. v. DHHS*, 690 F.2d 252, 261 (D.C. Cir. 1982). As such, the Supreme Court has held that "unless the invasion of privacy is 'clearly unwarranted,' the public interest in disclosure must prevail." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991). Absent detailed justification, the presumption in favor of disclosure under (b)(6) will prevail against Defendant's unjustified withholding.

a.    Defendant cannot prove that the relatively minor asserted privacy
       interest outweighs the public interest in disclosure.

Contrary to Defendant's assertion (*see* Opposition, at 22) that Dr. Barnard improperly relied on *Getman v. N.L.R.B.*, 450 F.2d 670 (D.C. Cir. 1971), *Getman* was not overruled by the U.S. Supreme Court case, *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989). Instead, *Getman* was distinguished, on grounds not applicable here, by the appellate

level case, *Reporters Committee for Freedom of Press v. DOJ*, 831 F.2d 1124 (1987), and *that case* was reversed by the U.S. Supreme Court case cited by Defendant. In *Getman*, the court weighed the privacy interest of federal employees in their names and addresses against the public interest in disclosure. The *Getman* court held that "although a limited number of employees will suffer an invasion of privacy in losing their anonymity and in being asked . . . if they would be willing to be interviewed . . . the loss of privacy . . . should be characterized as relatively minor." *Getman*, 450 F.2d at 674–75.

When *Getman* is considered in conjunction with the presumption of disclosure under (b)(6) and federal regulations for personnel records,[5] it is unavailing for Defendant to argue that disclosure of the names and positions of federal employees would constitute an invasion of privacy. Here, the federal employees whose names and positions Dr. Barnard seeks regularly carry out their duties and present themselves in the public sphere. There is simply no privacy interest in this information. The public interest in disclosure should therefore prevail over this non-existent privacy interest.

      b.   <u>The FOIA exemption (b)(6) balancing analysis does not consider the purposes behind the request or the law enforcement purposes of the documents.</u>

Defendant misplaces its assertion that the names and positions sought here are "directly associated with law enforcement records." This conclusory allegation should not be considered under exemption (b)(6), as it should apply only, if at all, to the FOIA exemption (b)(7) law enforcement analysis. Congress created specific exemptions to apply to specific situations; thus,

---

[5]    *See* 5 C.F.R. § 293.311(a) ("The following information from both the OPF [(official personnel folder)] and employee performance file system folders, their automated equivalent records, and from other personnel record files that constitute an agency record within the meaning of the FOIA which are under the control of the office, about most present and former Federal employees, *is available to the public*: (1) *Name*; (2) *Present and past position titles* . . . .") (emphasis added).

"while both Exemption 6 and 7(C) protect personal privacy interests, Exemption 7(C) is limited to information compiled for law enforcement purposes, and Exemption 6 protects information compiled for medical, personnel, and 'similar' files . . . ." *Linn*, 1995 WL 417810, at *30 (citations omitted). Defendant's misplaced law enforcement reference should be omitted from the (b)(6) analysis.

Additionally, the (b)(6) balancing analysis prohibits consideration of the purposes for which the requested documents are sought. "[A]s a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information." *NARA v. Favish*, 541 U.S. 157, 172 (2004). Thus, Defendant's discussion of the purpose of the information sought in *Getman* is irrelevant in the (b)(6) balancing analysis.

c.   <u>Public interest in disclosing agency action outweighs privacy concerns.</u>

Disclosure of the responsive material would serve the public interest by shedding light on agency action. "Providing information 'material for monitoring the Government's activities' is the 'core purpose' of the FOIA." *Arieff v. U.S. Dep't of the Navy*, 712 F.2d 1462, 1468 (D.C. Cir. 1983) (citation omitted). The *Arieff* court held that the disclosure of responsive records did not constitute a clearly unwarranted invasion of privacy, even if it would "cause the agency head to be bothered at home with irate phone calls, [because] that, like consequent public speculation, is not the sort of privacy that can support an Exemption 6 claim." *Id.* This exemption does not apply to "an invasion . . . produced as a secondary effect[,]" rather the invasion must occur from "the very production of the documents." *Id.* Here, as in *Arieff*, any public speculation as to a secondary effect from the release of names and positions of federal employees and third parties identified at our nation's airports would not support a (b)(6) claim for invasion of privacy.

Whenever the disclosure of official information would "shed any light on the conduct of any Government agency or official," *Reporters Comm.*, 489 U.S. at 773, "[s]uch records may . . . be cloaked with the public interest." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 895 (D.C. Cir. 1995). In *Nation Magazine*, the responsive documents would reveal information related to the U.S. Customs Service's agency activities, such as the "privatization of government functions." *Id.* at 895. Similarly, in this case, the release of the responsive documents would shed light on Defendant's activities related to airport security, as well as how and to what extent Defendant has allowed the privatization of government functions.

d.    Defendant's case citations are not on point.

Defendant misplaces its reliance on *Center for Public Integrity v. OPM*, No. 04-1274, 2006 WL 3498089, at *5 (D.D.C. Dec. 4, 2006), for the proposition that a list of federal employees could be properly withheld under (b)(6). (*See* Opposition, at 24.) In *Center for Public Integrity*, the plaintiff sought an actual list of electronic data "regarding, or detailing" all members of a certain class of federal employees for as long as the agency had maintained such information. 2006 WL 3498089, at *1. The plaintiff argued that the public interest served by disclosure would arise only after the agency's list was compared with a secondary list of information from another source. *Id.* at *4. The court allowed the agency to withhold the list because the (b)(6) analysis does not recognize the benefit of disclosure based on "a derivative theory of public interest." *Id.* at *5. Unlike in *Center for Public Integrity*, Dr. Barnard does not seek a list of names dating back to the initiation of Defendant's federally-mandated activities, but only those names and positions of federal employees and third parties during a limited and recent time period as related to specific events. The benefit of this information will be direct, not derivative, because it relates to current monitoring of traveler activities at our nation's airports.

Defendant also incorrectly relies on cases easily distinguishable on the facts.  For example, in *Taylor v. DOJ*, 268 F. Supp. 2d 34 (D.D.C. 2003), the convicted plaintiff sought the criminal history of a particular private party, whose name, phone, address and other information were already known to the plaintiff.  *Id.* at 37.  Here, however, Dr. Barnard does not seek the criminal history of any private party.  Moreover, the excerpt quoted by Defendant, like the rest of the *Taylor* opinion, is inapplicable because instead of employing a (b)(6) analysis, it focused on a challenge to an agency's "*Glomar* response."  Another example is *Sherman v. U.S. Dep't of Army*, 244 F.3d 357 (5th Cir. 2001), which involved a challenge to the redaction of social security numbers, which is not at issue here.

In citing *Wiggins v. Nat'l Credit Union Admin.*, No. 05-2332, 2007 WL 259941, at *8 (D.D.C. Jan. 30, 2007), Defendant mistakenly refers to an analysis of FOIA exemption (b)(7)(C) rather than (b)(6).  *Wiggins* involved records of the plaintiff's own criminal investigation and prosecution and the possible relation of such records to private parties' criminal histories.  *Id.* at *7.  Defendant's cite to *Wiggins* is inapplicable because Dr. Barnard is not requesting criminal histories of private parties.  Further, private parties' privacy interests in their own criminal histories are not comparable to the interests of federal employees in their names and positions, all the more so when the latter regularly present themselves and their identities in the public arena for all air travelers to see.

Defendant also improperly seeks to employ *Linn*, 1995 WL 417810, to maintain the "practical obscurity" of the requested information.  *Linn* concerned the prior release of information related to criminal prosecutions, such that the "practical obscurity," and not the public availability, of the information was at issue.  *Id.* at *31.  The *Linn* court neither defined "practical obscurity" nor referred to a definitive time period that would render information once

17

released as obscure and therefore subject to justified withholding.  To invoke *Linn*, however,

Defendant must show that the names and positions of federal employees and third parties who

choose to present themselves at our nation's airports are not publicly available.  This is contrary

to the common sense nature of the requested information.  Any air traveler at an airport can

anticipate seeing these officials.  *Linn* is therefore inapplicable because there is no sensible

argument that the requested information has any practical obscurity.

> e. <u>Defendant failed to provide sufficient *Vaughn* indices or declarations.</u>

Defendant continues its unabashed assertion that its *Vaughn* indices and declarations are

sufficiently detailed to satisfy its FOIA burden.  Instead of the requisite explanations for non-

disclosure, however, Defendant has done no more than recite statutory language.  "Because,

ordinarily, the agency alone possesses knowledge of the precise content of the material it seeks

to withhold, the government's burden to provide an adequate *Vaughn* Index is a significant one."

*Id.* at *2.  Furthermore, unless "detailed indexes and justifications are available to the requester .

. . [with] as much information as possible be[ing] made public," *Lykins v. DOJ,* 725 F.2d 1455,

1463 (D.C.Cir.1984), the adversary system cannot operate properly.  Instead of providing

adequate *Vaughn* indices and revealing as much information as possible, Defendant continues to

deflect attention from the failure to fulfill its responsibilities.  Defendant has not satisfied its

"burden of justifying nondisclosure of any withheld documents or portions of documents."  *See*

*id.* (citations omitted).

Defendant cited portions of its *Vaughn* indices referencing social security and badge

numbers, declaring that it has "provided as much specificity as possible without revealing . . . the

very information that it seeks to protect."  (Opposition, at 25.)  Regardless of Defendant's

concern for social security and badge numbers, however, Dr. Barnard did not request this

information.  Moreover, Defendant continues to rely on broad, sweeping explanations (e.g.

"Disposition & Exemption(s)" column in the *Vaughn* indices), conclusory statements, and

recitations of the exemption language to justify the nondisclosure.[6]  Given Defendant's

shortcomings in its *Vaughn* indices and declarations, it cannot satisfy its evidentiary burden.

> 2.    **Defendant has failed to provide *Vaughn* indices or substantive equivalents that are detailed enough to meet its burden to invoke FOIA exemption (b)(7)(A).**

Defendant's use of conclusory language and reiterations of statutory text fail to satisfy its

burden to justify nondisclosure under FOIA exemption (b)(7)(A).  "[T]he affidavits must show,

with reasonable specificity, why the documents fall within the exemption.  The affidavits will not

suffice if the agency's claims are conclusory, merely reciting statutory standards . . . ."  *Quinon

v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996).  Specifically, Defendant seeks to fulfill its

evidentiary responsibilities by providing a one-sentence summation of exemption (b)(7)(A), and

attempting an explanatory application in another sentence.  (First McGinnis Declaration ¶ 24 ("It

has been conveyed to me that the release of such information could have a negative impact on

the other ongoing investigations and, therefore, the release of such information could reasonably

be expected to interfere with those investigations.").)  Because Defendant has failed to provide

reasonable specificity in *Vaughn* indices or their equivalents, Dr. Barnard's motion for summary

judgment must be granted.

The FOIA requires more than conclusory claims that merely recite statutory language.  In

*Quinon*, the court found that FBI's allusion to "certain events" in responsive records did not

justify a rational basis for law enforcement investigations under the (b)(7) exemptions because

FBI "fail[ed] to describe or characterize [the events], that allegedly supplied the basis" for the

---

[6]    *See, e.g.*, Bates Stamp Numbers 008–49, 304–13 ("Names and positions of federal employees and names of third parties are redacted pursuant to Exemption (b)(6) because release would be considered a clearly unwarranted invasion of privacy . . . .").

exemptions.  *Quinon*, 86 F.3d at 1229.  Similarly, Defendant's allusion to other investigations

without any description or characterization is a failure to supply facts sufficient to justify

invoking exemption (b)(7), and specifically, exemption (b)(7)(A).

Defendant also alleges that non-disclosure is justifiable under other exemptions.

However, "[w]ithout an itemized explanation of each segment sought to be protected, the District

Court is left with the unavoidable impression that nearly every segment is objectionable on every

ground . . . .  [I]t is *preposterous* to contend that all of the [responsive materials] are equally

privileged under all of the alleged privileges."  *Dellums v. Powell*, 642 F.2d 1351, 1361 (D.C.

Cir. 1980) (emphasis added).  Due to Defendant's failure to denote which portions are subject to

which exemption, the trial court cannot be expected to create a record of its decision "capable of

meaningful review."  *King*, 830 F.2d at 219.  Because of Defendant's sweeping allegations to

justify non-disclosure, Dr. Barnard's motion for summary judgment under FOIA exemption

(b)(7)(A) should be granted.

> 3.     **Defendant has failed to meet its burden to invoke FOIA exemption (b)(7)(C) because the asserted privacy interest is outweighed by the public interest in disclosure.**

Under exemption (b)(7)(C), Defendant has the burden to prove that a significant privacy

interest outweighs the public interest in disclosure.  *Davis v. DOJ*, 460 F.3d 92, 97 (D.C. Cir.

2006) ("In deciding whether the release of particular information constitutes an 'unwarranted'

invasion of privacy, an agency must balance the privacy interest . . . against the public interest in

disclosure."); *see Ray*, 502 U.S. at 173 ("[T]he strong presumption in favor of disclosure places

the burden on the agency to justify . . . withholding . . . documents.").  Because the responsive

documents are "direct record[s] of 'what the Government is up to,' it would seem likely that any

privacy interest is at its nadir."  *Summers v. DOJ*, 140 F.3d 1077, 1083 (D.C. Cir. 1998) (citing

*Reporters Committee*, 489 U.S. at 780).

Although Defendant alleges that there is no identifiable public interest served by disclosure, Dr. Barnard has argued that disclosure of the responsive documents would shed light on agency action. (*See* Second Barnard MSJ, at 32.) Given the constant annoyance that millions of people suffer every day at our nation's airports in connection with Defendant's various, elaborate, and ever-growing "security measures," it is a measure of how disconnected Defendant is from reality that it could even argue a lack of public interest in these issues.

Defendant cannot invoke a blanket exemption to prevent disclosure of redacted and withheld information simply by making conclusory statements that "unwarranted harassment and intru]sion] upon [employees'] privacy" will occur. (Opposition, at 20.) Unable to conjure up any rational explanation how disclosure could result in some potential harassment and privacy intrusion, Defendant has resorted to reciting statutory language and making conclusory generalizations. When federal employees and third parties regularly present and subject themselves to public interaction with thousands of citizens in our nation's airports, it is nonsensical to insist that these persons are hiding their names and positions.

Defendant attempts to limit the scope of existing case law by arguing that "[t]he public interest would outweigh the privacy interest *only if* there is 'compelling evidence . . . [of] illegal activity' and the information sought is to confirm or refute the evidence." (Opposition, at 20 (citing *Deglace v. DEA*, No. 05-2276, 2007 WL 521896, at *3 (D.D.C. Feb. 15, 2007) (emphasis added)).) However, there is no blanket exemption that allows withholding the names and positions of federal employees and third parties absent a necessity to refute or confirm illegal agency activity. Such a blanket exemption would be contrary to the FOIA's general philosophy of disclosure and "is not a permissible reading of Exemption 7(C)." *See Nation Magazine*, 71 F.3d at 896.

A claim of harassment is misplaced when, as here, the names and positions of federal employees and third parties are, at best, merely related to a defunct law enforcement investigation. Although there is no case on point in this circuit, *Lahr v. Nat'l Safety Transp. Bd.*, No. CV 03-8023, 2006 WL 2854314 (C.D. Cal. Oct. 4, 2006), offers relevant guidance. In *Lahr*, the plaintiff sought investigation records of the explosion of TWA Flight 800 from CIA and the National Transportation Safety Board. 2006 WL 2854314, at *1. The *Lahr* court found that

> [t]he identity of the target or defendant in a criminal investigation is the key factor in whether agents are likely to be harassed or annoyed if their names are disclosed . . . . Here, *the investigation ultimately concluded that there was no criminal wrongdoing*. There being no aggrieved 'target' or defendant, the Court finds it unlikely that the FBI agents will be subjected to harassment or annoyance.

*Id.* at *14 (emphasis added). The concerns for harassment or annoyance cannot apply in cases where no criminal wrongdoing has been confirmed.

*Lahr's* common sense approach should be applied here because Dr. Barnard has never been shown to be under criminal investigation, and there is, beyond dispute, no pending investigation of him whatsoever. Under these facts, the release of the names and positions of federal employees and third parties can hardly be expected to conjure up the concerns for harassment or privacy intrusion associated with criminal wrongdoing. For these reasons, Dr. Barnard's motion for summary judgment on FOIA exemption (b)(7)(C) should be granted.

4. **Defendant has failed to provide *Vaughn* indices or substantive equivalents that are detailed enough to meet its burden to invoke exemption FOIA (b)(7)(E).**

Under exemption (b)(7)(E), Defendant has failed to prove that disclosure of the requested records would risk circumvention of the law. Despite efforts to deflect attention from its failure to fulfill its FOIA responsibilities, Defendant cannot so easily avoid the law by claiming that the prohibition of categorical descriptions in *King*, 830 F.2d at 224, applies only to FOIA exemption (b)(1). (*See* Opposition, at 21.) *King* references the *Vaughn* index requirements generally,

which apply to all FOIA exemptions.  Although the "[g]overnment claims [that] all it need do to fulfill its burden is to aver that the factual nature of the information is such that it falls under one of the exemptions . . . [t]his is clearly not what Congress had in mind." *Vaughn*, 484 F.2d at 825–26.  "[T]he government's burden to provide an adequate *Vaughn* Index is a significant one," *King*, 830 F.2d at 218, and, thus, "conclusory assertions of privilege, will not suffice to carry the [g]overnment's burden of proof in defending FOIA cases." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

Through the McGinnis and Suzuki declarations, Defendant attempts to aver that the factual nature of the documents justifies non-disclosure.  However, such justifications could apply to any attempt in any FOIA case to invoke exemption (b)(7)(E).[7]  Defendant has created and broadly applied boilerplate explanations to documents, categorized by exemption.  As in *Mead Data Central*, Defendant has failed to demonstrate "why a *particular* exemption is relevant and correlat[e] those claims with the *particular* part of the withheld document." 566 F.2d at 251.  These general assertions do not fulfill Defendant's burden of proof to defend its FOIA case.  Dr. Barnard's motion for summary judgment under (b)(7)(E) should be granted.

5.    **Dr. Barnard cannot sufficiently challenge non-disclosure when Defendant has failed to conduct a reasonable search.**

Defendant displays another misunderstanding of the case by asserting that Dr. Barnard's challenge of the unreasonableness of Defendant's search is a "newly minted argument."

---

[7]    (*See* First McGinnis Declaration ¶ 26 ("The disclosure of these techniques could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed in investigations where they may be targets and identify such techniques as they are being employed." ); Suzuki Decl. ¶ 31 ("[D]isclosure would reveal [Defendant] targeting, examination and inspection procedures and types of any intra and inter-agency coordination, which would permit potential violators to whom the documents may be disclosed, to understand the precise steps taken by [Defendant] thus facilitating the development of countermeasures to evade detection, inspection and targeting methods.").

(Opposition, at 26.)  The recognition of Defendant's unreasonable search efforts is simply

another aspect of arguments already presented in this adversary process.  (*See, e.g.*, Pl. Mot.

Summ. J. (filed Mar. 15, 2007), at 13.)  A new argument is not created simply by shifting focus

to one aspect of an earlier argument.  Courts will hear the merits of an argument and all its

different components, each of which is "'only a different characterization of the evidence . . .'

not an entirely new argument."  *United States v. VanSmith*, 530 F.3d. 967, 973 n.6 (D.C. Cir.

2008) (citation omitted).

   Defendant's failure to engage in a reasonable search for documents impinges on Dr.

Barnard's ability to properly challenge non-disclosure of unaccounted for, yet responsive

documents.  Over the course of this litigation, Defendant has continued to uncover and process

additional responsive records that Defendant failed to identify when it initially processed Dr.

Barnard's FOIA/PA requests several years ago.  This desultory and lackadaisical approach not

only fails to satisfy Defendant's burden to conduct a reasonable search, *see Weisberg v. DOJ*,

745 F.2d 1476, 1485 (D.C. Cir. 1984) (stating that the agency must demonstrate that it has

conducted a search reasonably calculated to uncover all relevant documents), it further distorts

the adversarial process and Dr. Barnard's ability to precisely challenge Defendant's handling of

responsive documents.  Defendant again attempts to deflect attention from its own actions to

hastily compensate for its insufficient search efforts.  (*See* Opposition, at 26 ("Had Defendant not

supplemented its production Plaintiff would not have any basis to complain about Defendant's

document searches.").)  Defendant's smoke and mirrors routine further calls for granting of Dr.

Barnard's motion for summary judgment.

    6.  **Defendant has failed to provide sufficiently detailed explanations to satisfy its burden to justify withholding documents in their entirety.**

To justify the non-segregability of responsive material, Defendant's *Vaughn* indices and declarations must contain explanations beyond sweeping, conclusory statements. Defendant cannot expect that simply stating that a line by line analysis was conducted will suffice to meet its FOIA burden. As noted in *Mead Data Central*,

> [r]equiring a detailed justification for an agency decision that non-exempt material is not segregable will not only cause the agency to reflect on the need for secrecy and improve the adversarial position of FOIA plaintiffs, but it will also enable the courts to conduct their review on an open record . . .

566 F.2d at 261–62. Without providing the requisite analysis and detailed justification to separate the exempt from the non-exempt information, Defendant cannot expect to receive a favorable disposition.

## IV.   CONCLUSION

For all of the above stated reasons, and for the reasons stated in Dr. Barnard's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Reconsideration, Second Motion for Summary Judgment, and Request for Oral Argument, this Court should grant Dr. Barnard's motion for reconsideration, grant Dr. Barnard's second motion for summary judgment, and deny Defendant's second motion for summary judgment.

Respectfully submitted,

/s/ Daniel Kinburn

_____

Daniel Kinburn
PHYSICIANS COMMITTEE FOR
  RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W., Suite 400
Washington, D.C. 20016
Attorney for Plaintiff
(202) 686-2210 ext. 380
(202) 686-2155 (fax)

Dated: August 22, 2008