**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NEAL D. BARNARD, M.D.,

    Plaintiff,

    v.

DEPARTMENT OF HOMELAND
SECURITY,

    Defendant.

Civil Action No. 06-1393 (CKK)

**MEMORANDUM OPINION**
(February 9, 2009)

This is a Freedom of Information Act ("FOIA") and Privacy Act case brought by Neal D.

Barnard against the Department of Homeland Security, seeking to obtain records related to him

that could explain why he has been detained, questioned, and/or searched in airports during and

after his international trips beginning in January 2003.  This is the second time the Court has

been called on to resolve this case.  On January 29, 2008, the Court granted summary judgment

in favor of Defendant, finding that it had properly withheld seven pages of records identified as

responsive to Plaintiff's FOIA/Privacy Act requests.  Just five days after issuing that decision the

parties notified the Court that Defendant had located additional responsive records.  At the

request of the parties, the Court entered a stay to allow Defendant to process the additional

records and ordered the parties to file a Status Report indicating whether, in light of the Court's

Memorandum Opinion, there remained any disputes concerning the additional records.  The

parties subsequently notified the Court that they were able to narrow but not eliminate their

disputes.  Accordingly, the Court entered another briefing schedule for dispositive motions,

which incorporated at Plaintiff's request a reconsideration motion based on "newly discovered

evidence."

After thoroughly considering the parties' submissions, including Defendant's two *in camera* declarations, and all applicable case law, statutory authority, and the entire record of the case as a whole, the Court shall GRANT Defendant's [39] Motion for Summary Judgment and DENY Plaintiff's [40] consolidated Cross-Motion for Summary Judgment and Motion for Reconsideration, for the reasons that follow.

## I. BACKGROUND

As previously described in the Court's first Memorandum Opinion, Plaintiff claims to have been detained, questioned, and/or searched at various airports before or after international trips on approximately 17 occasions between January 2003 and January 2007. *See* Mem. Op. at 2 (Jan. 29, 2008), Docket No. [27]. Seeking to discover the records underlying his traveling difficulties, Plaintiff began filing FOIA/Privacy Act requests. *Id.*

Plaintiff initially sent a FOIA/Privacy Act request to United States Customs and Border Protection ("CBP") requesting "all records about me that are in IBIS or any other system used by [CBP] at any and all ports of entry to the United States."[1] Def.'s Stmt. ¶ 1. CBP erroneously processed Plaintiff's request as a "traveler redress complaint," and incorrectly advised him to

---

[1] As a preliminary matter, Court strictly adheres to the text of Local Civil Rule 7(h)(1) and "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). Accordingly, the Court shall either refer to Plaintiff's Statement of Material Facts ("Pl.'s Stmt.") or Defendant's Statement of Material Facts ("Def.'s Stmt."), unless a party disputes a proffered fact *and* cites to contrary evidence in the record. The Court shall also cite to evidence in the record, where appropriate, to provide information not covered by the parties' statements of material facts. The Court finds that there is no genuine dispute over the factual issues that are material to resolution of this case.

seek the requested records from Immigration and Customs Enforcement ("ICE").[2]  *Id.* ¶ 2.  For

purposes of clarity, the Court shall separately discuss the facts pertaining to ICE and CBP.

>    *A.*      *ICE*

Plaintiff submitted a FOIA/Privacy Act request to ICE by letter dated March 21, 2006,

requesting "any records created from January 1, 2002[,] to the present that were prepared,

received, transmitted, collected and/or maintained by [ICE] relating to [fifteen specifically

enumerated areas.]"  Def.'s Stmt. ¶ 3.  After failing to receive a timely response, Plaintiff filed an

administrative appeal on May 16, 2006.  Barnard Decl. ¶ 27.  On August 5, 2006, ICE advised

Plaintiff that it did not locate any responsive records.  Def.'s Stmt. ¶ 4.

Plaintiff filed a Complaint in this case on August 7, 2006.[3]  By letter dated November 16,

2006, ICE informed Plaintiff that it located six pages of records responsive to his request but that

they were exempt from disclosure, in their entirety, based on FOIA Exemptions 2, 7(A), 7(C),

and 7(E).[4]  *Id.* ¶ 6.  The parties both moved for summary judgment on the dispositive issue of

---

[2] Neither party disputes that ICE and CBP are components of the Department of Homeland Security, the named Defendant in this case.

[3] Plaintiff filed an Amended Complaint on October 10, 2006, a Second Amended Complaint on January 9, 2007, and a Third Amended Complaint (the operative complaint) on June 9, 2008.

[4] Defendant has subsequently explained that ICE did not initially disclose the existence of these records to Plaintiff based on the (c)(1) exclusion of FOIA, which authorizes an agency to exclude records from disclosure when "[an] investigation or proceeding involves a possible violation of criminal law and there is reason to believe that the subject of the investigation or proceeding is unaware of its pendency, and disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(c)(1) (internal punctuation omitted); *See also* Def.'s Mot., Ex. 5 ¶ 10 (Second Decl. of R. McGinnis) (explaining ICE's decision to invoke Section 552(c)(1)).  Although Plaintiff expresses frustration with ICE's initial response, *see* Pl.'s Mot. at 8 (referring to it as a lie), Plaintiff does not allege that ICE improperly invoked this exclusion and, in any event, it is immaterial to resolution of the

whether ICE properly withheld the records in their entirety.

Defendant argued that the records were properly withheld, and relied on the declaration of Marshall Fields, Chief of the FOIA/Privacy Act Section, Information Disclosure Unit, at ICE. *See* Def.'s [14] Mot., Ex. A (hereinafter "Fields Decl."). Mr. Fields explained that Plaintiff "is the subject of an open and pending criminal investigation" and that "[r]elease of any information pertaining to this investigation could reasonably be expected to interfere with this open and pending criminal investigation." *Id.* ¶ 22.

Plaintiff conceded that Defendant could "properly withhold portions of the records if they pertain to an ongoing investigation." Mem. Op. at 8 (Jan. 29, 2008). Plaintiff nevertheless argued that Defendant failed to meet its burden of showing that there was an ongoing investigation of Plaintiff because Mr. Fields's declaration was not based on his personal knowledge. *See* Pl.'s [16] Mot. at 8-13. Plaintiff also argued that Defendant had not met its burden of demonstrating that it could not segregate any non-exempt information in the records. *Id.* at 13-14.

The Court rejected Plaintiff's first argument concerning Mr. Fields's personal knowledge because his statements were made "based upon [his] personal knowledge, review of documents kept in the course of business, and information conveyed to [him] in the course of [his] official duties." Fields Decl. ¶ 4. Because he was "familiar with the processes used to search for the records at issue, and because he [] reviewed the records himself," the Court found that he was "competent to testify as to the information contained in those records." Mem. Op. at 11 (Jan. 29, 2008). With respect to Plaintiff's second argument concerning the segregation of non-exempt

---

remaining disputes between the parties.

information, the Court agreed with Plaintiff that Defendant had provided an inadequate

explanation as to why non-exempt information could not be segregated.  Because there were a

limited number of pages at issue, and because Defendant argued that a more fulsome

segregability explanation would divulge information properly withheld based on the exemptions

Defendant had invoked, the Court ordered Defendant to produce the records for an *in camera*

review.  *Id.* at 13.

       Defendant submitted the records to the Court on January 23, 2008, which included seven

(not the previously identified six) pages.  Defendant also submitted a declaration from Gloria

Marshall, the Unit Chief of the Information Disclosure Unit, at ICE.  *See* Def.'s [25] Notice, Ex.

1 (hereinafter "First Marshall Decl.").  Ms. Marshall explained that Mr. Fields was no longer

employed at ICE, and that she reviewed the relevant files to locate the six pages of records to

submit to the Court.  *Id.* ¶ 6.  In the course of her review, she discovered a seventh page that was

not previously identified in Mr. Fields's declaration.  *Id.*  Accordingly, Ms. Marshall undertook

an independent review of the seven pages and "determined that all records are exempt from

disclosure . . . for the reasons explained in the Fields Declaration.  *Id.*  Following the Court's *in*

*camera* review of the records, the Court agreed with Defendant that there existed no reasonably

segregable non-exempt information and, on January 29, 2008, the Court granted Defendant's

Motion for Summary Judgment and denied Plaintiff's Cross-Motion for Summary Judgment.

       On February 4, 2008, Defendant filed a Notice and Motion to Stay explaining that it had

discovered additional records responsive to Plaintiff's FOIA/Privacy Act requests.  *See* Def.'s

[29] Mot. for a Stay at 1.  Defendant explained that it reviewed its files to submit the ICE records

in response to the Court's order for *in camera* review and "discovered that it might not have

5

properly processed Plaintiff's July 20, 2005 [FOIA] request."  *Id.* at 1.  Defendant further

explained that CBP had erroneously treated Plaintiff's FOIA/Privacy Act request as a "traveler's

complaint," and did *not* process the request under its FOIA/Privacy Act procedures.  *Id.* at 2.

Defendant notified Plaintiff of this development prior to the Court's January 29, 2008 decision,

but neither party brought it to the attention of the Court.[5]

Defendant also submitted a second declaration from Gloria Marshall.  *Id.*, Ex. A

(hereinafter "Second Marshall Decl.").  Ms. Marshall explained that "[P]laintiff is no longer the

subject of the open and pending criminal investigation originally cited in the Fields declaration,"

a fact that she did not learn until February 1, 2008 (after the Court had issued its decision).  *Id.* ¶

7.  Nevertheless, Ms. Marshall asserted that the seven pages of records were still properly

withheld by ICE pursuant to FOIA Exemption 7(A) because disclosure of the records would

negatively affect *other* ongoing investigations:

> FOIA [Exemption 7(A)] is no longer applicable with respect to the investigation
> noted in the Fields Declaration [concerning Plaintiff], however, I have been
> informed that disclosure of information related to [P]laintiff could have a negative
> impact on other ongoing investigations.  Accordingly, FOIA [Exemption 7(A)] is
> still applicable to the seven pages of ICE records . . . .

*Id.*

The Court granted a stay on February 6, 2008.  *See* 2/6/08 Min. Order.  The Court ordered

Defendant to process the additional responsive records and either release them to Plaintiff or

prepare a *Vaughn* Index regarding the same.  *Id.*  During the pendency of the stay, ICE obtained

twenty-five additional pages of responsive records from the ICE Special Agent in Charge office.

---

[5] Rather than join Defendant's Motion for a Stay, Plaintiff decided to file his own Motion
for a Stay (for the same reasons identified in Defendant's motion), which he submitted on
February 5, 2008.  *See* Pl.'s [30] Mot. for a Stay at 1-3.

Def.'s Stmt. ¶ 14.  Fourteen of the pages belonged to CBP and were forwarded to that component

for review.[6]  *Id.* ¶ 16.  With respect to the other eleven pages, ICE released seven of them to

Plaintiff and withheld the remaining four.  *Id.*  ICE invoked FOIA Exemptions 2, 7(A), 7(C), and

7(E) to withhold the four pages of records in their entirety.

> B.    CBP

As discussed above, CBP incorrectly processed Plaintiff's initial July 20, 2005

FOIA/Privacy Act request.  Once CBP discovered its mistake, CBP searched the Treasury

Enforcement Communications System ("TECS") on January 17, 2008, and discovered 82 pages

of responsive records.  *Id.* ¶ 17.  CBP used the search terms "Neal," "Barnard," "Bernard," and

"07/10/53."  *Id.*  CBP processed the records and released 80 of them with redactions on February

5, 2008.  *Id.* ¶ 18.  CBP withheld one page in full and released one page in full.  *Id.*  CBP then

discovered one additional TECS record and released that document to Plaintiff with redactions

on April 1, 2008.  *Id.* ¶ 19.

In addition to TECS, CBP searched the Automated Targeting System - Passenger ("ATS-

P"), as well as records maintained at CBP Headquarters, and the Ports of Entry for Toronto and

Washington-Dulles.  *Id.* ¶ 20.  The ATS-P system was searched on January 29, 2008, and again

on April 8, 2008, "to ensure that the search was comprehensive."  *Id.* ¶ 21.  CBP used the search

terms "Neal," "Barnard," "Bernard," and "07/10/53."  *Id.*  The port of Washington-Dulles

records were searched on February 15, 2008, and the port of Toronto records were searched on

April 1, 2008.  *Id.* ¶ 22.  CBP did not locate any responsive records at Washington-Dulles, and

discovered 5 responsive records at the Toronto port of entry.  *Id.*  As a result of these searches,

---

[6] These records shall be discussed below in the context of CBP.

CBP located a total of 229 pages of responsive records (not including the previous 82 pages that had been processed on February 5, 2008).  *Id.* ¶ 23.

CBP processed the 229 pages of records on April 17, 2008.  *Id.* ¶ 24.  82 pages were released with redactions, 11 pages were released in full, and 136 pages were withheld in full.  *Id.* On April 23, 2008, CBP provided Plaintiff with two *Vaughn* indices identifying FOIA exemptions 6, 7(A), 7(C), and 7(E), as the basis for withholding information.  *Id.* ¶ 25.  CBP later dropped its assertion of FOIA Exemption 7(A), but no additional documents were released because they were all subject to other exemptions.  *Id.* ¶ 26.  CBP thereafter provided Plaintiff with two revised indices reflecting this change.  *Id.*

As explained above, ICE referred an additional 14 pages of records to CBP for review on June 6, 2008.  *Id.* ¶ 27.  On June 16, 2008, CBP released 13 pages of records to Plaintiff with redactions, and found the remaining page to be unresponsive to Plaintiff's FOIA/Privacy Act requests.  *Id.*  On June 20, 2008, CBP provided Plaintiff with two final *Vaughn* indices accounting for all documents processed by CBP.  *Id.* ¶ 28; Pl.'s Resp. Stmt. ¶ 28 (clarifying that the *Vaughn* indices did not include a description of the four pages of withheld ICE records).

On April 29, 2008, the parties conferred and "explored ways to resolve this case informally without further litigation."  [34] Status Report at 2 (May 1, 2008).  Although the parties were able to narrow their disputes, they were unable to eliminate them.  *Id.*  Accordingly, the parties reported that their remaining disputes concerned the following exemptions invoked by Defendant to withhold the following information:

- Exemption 6:  Names and positions of federal employees within Plaintiff's presence, and names of third parties within Plaintiff's presence

- Exemption 7(A):  Law enforcement techniques and procedures to the

extent that the exemption is invoked in connection with a criminal
investigation into Plaintiff's activities

- Exemption 7(C):  Names of federal employees within Plaintiff's presence

- Exemption 7(E):  Inspection procedures witnessed by Plaintiff

*Id.*

The parties then proceeded to brief a second round of dispositive motions.  The parties

filed Cross-Motions for Summary Judgment, Oppositions, and Replies.  The parties' briefing

incorporated a Motion for Reconsideration brought by Plaintiff in response to the revelation that

he was not the subject of an investigation at the time of the Court's initial decision on January

29, 2008.

Defendant also filed, in the context of these motions, two separate Motions for Leave to

file *in camera* declarations in support of its Motion for Summary Judgment.  Plaintiff filed a

consolidated Opposition to these motions, and Defendant filed a consolidated Reply.  The Court

granted Defendant's Motions for Leave on January 22, 2009, and Defendant timely delivered the

declarations to Chambers on January 23, 2009.  Accordingly, the parties' Cross-Motions for

Summary Judgment are fully briefed and ripe for decision.

## II. LEGAL STANDARD

*A.     FOIA*

In reviewing a motion for summary judgment under FOIA, the Court must conduct a *de

novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B).  In the FOIA context, "*de novo* review

requires the Court to 'ascertain whether the agency has sustained its burden of demonstrating that

the documents requested . . . are exempt from disclosure under [] FOIA.'"  *Assassination

Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003)

9

(quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).  Summary

judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material

fact exists only when there is sufficient evidence such that a reasonable juror could find for the

party opposing the motion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251-52 (1986).

　　　Under FOIA, all underlying facts and inferences are analyzed in the light most favorable

to the FOIA requester; as such, only after an agency seeking summary judgment proves that it has

fully discharged its FOIA obligations is summary judgment appropriate.  *Moore v. Aspin*, 916 F.

Supp 32, 35 (D.D.C. 1996) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir.

1983)).  In opposing a motion for summary judgment, a party must offer more than conclusory

statements.  *See Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001)

(citing *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987)).  Indeed, a plaintiff

pursuing an action under FOIA must establish that the agency has improperly claimed an

exemption as a matter of law or that the agency has failed to segregate and disclose all non-

exempt information in the requested documents.  *See Perry-Torres v. Dep't of State*, 404 F.

Supp. 2d 140, 142 (D.D.C. 2005).

　　　Congress enacted FOIA for the purpose of introducing transparency to government

activities.  *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Congress

remained sensitive, however, to the need to achieve balance between this objective and the

vulnerability of "legitimate governmental and private interests [that] could be harmed by release

of certain types of information."  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,

975 F.2d 871, 872 (D.C. Cir. 1992); *see also Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998). Accordingly, FOIA provides nine exemptions pursuant to which an agency may withhold requested information. *See* 5 U.S.C. §§ 552(a)(4)(B), (b)(1)-(9). The agency must demonstrate the validity of any exemption that it asserts. *See id.*; *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) ("[c]onsistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents"). In addition, summary judgment may be granted on the basis of the agency's accompanying affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). These affidavits may be submitted by an official who coordinated the search, and need not be from each individual who participated in the search. *See SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

An agency also has the burden of detailing what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Cent. Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Any non-exempt information that is reasonably segregable from the requested records must be disclosed. *Ogelsby v. U.S. Dep't of Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996). In addition, district courts are required to consider segregability issues *sua sponte* even when the parties have not specifically raised such claims. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

B.      *Privacy Act*

The Privacy Act of 1974 regulates the collection, maintenance, use, and dissemination of an individual's personal information by agencies within the federal government.  *See* 5 U.S.C. § 552a(e).  The Act provides that any agency that retains a system of records "shall maintain . . . only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or executive order of the President." 5 U.S.C. § 552a(e)(1).  To provide for openness and accountability, the Act ensures that "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system," the agency shall provide the individual with access to review such records.  5 U.S.C. § 552a(d)(1).  Finally, subject to certain exceptions, the Privacy Act states that disclosure of records shall be limited.  5 U.S.C. § 552a(b) ("[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains").  One of these exceptions, however, is that an agency shall disclose such records that would be required to be disclosed pursuant to FOIA.  5 U.S.C. § 552a(b)(2).  In actions seeking documents under both FOIA and the Privacy Act, a defendant agency must show that the information is properly subject to both FOIA and Privacy Act exemptions.  *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

## III.  DISCUSSION

In considering the parties' Cross-Motions for Summary Judgment, the Court shall address the adequacy of Defendant's search for records, the exemptions invoked by Defendant that

remain in dispute, and Defendant's segregability analysis.  The Court shall then address

Plaintiff's Motion for Reconsideration based on newly discovered evidence.  Ultimately, the

Court concludes that Defendant has met its burden of showing that it properly complied with its

obligations under FOIA and the Privacy Act, and that Plaintiff has not met its burden of showing

how newly discovered evidence warrants reconsideration of the Court's January 29, 2008

decision.

> A.     *Defendant Has Demonstrated That It Conducted An Adequate Search for Records*

In determining the adequacy of a FOIA search, the Court is guided by principles of

reasonableness.  *Ogelsby v. Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  To obtain summary

judgment on the issue of the adequacy of the records search, an agency must show "viewing the

facts in the light most favorable to the requester, that . . . [it] has conducted a 'search reasonably

calculated to uncover relevant documents.'"  *Steinberg*, 23 F.3d at 551 (quoting *Weisberg v.

Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  To meet its burden, the agency may

submit affidavits or declarations that explain both in reasonable detail and in a non-conclusory

fashion the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C.

Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to

demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  An agency must show that it

made a "good faith effort to conduct a search for the requested records, using methods which can

be reasonably expected to produce the information requested."  *Ogelsby*, 920 F.2d at 68; *see also

Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  An agency's search need not be

exhaustive, merely reasonable.  *See W. Ctr. for Journalism v. Internal Revenue Serv.*, 116 F.

Supp. 2d 1, 8 (D.D.C. 2000) (citing *Shaw v. State Dep't*, 559 F. Supp. 1053, 1057 (D.D.C.

1983)).

Plaintiff's Motion for Summary Judgment includes a perfunctory, two-paragraph argument concerning the adequacy of Defendant's search for responsive records. *See* Pl.'s Mot. at 37. In addition to some boilerplate language about failing to identify specific files that were searched or identifying the particular persons who performed the searches, Plaintiff argues that Defendant "has demonstrated the inadequacy of its searches by consistently supplementing the administrative record . . . with the results of subsequent searches for responsive records." *Id.* The Court is unpersuaded.[7]

Defendant submitted sufficient and non-conclusory declarations from Reba McGinnis, the Unit Chief of the Information Disclosure Unit at ICE, and Shari Suzuki, the Chief of FOIA Appeals at CBP, describing the reasonableness of Defendant's searches. *See* Def.'s Mot., Ex. 3 (hereinafter "McGinnis Decl."); *id.*, Ex. 8 (hereinafter "Suzuki Decl."). For example, Ms. McGinnis described the search performed at the local ICE Special Agent in Charge office where ICE believed it was likely that responsive records would be maintained, and two electronic searched using TECS and the IRS. *See* McGinnis Decl. ¶ 19; Def.'s Opp'n, Ex. 3 ¶ 6 (hereinafter "Second McGinnis Decl."). Ms. Suzuki described the searches that were performed in the TECS and ATS-P databases, *see* Suzuki Decl. ¶¶ 7-11, and at the ports of entry at Toronto and

---

[7] Plaintiff's Third Amended Complaint did not contain a claim concerning the adequacy of Defendant's search for responsive records, but Plaintiff's Cross-Motion nevertheless asserts one. A plaintiff may not ordinarily move for summary judgment on a claim he or she never raised. *See, e.g.*, *Sharp v. Rosa Mexicano, D.C., LLC,* 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2000) ("[the] plaintiff may not, through summary judgment briefs, raise the new claims . . . because [the] plaintiff did not raise them in his complaint, and did not file an amended complaint"). The Court shall nevertheless address Plaintiff's claim, in its discretion, because it has been fully briefed by the parties and it does not require an examination of any evidence outside the scope of the present record.

14

Washington-Dulles, *id.* ¶ 12.  Ms. Suzuki also identified the search terms used to search these electronic databases, including "Neal," "Barnard," "Bernard," and "07/10/53."  *Id.* ¶¶ 6, 10.  Both declarants identified how many pages of records were found at each location, and the number and portions of documents released to Plaintiff after processing.  McGinnis Decl. ¶19; Suzuki Decl. ¶¶ 5-16.

Plaintiff raises no specific objections to the foregoing searches or search terms beyond the argument that Defendant's failure to locate all of the responsive documents in its initial search is somehow evidence that its searches were unreasonable.  The Court rejects that illogical argument because, as Defendant emphasizes, "the fact that Defendant supplemented its production of documents is a testament to Defendant's appreciation of its obligation under the FOIA to produce documents."  Def.'s Opp'n at 26.  Plaintiff fails to cite a single case where a court found that an agency conducted an inadequate search simply because it undertook multiple searches to find responsive records.  To the contrary, an inquiry regarding the adequacy of an agency's search requires a court to focus on the actual search or searches, not on the *results* of the same.  *See Weisberg v. Dep't of Justice*, 705 F.2d 1344, 151-52 (D.C. Cir. 1983).  For this reason, courts routinely uphold the sufficiency of any agency's search even when additional records are located after multiple searches.  *See, e.g., James v. CBP*, 549 F. Supp. 2d 1, 5, 7-8 (D.D.C. 2008).  Here, Plaintiff is unable to raise any infirmity with Defendant's declarations, which indicate that Defendant made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Perry v. Block*, 684 F.2d at 127.  Accordingly, the Court shall grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment with respect to the adequacy of

Defendant's search for responsive records.

>    **B.**    *Defendant Has Demonstrated That It Properly Invoked FOIA and Privacy Act*
>            *Exemptions To Withhold Information Responsive to Plaintiff's FOIA/Privacy Act*
>            *Requests*

As explained above, the parties' remaining disputes on summary judgment concern the

following exemptions invoked by Defendant to withhold the following information:

- Exemption 6:  Names and positions of federal employees within Plaintiff's
  presence, and names of third parties within Plaintiff's presence

- Exemption 7(A):  Law enforcement techniques and procedures to the
  extent that the exemption is invoked in connection with a criminal
  investigation into Plaintiff's activities

- Exemption 7(C):  Names of federal employees within Plaintiff's presence

- Exemption 7(E):  Inspection procedures witnessed by Plaintiff

[34] Status Report at 2 (May 1, 2008).[8]  As reflected in their submissions to the Court, the parties

also dispute Defendant's reliance on Privacy Act Exemptions (j)(2) and (k)(2).  The Court shall

address each of the foregoing identified exemptions, in turn.

>    1.    FOIA Exemption 6

FOIA Exemption 6 permits an agency to withhold information contained within

"personnel and medical files and similar files the disclosure of which would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  *See also Nat'l Archives &*

*Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *Dep't of Justice v. Reporters Comm. for*

*Freedom of the Press*, 489 U.S. 749, 773-74 (1989).  The term "similar files" is broadly

---

[8] The Court notes that Defendant invoked other exemptions that Plaintiff does not
dispute.  The Court has limited its analysis in this Memorandum Opinion to only those areas that
remain in dispute between the parties.

interpreted, such that Exemption 6 protects from disclosure all information that "applies to a particular individual" in the absence of a public interest in disclosure.  *State Dep't v. Washington Post Co.*, 456 U.S. 595, 602 (1982) ("In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information. Rather, the exemption was intended to cover detailed Government records on an individual which can be identified as applying to that individual.") (internal quotation and citation omitted). Accordingly, it is not the nature of the files in which the information is contained, but rather the balance of public and private interests that determines the exemption's scope.  *Washington Post*, 456 U.S. at 599-600.

Exemption 6 "tilt[s] the balance (of disclosure interests against privacy interests) in favor of disclosure," and creates a "heavy burden" for an agency invoking Exemption 6.  *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1128 (D.C. Cir. 2007).  Thus, in considering whether Exemption 6 applies, the Court must "first determine whether disclosure of the [information at issue] 'would compromise a substantial, as opposed to *de minimis*, privacy interest.'"  *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1230 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  For this purpose, "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest."  *Id.* at 1230-31.  In addition, for purposes of balancing, it is significant that "[t]he public's interest in disclosure of personnel files derives from the purpose of the [FOIA] – the preservation of 'the citizens' right to be informed about what their government is up to.'"  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492-93 (D.C. Cir. 1993) (quoting *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted)).  While FOIA's purpose "is furthered by disclosure of official

information that 'sheds light on an agency's performance of its statutory duties,'" "[i]nformation that "reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Id.* at 1493 (quoting *Reporters Comm.*, 489 U.S. at 773).

In this case, CBP invoked Exemption 6 to withhold the names and positions of all federal employees that have been in Plaintiff's presence and the names of any third parties that have been in Plaintiff's presence. Def.'s Mot. at 13. Ms. Suzuki explained in her declaration that these individuals have a privacy interest in avoiding "unnecessary, unofficial questioning, harassment and stigmatization." Suzuki Decl. ¶ 26. In terms of a public interest, Ms. Suzuki explained that disclosing this information "does not shed light on how CBP performs its statutory duties." *Id.*

Plaintiff initially takes issue with Ms. Suzuki's analysis of the privacy interests at stake. Although Plaintiff does not dispute that individuals generally have a privacy interest that encompasses their names and addresses, *see Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 876 (D.C. Cir. 1989), Plaintiff contends that the federal employees who have been in Plaintiff's presence no longer have any privacy interest because they "regularly hold themselves out within the public ambit by interacting with millions of airport travelers as part of their employment, all the while wearing badges or other forms of identification indicating their names and titles." Pl.'s Mot. at 27. Plaintiff emphasizes that he is already aware of "more than two dozen individuals employed by Defendant already . . . ." *Id.* Consequently, Plaintiff believes that "Defendant simply cannot argue that federal officials who are seen daily by thousands of travelers have a privacy interest, essential to their occupation, in the secrecy of their

identities."  Pl.'s Opp'n at 10.

Plaintiff's argument is foreclosed by a long line of cases recognizing that individuals

maintain an interest in their privacy even where some information is known about them publicly.

*See Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. )) ("although government

officials, as we have stated before, may have a 'somewhat diminished' privacy interest, they 'do

not surrender all rights to personal privacy when they accept a public appointment'") (quoting

*Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996)).  *See also Nat'l Archives & Records Admin.

v. Favish*, 541 U.S. 157, 170-171 (2004) (explaining that FOIA recognizes a surviving family

members' right to personal privacy with respect to their close relative's death, including high-

profile deaths such as the assassinations of President John F. Kennedy and Martin Luther King,

Jr.); *Consumers' Checkbook v. U.S. Dep't of Health & Human Servs.*, 2009 U.S. App. LEXIS

1642 at * 21 (D.C. Cir. Jan. 30, 2009) (holding that privacy interests outweighed public interests

even though "the public is already familiar" with certain aspects of the requested data).  Applying

this principle, courts in this district have consistently rejected the argument that Plaintiff now

advances.  *See, e.g.*, *Taylor v. Dep't of Justice*, 268 F. Supp. 2d 34, 38 (D.D.C. 2003) ("the fact

that the requestor might be able to figure out some or all of the individuals' identities through

other means, or the fact that their identities have already been disclosed, does not diminish their

privacy interests in not having the documents disclosed").

Plaintiff's arguments concerning the privacy interests of third parties is even more

cursory and unpersuasive.  Plaintiff argues that "Congress enacted the (b)(6) exemption, in

particular, to protect 'intimate details' of a 'highly personal' nature . . . The names of third

parties, such as [Plaintiff's] travel companions, in [Plaintiff's] presence do not fall into this

category.  Pl.'s Mot. at 27.  Plaintiff also argues that "Defendant can point to no such similar file

from which information about the bare names and positions of federal employees or the names of

third parties might be disclosed that would invade the realm of protected information."  Pl.'s

Opp'n at 9.

Plaintiff's arguments fail because there is no question that Exemption 6 is designed to

protect the names of individuals, regardless of the particular file in which they may be found.

*See Washington Post Co.*, 456 U.S. at 602 ("In sum, we do not think that Congress meant to limit

Exemption 6 to a narrow class of files containing only a discrete kind of personal information.

Rather, the exemption was intended to cover detailed Government records on an individual

which can be identified as applying to that individual.") (internal quotation and citation omitted);

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (explaining that Exemption 6

protects "not just files, but also bits of personal information, such as names and addresses, the

release of which would 'create a palpable threat to privacy'") (quoting *Carter v. U.S. Dep't of

Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)).

Accordingly, the Court finds that the privacy interests of the individuals referenced in the

withheld documents are not insubstantial and have not been eliminated because they may be

known in some capacity to Plaintiff.  The Court must now review whether these privacy interests

are outweighed by the public interest in the information associated with them.

As set forth above, Ms. Suzuki asserted that the requested information "does not shed

light on how CBP performs its statutory duties," Suzuki Decl. ¶ 26, which is the only relevant

public interest at issue.  *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 775 (holding

that the only relevant public interest in disclosure "is the extent to which disclosure would serve

the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.").  Plaintiff argues that "the release of the responsive documents would shed light on Defendant's activities related to airport security, as well as how and to what extent Defendant has allowed the privatization of government functions."  Pl.'s Reply at 16.  The Court disagrees.

Plaintiffs' asserted public interests bear no relationship to the information Plaintiff has requested, and Plaintiff offers no plausible nexus between the names of federal employees and third-parties *who have been in Plaintiff's presence* and how the public would learn about CBP's security functions and privatization efforts.  Where, as here, the nexus between the information sought and the asserted public interest is lacking, the asserted public interests will not outweigh legitimate privacy interests.  *See Painting & Drywall Work Preserv. Fund, Inc. v. HUD*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) ("attenuated public interest in disclosure" does not outweigh significant privacy interests); *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 800 (D.C. Cir. 1990) ("the public interest is grounded in a nexus between the information sought and the central purposes of FOIA").[9]  Moreover, "information about private citizens . . . that reveals little or nothing about an agency's own conduct" does not serve a relevant public interest under FOIA.  *Reporters Comm. for Freedom of Press*, 489 U.S. at 773.

Although Plaintiff fails to distinguish the controlling case law set forth above, he relies on the inapposite 1971 decision of *Getman v. NLRB*, 450 F.2d 670, 675 (D.C. Cir. 1971).  *See* Pl.'s

---

[9] The Court notes that Plaintiff previously represented that he did not seek this information for public purposes, but rather, "to put an end to these inconvenient and embarrassing interruptions to my travel schedule. . . ."  *See* Pl.'s Mot., Ex. 1 ¶ 25 (Affid. of N. Barnard).

Mot. at 26-27.  In that case, a group of law professors sought a list of employee names and addresses to complete a study on NLRB voting and wanted to use the list to "facilitate scheduling of interviews with employees before and after certain elections."  450 F.2d at 671.  One of the purposes of the study was "to consider the feasibility of changing Board rules to eliminate unnecessary grounds for challenges to elections, so as to streamline the entire process."  *Id.* at 675.  The District of Columbia Circuit found that "[t]he public interest need for such an empirical investigation into the assumptions underlying the Board's regulation of campaign tactics has for some time been recognized by labor law scholars [and] [t]his particular study has been reviewed and supported by virtually every major scholar in the labor law field."  *Id.* at 675.

*Getman* does not support Plaintiff's claims in this case because Plaintiff is not conducting any sort of study that would shed light on Defendant's statutory duties.  To the contrary, as the Court discussed above, Plaintiff is unable to identify any non-attenuated public interest that would overcome the privacy interests of the individuals who have been in Plaintiffs' presence and whose identities Plaintiff seeks to ascertain.  As the D.C. Circuit has noted, in the absence of an identifiable public interest in the information, the court "need not linger over the balance; something . . . outweighs nothing every time." *Beck*, 997 F.2d at 1494 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).  Accordingly, the Court shall grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment with respect to FOIA Exemption 6.

### 2.   FOIA Exemptions 7(A), 7(C), and 7(E)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm.  5 U.S.C. § 552(b)(7).  To properly assert Exemption 7, an agency must first

establish the records at issue were compiled for law enforcement purposes.  If this showing is

made, an agency must then satisfy the requirements of one of the sub-parts of Exemption 7.  *See*

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003).

 ICE invoked Exemptions 7(A), 7(C), and 7(E) to withhold four pages of records called

"Significant Incident Reports."  McGinnis Decl. ¶¶ 19, 24.  CBP invoked Exemptions 7(C) and

7(E) to withhold names of federal employees within Plaintiff's presence and the inspection

procedures witnessed by Plaintiff.  Suzuki Decl. ¶¶ 27-31.

   i. Defendant has demonstrated that the records were compiled for
    law enforcement purposes

 At the outset the Court notes that, where an agency "specializes in law enforcement, its

decision to invoke exemption 7 is entitled to deference."  *Campbell v. Dep't of Justice*, 164 F.3d

20, 32 (D.C. Cir. 1998) (citing *Pratt v. Webster*, 673 F.2d 408, 419 (D.C. Cir. 1982)).

Nevertheless, the "deferential" standard of review that the Court applies to this determination is

not "vacuous."  *Id.*  Instead, the agency's declarations "must establish a rational 'nexus between

the investigation and one of the agency's law enforcement duties,' and a connection between an

'individual or incident and possible security risk or violation of federal law.'"  *Id.* (quoting *Pratt*,

673 F.2d at 420-21).  As the D.C. Circuit explained in *Campbell*, "[t]he fact that information is

stored in a [document] with an official-sounding label is insufficient standing alone to uphold

nondisclosure;" "[a]t a minimum, the [agency] must demonstrate the relationship between a

record and its label and between the label and a law enforcement purpose."  *Id.*

 In this case, there is no question that ICE and CBP perform law enforcement activities.

Ms. McGinnis explains that "ICE is the largest investigative arm of [the Department of

Homeland Security], and is responsible for identifying and eliminating vulnerabilities within the nation's borders . . . ." McGinnis Decl. ¶ 23.  ICE is "tasked with preventing any activities that threaten national security and public safety by targeting the people, money and materials that support illegal enterprises." *Id.*  Similarly, Ms. Suzuki explains that CBP "is a law enforcement agency with enforcement responsibilities for over 400 Federal statutes, on behalf of over 40 different federal agencies."  Suzuki Decl. ¶ 28.  CBP's "mission is to protect the borders of the United States against terrorists and the instruments of terror, enforce the customs and immigration laws of the United States, and foster our Nation's economy by facilitating lawful international trade and travel."  *Id.*

There is also no question that the records identified by Defendant *could* bear the appropriate nexus between ICE and CBP's law enforcement activities and a possible violation of federal law.  For example, Ms. McGinnis explains that the information contained in the four pages at issue comprise one or more Significant Incident Reports wherein there is information  "relevant to other ongoing investigations."  McGinnis Decl. ¶ 24.  *See also* Second McGinnis Decl. ¶ 13.  As for the CBP records, Ms. Suzuki explains that the electronic systems that CBP searched for responsive records "maintain records directly related to law enforcement activities and are all used for law enforcement purposes."  *Id.*  Specifically,

> TECS is an overarching law enforcement information collection, risk assessment, and information sharing environment; ATS-P's purpose is to assist CBP personnel in making decisions about whether a passenger or crew member should receive additional screening prior to arrival in or departure from the United States because the traveler may pose a greater risk for violation of U.S. law.

*Id.*  Ms. Suzuki also indicates that the responsive records located at the port of Toronto "are used for law enforcement purposes."  *Id.*

Plaintiff argues that the Defendant's threshold showing is insufficient because Defendant has failed to establish a link between "Plaintiff and a possible security risk or violation of law for any of the seventeen airport incidents . . . ." Pl.'s Mot. at 29. Although Plaintiff's argument lacks merit to the extent he is suggesting that he must be the target of the investigation in order for Defendant to rely on this exemption, Plaintiff is correct that Defendant has not sufficiently described the "ongoing investigations" necessary to justify reliance on Exemption 7. For example, Defendant provides no detail concerning the "size, scope, and direction of [the] investigation," *see Boyd v. Criminal Div. of the United States Dep't of Justice*, 475 F.3d 381, 386 (D.C. Cir. 2007) (quoting *Alyeska Pipeline Serv. Co. v. U.S. Envtl. Prot. Agency*, 856 F.2d 309, 312 (D.C. Cir. 1988)), which would allow a determination as to whether there is a nexus between its law enforcement duties and the investigations to which it refers. Although Defendant's reliance on Exemption 7 is certainly plausible given the description of their law enforcement activities and the types of records where the information responsive to Plaintiff's FOIA/Privacy Act requests was located, Exemption 7 requires more than labels and plausible conclusions. *See Campbell*, 164 F.3d at 32.

Defendant's submissions to the Court appear to acknowledge this deficiency, as Defendant repeatedly emphasizes that "no further description [of the documents] can be placed on the public record without disclosing precisely the information that the application of the exemptions is intended to protect." Def.'s [41] Mot. for Leave at 2. *See also* Def.'s [42] Motion for Leave at 2 ("Defendant wishes to supplement [its] declarations by submitting . . . [an] *in camera* declaration [that] will provide the Court with additional factual context to further support the FOIA exemptions claimed by ICE and CBP. Neither Plaintiff nor the public has knowledge

[of] these facts."). The *in camera* declarations also provide additional details explaining why Defendant has not described these investigations in any greater detail in Defendant's public submissions. *See, e.g.*, Decl. dated June 20, 2008 ¶ 9.

Based in part on Defendant's failure to describe these ongoing investigations in sufficient detail, and Defendant's related explanation that it could provide no further details of the investigations on the public record without revealing the information it seeks to protect from disclosure, the Court granted Defendant leave to file two *in camera* declarations. *See Arieff v. U.S. Dep't of the Navy*, 712 F.2d 1462, 1469 (D.C. Cir. 1983) (explaining that *in camera* affidavits are, "when necessary, part of a trial judge's procedural arsenal"). *See also Boyd v. Criminal Division of the United States Dep't of Justice*, 475 F.3d 381, 382 (D.C. Cir. 2007) ("*in camera* review may be particularly appropriate if the agency affidavits do not describe the documents and justifications for withholding in sufficient detail to demonstrate that the claimed exemption applies . . ."). Although the Court is aware that *in camera* declarations should be avoided unless truly necessary, *see, e.g.*, *Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1013 (D.C. Cir. 1976), where, as here, an agency indicates that no additional information concerning an investigation may be publicly disclosed without revealing precisely the information that the agency seeks to withhold, the receipt of *in camera* declarations is appropriate. *See, e.g.*, *Billington v. U.S. Dep't of Justice*, No. 92-0462, Mem. Op. & Order at 1-4 (July 24, 2003), *aff'd* 258 Fed. App'x 348, 349 (2007).[10]

---

[10] In accordance with the D.C. Circuit's guidance to "make as much as possible of the *in camera* submission available to the opposing party" as is appropriate, the Court has also reviewed Defendant's two *in camera* submissions to determine whether any portions may be appropriately disclosed to Plaintiff and placed on the public docket. *See Armstrong v. Executive Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996). The Court has determined that no

Having considered Defendant's two *in camera* declarations, the Court finds that Defendant has satisfied its burden with respect to the Exemption 7 threshold showing.  Mr. Jacksta's *in camera* declaration contains a very detailed description of the documents withheld by Defendant and contains corresponding descriptions explaining why each of the documents or sets of documents cannot be further discussed on the public record without revealing information that Defendant seeks to withhold from public disclosure.  *See* Jacksta Declaration ¶¶ 34-39.  A second *in camera* declaration explains the nexus between Defendant, the documents at issue, and the past and ongoing investigations that have been referenced in Defendants' public submissions. *See* June 20, 2008 Decl. ¶¶ 6-12.  Accordingly, based on the evidence in the record, which includes Defendant's public submissions and the two *in camera* declarations, the Court finds that Defendant has met the threshold burden for invoking Exemption 7 and shall proceed to examine whether Defendant has properly invoked sub-parts 7(A), 7(C), and 7(E).[11]

ii. FOIA Exemption 7(A)

Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5

---

portion of the declarations may be disclosed without revealing the information Defendant seeks to protect.

 [11] Plaintiff argues that "[b]aseless airport detentions are not the type of investigatory activities for which Congress sought to exempt records from disclosure under [Exemption 7]," Pl.'s Mot. at 29, and that Plaintiff has only been "generally monitor[ed] rather than the subject of an actual "agency investigation," Pl.'s Mot. at 30.  These arguments are based on speculation about the nature of the investigations referenced in Defendants' public submissions.  The Court finds that the investigations described in Defendant's *in camera* declarations are of the type that are appropriately subject to Exemption 7.

U.S.C. § 552(b)(7)(A).  Exemption 7(A) is properly invoked where "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).  To demonstrate that reliance on this exemption is proper, Defendant must make at least a minimum showing concerning "the impact of the disclosures" if the documents were disclosed.  *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007).

In this case, Ms. McGinnis explained that the four pages of Significant Incident Reports were properly withheld in their entirety because, "[a]lthough Plaintiff is no longer the subject of the open and pending criminal investigation originally cited in the Fields Declaration, the information related to Plaintiff in the four pages of the Significant Incident Reports contain information related to other on-going investigations."  McGinnis Decl. at ¶ 24.  She further explained that "[i]t has been conveyed to me that the release of such information could have a negative impact on the other ongoing investigations and, therefore, the release of such information could reasonably be expected to interfere with those investigations."  *Id.*

Plaintiff argues that Defendant has failed to establish the possibility of interference with a pending or anticipated investigation.  *See* Pl.'s Mot. at 31.  In particular, Plaintiff argues that (1) the Fields declaration that Defendant initially submitted for purposes of the parties' first round of summary judgment motions was "demonstrably false" and (2) that the second declaration submitted by Ms. Marshall, as well as the declaration submitted by Ms. McGinnis, contain inadmissible hearsay.  *See* Pl.'s Opp'n at 5.  The Court is not persuaded by either of these arguments.

Although the relevance of Plaintiff's first argument is not apparent, the argument itself is

specious.  As Defendant correctly observes, "Plaintiff ignores the reality that he was the subject

of a criminal investigation in February 2007 [when the Fields declaration was submitted] but, due

to the passage of time, in February 2008, he was no longer the subject of that investigation."

Def.'s Opp'n at 5.  Accordingly, the individuals who have submitted declarations in support of

Defendant's present summary judgment submissions have all recognized that Plaintiff is no

longer the subject of an investigation.  *See, e.g.*, McGinnis Decl. ¶ 24 (acknowledging that

"Plaintiff [is] no longer the subject of the open and pending criminal investigation originally

cited in the Fields Declaration" but explaining that there are "other ongoing investigation" that

could be affected by the release of the information at issue).  To the extent Plaintiff invites the

Court to find evidence of bad faith due to these changed circumstances, the Court expressly

declines Plaintiff's invitation.[12]

Plaintiff's second argument concerning inadmissible hearsay in Ms. Marshall's second

declaration and Ms. McGinnis's declaration is based on the same argument that the Court

rejected in its January 29, 2008 Memorandum Opinion.  *See* Mem. Op. at 8-12.  At that time,

Plaintiff took issue with the Fields declaration submitted by Defendant in support of its summary

judgment motion.  *Id.* at 8.  Mr. Fields stated in his declaration that Plaintiff "is the subject of an

open and pending criminal investigation" and that "[r]elease of any information pertaining to this

investigation could reasonably be expected to interfere with this open and pending criminal

investigation."  Fields Decl. ¶ 22.  On summary judgment, Plaintiff argued that Defendant failed

---

[12] Plaintiff also takes issue with the fact that the Fields declaration submitted by
Defendant identified six pages of responsive records whereas, in fact, there were seven pages in
Defendant's possession at the time.  *See* Marshall Decl. ¶ 6.  This discrepancy was discussed in
the Court's January 29, 2008, *see* Mem. Op. at 14 n.9, and the Court finds this discrepancy to be
immaterial to resolving the parties' present Cross-Motions for Summary Judgment.

to meet its burden of showing that there was an ongoing investigation of Plaintiff because Mr.

Fields's declaration was not based on his personal knowledge. *See* Pl.'s [16] Mot. at 8-13. The

Court rejected that argument because Mr. Fields's statements were made "based upon [his]

personal knowledge, review of documents kept in the course of business, and information

conveyed to [him] in the course of [his] official duties." Fields Decl. ¶ 4. Because he was

"familiar with the processes used to search for the records at issue, and because he has reviewed

the records himself," the Court found that he was "competent to testify as to the information

contained in those records." Mem. Op. at 11.

Similarly, Ms. Marshall's second declaration is "based on [her] personal knowledge and

experience, review of documents kept in the course of business, and information conveyed to

[her] in the course of [her] official duties." Second Marshall Decl. ¶ 4. Regarding the

investigations at issue, she states that she "received official notification that plaintiff is not longer

the subject of the open and pending criminal investigation originally cited in the Fields

Declaration," but that she has "been informed that disclosure of information related to plaintiff

could have a negative impact on other ongoing investigation." *Id.* ¶ 7. Ms. McGinnis made

similar statements in her declaration. Her declaration is based on her "familiar[ity] with the facts

of this case [and] personal knowledge and experience, review of documents kept in the course of

business, and information conveyed to [her] in the course of [her] official duties." McGinnis

Decl. ¶ 4. She further states that she has "been informed that there is information related to

[P]laintiff contained in the 'ICE Significant Incident Reports' that is also relevant to other

ongoing investigations," and that "[i]t has been conveyed to [her] that the release of such

information could have a negative impact on the other ongoing investigations and, therefore, the

release of such information could reasonably be expected to interfere with those investigations." *Id.* ¶ 24.

As the Court previously explained, a declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) "'if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question.'" *Madison Mech., Inc. v. Nat'l Aeronautics and Space Admin.*, No. 99-2854, 2003 U.S. Dist. LEXIS 4110 at *17 (D.D.C. Mar. 20, 2003) (quoting *Spannus v. Dep't of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987)).  Because a declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records, the declarant is not required to independently verify the information contained in each responsive record.  *See, e.g.*, *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (explaining that an agent properly stated in his affidavit that "one of the sources whose identity was withheld by the FBI had specifically requested confidentiality" because that information was contained in a record the agent reviewed, even though the agent did not independently verify that the source had actually requested confidentiality).

Plaintiff once again argues that the these declarations contain inadmissible hearsay, although Plaintiff now focuses on the fact that the declarants were *told* certain information rather than obtaining the information from a review of relevant documents.  The Court finds this to be a distinction without a difference.  FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.  *See, e.g.*, *Thompson v. Exec. Office for United States Attorneys*, 2008 U.S. Dist LEXIS 95515 at *12-*13

31

n.4 (D.D.C. Nov. 24, 2008) (finding a declaration admissible where it was based on the individual's "review of [the Defendant's] official files and records, [her] own personal knowledge, and the information [she] acquired in performing her official duties"); *Hornes v. Exec. Office of United States Attorneys*, 2007 U.S. Dist. LEXIS 33129 at *11 (D.D.C. May 4, 2007) ("[the declarant's] statements are based on his personal knowledge, his review of [agency] official files and records and information that he acquired in performing [his] official duties . . . Declarations provided by similarly situated officials have long been recognized as acceptable in FOIA cases") (internal citation and quotation marks omitted).[13]  The Court therefore rejects Plaintiff's argument that the declarations submitted by Defendant contain inadmissible hearsay.

Despite this finding, the Court also finds that Defendant's submissions on the public record are insufficient to meet its burden of showing how the release of the withheld information could interfere with ongoing investigations.  *See* 5 U.S.C. 552(b)(7)(A) (encompassing information that "could reasonably be expected to interfere with enforcement proceedings").[14]  Nevertheless, the Court granted Defendant leave to submit two *in camera* declarations for the reasons explained above.  Having considered them, the Court finds that Defendant has met its burden of showing how the release of the withheld information could interfere with ongoing

---

[13] Plaintiff asserts that, "[f]or all [Plaintiff] or this Court know[], [the] source [of the information set forth in these declarations] may have been a conversation overheard at the water cooler in Defendant's Office of Investigations." Pl.'s Opp'n at 7.  Because both declarants explain that they received information while "performing [their] official duties," Plaintiff's concerns in this regard are misguided.

[14] Plaintiff argues that Defendant must establish that the withheld information "would" interfere with an investigation, *see* Pl.'s Opp'n at 12, but that argument is belied by the language of the statute and undermined by Plaintiff's inability to cite any legal authority in support of such a proposition.

investigations and enforcement proceedings.  In particular, the *in camera* declaration dated June 20, 2008, explains how disclosure of the withheld information could interfere with, and jeopardize, the ongoing and future investigations.  *See* June 20, 2008 Decl. ¶ 6.  Based on the present record, which includes the second declaration of Ms. Marshall, the declaration of Ms. McGinnis, and the June 20, 2008 *in camera* declaration, the Court finds that Defendant has met its burden to show how the release of the information could reasonably be expected to interfere with ongoing investigations.  Accordingly, the Court shall grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment with respect to Exemption 7(A).

iii. FOIA Exemption 7(C)

Pursuant to FOIA Exemption 7(C), an agency may withhold information within documents "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  To evaluate this exemption, the Court must balance the privacy interests involved against the public interest in disclosure.  *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991); *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).  In terms of public interests, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Committee for Freedom of the Press*, 489 U.S. at 773.  This inquiry is similar to the inquiry performed for Exemption 6, but Exemption 7(C) applies only to documents that have been "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).

33

In this case, ICE invoked Exemption 7(C) to protect the names of the Special Agents and third-parties appearing in the Significant Incident Reports.  McGinnis Decl. ¶ 25.  With respect to the Special Agents, Ms. McGinnis explained that "[t]hey were, and still are, in positions of access to information regarding official law enforcement investigations.  If there identities are released, they could become targets of unwarranted harassment."  *Id.*  As for third parties, Ms. McGinnis explained that they are individuals who

> were, and possibly still are, subjects of investigations or who provided information or other cooperation to the government [and who] could be humiliated by being identified in connection with a criminal investigation; they could become targets of harassment or physical danger.  Also release of their identities would constitute an unwarranted invasion of their personal privacy.

*Id.*  Ms. McGinnis also asserted that no public interests would be served by releasing the names of these government employees or third parties.  *Id.*

Similarly, CBP invoked Exemption 7(C) to withhold names of federal employees.  Ms. Suzuki explained that the privacy interest in the information withheld by Defendant relates to the protection of federal personnel and third parties "from unnecessary, unofficial questioning, harassment and stigmatization."  Suzuki Decl. ¶ 30.  In contrast, Ms. Suzuki explains that release of this information would not "shed light on how CBP performs its statutory duties."  *Id.*

On the one side of this balancing equation, Plaintiff argues that Exemption 7(C) "does not exempt disclosure of information that is or has been made public."  Pl.'s Mot. at 33.  Because Plaintiff is "already familiar with the publicly-displayed names and positions of more than two dozen federal officials," the "privacy interest is far from its apex, and closer to its nadir."  Pl.'s Mot. at 33.  The Court rejected the same argument in the context of the Exemption 6 inquiry above.  *See* Section III.B.1, *supra* (collecting cases and explaining that individuals do not lose

their privacy interests simply because they are known to the public).  Moreover, the names of

third-parties in law enforcement records are almost always exempt from disclosure.  *See Safecard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) ("[w]e now hold categorically that,

unless access to the names and addresses of private individuals appearing in files within the

ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the

agency is engaged in illegal activity, such information is exempt from disclosure").  *See also*

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (holding that Exemption

7(C) protects "the privacy interests of all persons mentioned in law enforcement records, whether

they be investigators, suspects, witnesses, or informants," and their names are "generally exempt

from disclosure . . .").  Accordingly, the Court finds that Plaintiff has failed to show that the

individuals named in the records withheld by Defendant lack an insubstantial privacy interest.

On the other side of the balancing equation, Plaintiff argues that there is a public interest

in the names of these federal employees and third parties because it would reveal "'what the

Government is up to,' namely baseless monitoring of the activities of private citizens."  Pl.'s

Mot. at 32 (citing *Pratt*, 673 F.2d at 421).  Plaintiff contends that "when, as here, Defendant

engages in monitoring activities not necessarily stemming from its statutory responsibilities . . ., a

FOIA/PA requester may take on an important watchdog role that is recognized as a public

interest."  Pl.'s Opp'n at 14 (citing *Ctr. to Prevent Handgun Violence v. U.S. Dep't of the*

*Treasury*, 981 F. Supp. 20, 24 (D.D.C. 1997)).  In order to rely on this asserted public interest,

however, Plaintiff "'must produce evidence that would warrant a belief by a reasonable person

that the alleged Government impropriety may have occurred' in order to gain disclosure."

*Sussman*, 494 F.3d at 1115 (quoting *Favish*, 541 U.S. at 174).  Where, as here, a plaintiff relies

only on "his bare and undeveloped allegations" of agency impropriety, a belief by a reasonable

person that impropriety might have occurred is "not warranted." *Id.*

The Court therefore finds that no public interest outweighs the privacy interests of the

individuals identified in the withheld records. Accordingly, the Court shall grant Defendant's

Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment with

respect to Exemption 7(C).

iv.     FOIA Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records that "would disclose

techniques and procedures for law enforcement investigations . . . or would disclose guidelines

for law enforcement investigations . . . if such disclosure could reasonably be expected to risk

circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Information that relates to law enforcement

techniques, policies, and procedures is properly withheld under this exemption. *See Boyd v.*

*BATFE*, 570 F. Supp. 2d 156, 158 (D.D.C. 2007); *Morley v. Cent. Intelligence Agency*, 453 F.

Supp. 2d 137, 156 (D.D.C. 2006).

ICE invoked FOIA Exemption 7(E) to withhold the four Significant Incident Reports in

their entirety. *See* McGinnis Decl. ¶ 26. Ms. McGinnis explained that disclosure of these reports

would "disclose techniques, procedures and guidelines for law enforcement investigations or

prosecutions, where such disclosures could reasonably be expected to risk circumvention of [the]

law." *Id.* She also explained that, with respect to this case,

> ICE employed certain law enforcement techniques designed to obtain information
> about [P]laintiff in furtherance of the government's criminal investigation of
> [P]laintiff. These techniques involved cooperative arrangements between ICE and
> other agencies and inter-agency communications prompting specific actions on
> the part of agency employees. The disclosure of these techniques could adversely
> affect future investigations by giving potential subjects of investigations the

36

> ability to anticipate the circumstances under which such techniques could be
> employed in investigations where they may be targets and identify such
> techniques as they are being employed.

*Id.*

Similarly, CBP invoked Exemption 7(E) to prevent disclosure of information that would

"reveal CBP's investigative techniques," including "CBP examination and inspection

procedures, internal reporting requirements and instructions on how to process international

travelers, which could be used by potential violators to develop countermeasures to evade

detection, inspection and targeting methods."  Suzuki Decl. ¶ 31.  Ms. Suzuki explains that

further descriptions of the withheld information "would divulge to Plaintiff the examination and

inspection procedures, internal reporting requirements and instructions on how to process

international travelers" which is "the very information that CBP seeks to protect." *Id.*  Finally,

Ms. Suzuki explains that Defendant is asserting Exemption 7(E) as to the documents themselves,

and not just the contents of the documents, because "the documents in and of themselves are law

enforcement techniques." *Id.*  They "are the means by which law enforcement activities are

coordinated and reported" and their disclosure would

> reveal CBP targeting, examination and inspection procedures and types of any
> intra and inter-agency coordination, which would permit potential violators to
> whom the documents may be disclosed, to understand the precise steps taken by
> CBP [and] thus facilitating the development of countermeasures to evade
> detection, inspection and targeting methods.

*Id.*[15]

---

[15] The Court notes that Defendant also invoked Exemption 2 to withhold much of the information also subject to Exemption 7(E), but that Plaintiff has not challenged Defendant's application of Exemption 2.  *See* Def.'s Mot. at 17-18; Suzuki Decl. ¶ 21.  Accordingly, even if Defendant where found to have improperly asserted Exemption 7(E), the information would still be appropriately withheld based on Exemption 2.

According to Plaintiff, Defendant's above descriptions are not sufficiently specific to justify its reliance on Exemption 7(E).  *See* Pl.'s Mot. at 34.  Plaintiff argues that Defendant cannot properly rely on "[c]ategorical description[s] of redacted materials coupled with categorical indication[s] of anticipated consequences of disclosure."  *Id.* (quoting *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)).  The Court disagrees.  The D.C. Circuit recently recognized (in the context of CIA procedures and policies) that an agency may properly withhold information from disclosure where, as here, it would provide insight into its investigatory or procedural techniques:

> The CIA's security clearance techniques involve a general process applied to all background investigations of its officers.  An agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation . . . It is self-evident that information revealing security clearance procedures could render those procedures vulnerable and weaken their effectiveness at uncovering background information on potential candidates.

*Morley v. CIA*, 508 F.3d 1107, 1129 (D.C. Cir. 2007) (internal citation and quotation marks omitted).  *See also Piper v. Dep't of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) (approving agency's withholding of polygraph test information because disclosure "has the potential to allow a cunning criminal to extrapolate a patter or method to the FBI's questioning technique"), *aff'd* 222 Fed. App'x 1 (2007); *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (approving FBI's decision to withhold information concerning law enforcement techniques that "could alert subjects in drug investigations about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).  Based on this legal authority, the Court finds that Defendant's description of the withheld information and the reasons why disclosure would allow circumvention of the law are sufficiently descriptive.

Plaintiff's other argument is a familiar one, arguing that the various inspection procedures witnessed by Plaintiff and others may no longer be withheld because they have been made public. *See* Pl.'s Mot. at 35 ("[t]he inspection procedures witnessed by [Plaintiff]–which include detention, searches, marking of travel documents, use of a computer database, and inclusion on a 'no fly' list–are common knowledge to the general public . . . [and] Defendant has not shown that disclosure of the inspection procedures employed upon [Plaintiff] could reduce or nullify their effectiveness").  Plaintiff argues that

> [t]hese procedures, namely detention, searches, marking of travel documents, use of a computer database, and inclusion on a 'no fly' list, are routinely conducted before airport travelers all over the country and [are] commonly depicted in the media . . . the widespread knowledge of airport inspection procedures makes it highly unlikely that releasing information about them would enable criminals to avoid future detection.

Pl.'s Opp'n at 17.

The Court again rejects this argument.  All of the techniques described in the cases above–security clearance procedures, polygraph examinations, drug investigatory techniques–are known to the public to some extent.  There is no principle of which the Court is aware that requires an agency to release all details concerning these and similar techniques simply because some aspects of them are known to the public.  Accordingly, the Court shall grant Defendant's Motion for Summary Judgment deny Plaintiff's Cross-Motion for Summary Judgment with respect to Exemption 7(E).

### 3.    Privacy Act Exemptions (j)(2), (k)(2)

Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent,

control, or reduce crime or to apprehend criminals . . . ."  5 U.S.C. § 552a(j)(2).  Similarly,

section (k)(2) of the Privacy Act exempts any system of records within an agency from the access

provision of the Privacy Act if the system of records consists of "investigatory material compiled

for law enforcement purposes," other than the material within the scope of the (j)(2) exemption.

5 U.S.C. § 552a(k)(2).

Plaintiff correctly observes that Defendant did not identify any Privacy Act exemptions in

its Motion for Summary Judgment, *see* Pl.'s Mot. at 21, and that an agency cannot withhold

information based on FOIA if the information is subject to disclosure under the Privacy Act:

> [i]n order to withhold these documents from [a requester's] twin Privacy
> Act/FOIA request, then, [the agency] must demonstrate that the documents fall
> within some exception under each Act.  If a FOIA exemption covers the
> documents, but a Privacy Act exemption does not, the documents must be
> released under the Privacy Act; if a Privacy Act exemption but not a FOIA
> exemption applies, the documents must be released under FOIA.

*Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987)).

Realizing its omission, however, Defendant set forth the basis for its withholding under

the Privacy Act in its Opposition, and submitted a second declaration from Ms. McGinnis and a

declaration from Laurence Castelli, as support.[16]  Ms. McGinnis explains the ICE records

requested by Plaintiff were located within the Treasury Enforcement Communications Systems

("TECS") and the Investigations Record System ("IRS") Privacy Act systems of records.  *See*

Second McGinnis Decl. ¶ 9.  She further explains that records from both of these systems "are

exempt from disclosure . . . [as] set forth in the TECS and IRS system of records notices that

---

[16] While Defendant should have included these arguments in its Motion for Summary
Judgment brief, the Court shall, in its discretion, consider them because both parties have had a
full opportunity to fully address them in their briefing.

have been published in the Federal Register . . . ."  *Id.* (citing 66 Fed. Reg. at 53029, 53007-

53008).  Similarly, Ms. Castelli explained that the CBP records that were located using the

Automated Targeting System ("ATS") are exempt from disclosure under the Privacy Act.  *See*

Def.'s Opp'n, Ex. 4 ¶ 4 (Decl. of L. Castelli) (citing 72 Fed. Reg. 43,650).  As for all other CBP

records, Ms. Castelli explains that they were either located using TECS, which is exempt from

the disclosure provisions of the Privacy Act, or they were not maintained in a system of records

retrievable by Plaintiff's name or personal identifier (and thus not subject to the disclosure

provisions of the Privacy Act).  *See* 5 U.S.C. § 552a(5) (explaining that disclosure under the

Privacy Act applies to records located within "a group of records . . . from which information is

retrieved by the name of the individual or by some identifying number, symbol, or other

identifying particular assigned to the individual.").

　　　　Plaintiff offers two reasons as to why these documents should nevertheless be disclosed.

First, Plaintiff asserts that Defendant failed to invoke any Privacy Act exemptions in "the

administrative record," and therefore is precluded from doing so now.  Pl.'s Reply at 11.  This

argument fails because there is no requirement that an agency administratively invoke an

exemption in order to later rely on it in federal court.  *See Hodes v. U.S. Dep't of Housing &*

*Urban Devel.*, 532 F. Supp. 2d 108, 114 n.2 (D.D.C. 2008) (Kollar-Kotelly, J.) (holding that an

agency could invoke an exemption that was not previously asserted in its letters with the

FOIA/Privacy Act requester); *Sciba v. Bd. of Governor of Fed. Reserve Sys.*, No. 04-1011, 2005

U.S. Dist. LEXIS 6007, at *6 n.3 (D.D.C. Mar. 30, 2005) ("an agency only waives FOIA

Exemptions by failing to claim them in the original proceedings before the district court").

　　　　Second, Plaintiff argues that the exemptions under sections (j) and (k) of the Privacy Act

are only applicable where an agency head has promulgated an exemption under the Privacy Act, and that Defendant's Opposition only cites to provisions of the Federal Register. *See* Pl.'s Reply at 11-12 (citing *Doe v. FBI*, 936 F.2d 1346, 1351 (D.C. Cir. 1991)). Plaintiff's argument fails because regulations have, in fact, been promulgated to exempt these electronic systems from the disclosure provisions of the Privacy Act. *See* 31 C.F.R. 1.36; 49 C.F.R. 1507.3.[17]

Accordingly, the Court shall grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment with respect to Privacy Act Exemptions (j)(2) and (k)(2).

   C.    *Defendant Has Demonstrated That It Conducted a Proper Segregability Analysis*

While agencies may properly withhold certain materials under FOIA's enumerated exemptions, they must release "any reasonably segregable portions" of responsive documents once they have redacted the exempted information. *See* 5 U.S.C. § 552(b). The segregability requirement is of such great import that this Court has an affirmative duty to engage in its own segregability analysis, regardless of Plaintiff's pleadings. *See Billington v. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000). The question of segregability is "subjective based on the nature of the document in question, and an agency must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable. *Mead Data Cent. Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Although the agency's justification need not compromise the nature of the

---

[17] Although ATS is not separately named in the regulations cited above, that electronic system has been considered part of TECS for purposes of a Privacy Act exemption. *See* 72 F.R. 43567 (explaining that the Department of Homeland Security is currently amending its regulations to specifically exempt records in ATS from the Privacy Act, which have been until now considered part of TECS).

withheld information, its explanation should at least detail what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *See Mead Data*, 566 F.2d at 261.

For the information withheld by ICE, Ms. McGinnis states that she conducted a "line-by-line" review and determined that "no portion of those four (4) pages were segregable" because the exempt and non-exempt information was inextricably intertwined.  McGinnis Decl. ¶ 27. She also determined that disclosure of the "few non-exempt words or phrases" that were dispersed throughout the four pages would be meaningless and that the these words or phrases constituted an "extremely small portion" of the withheld records.  *Id.*  In Ms. Suzuki's Declaration concerning the information withheld by CBP, she states that she also conducted a "line-by-line" review to "identify information exempt from disclosure or for which a discretionary waiver of exemption could apply."  Suzuki Decl. ¶ 32.   In Ms. Suzuki's judgment, "any further release of the exempted materials could reasonably lead to the identification of the individuals or other items that are properly protected by the exemptions asserted." *Id.*  She also stated that any non-exempt information in the documents is "inextricably intertwined" with the exempt information and "[t]he few non-exempt words and phrases that are dispersed throughout the records withheld in full, if disclosed, would be meaningless and would not serve the purpose of FOIA – to open agency action to the light of public scrutiny."  *Id.* ¶ 31.

Plaintiff argues that Defendant's descriptions concerning segregability are too "sweeping" and not sufficiently detailed.  *See* Pl.'s Mot. at 35-36.  The Court disagrees.  Unlike Defendant's earlier declaration that the Court found lacking, *see* Mem. Op. at 13 (Jan. 29, 2008), both Ms. McGinnis and Ms. Suzuki described the proportion of non-exempt information and how it was

dispersed throughout the withheld records.  *See, e.g.*, McGinnis Decl.  ¶ 27 (describing the

"extremely small portion" of non-exempt information); Suzuki Decl. ¶ 31 (describing the few

non-exempt words or phrases as dispersed throughout the records).  Moreover, the Mr. Jacksta's

*in camera* declaration provides a very detailed description of the information contained in the

records withheld from disclosure, and includes his judgment that no non-exempt information

may be released without revealing the information that Defendant seeks to withhold.  *See*

Jacksta Decl. ¶¶ 8-60.  Finally, Defendant produced *Vaughn* indices including a description of

each document that Defendant withheld from disclosure and corresponding explanations as to

why the information was not released to Plaintiff.  *See, e.g.*, Pl.'s Mot., Exs. 6, 7 (*Vaughn*

Indices).  On this record, the Court finds that Defendant has set forth a sufficiently detailed

segregability analysis.  *Cf. Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733-34

(D.C. Cir. 2008) (emphasizing that "'an agency cannot justify withholding an entire document

simply by showing that it contains some exempt material,'" but not disturbing the well-

established precedents allowing an agency to withhold non-exempt information that is, as here,

"inextricably intertwined" with exempt information) (quoting *Mead Data Cent., Inc.*, 566 F.2d at

260).[18]

Accordingly, the Court shall grant Defendant's Motion for Summary Judgment and deny

Plaintiff's Cross-Motion for Summary Judgment.

--------

[18] The Court also notes that, for purposes of the parties' first round of summary judgment
motions, Defendant asserted that it could not segregate any non-exempt information in the seven
pages of records it withheld from disclosure and that the Court ordered them produced for an *in
camera* review.  *See* Mem. Op. at 13-14 (Jan. 29, 2008).  After reviewing them, the Court agreed
with Defendant that it was correct in its segregability assessment, which lends further support for
Defendant's segregability analysis here.

>    D.    *Plaintiff Has Failed To Demonstrate That The Court Should Reconsider Its*
>          *January 28, 2009 Decision*

Plaintiff moves to have the Court reconsider its January 29, 2008 decision based on the

"newly discovered evidence" that Plaintiff was not subject to an open and pending investigation

at the time of that decision.  *See* Pl.'s Mot. at 13-20.  Federal Rule of Civil Procedure 60(b)(2)

allows a party to obtain relief from a final judgment based on newly discovered evidence when

he or she demonstrates that:

> (1) the newly discovered evidence concerns facts that existed at the time of trial or
> another dispositive proceeding; (2) the party seeking relief was justifiably ignorant
> of the evidence despite his or her due diligence; (3) the evidence is admissible and
> of such importance that it probably would have changed the outcome; and (4) the
> evidence must not be merely cumulative or impeaching.

*See Epps v. Howes*, 573 F. Supp. 2d 180, 185 (D.D.C. 2008).[19]  The Court need not separately

consider each of these elements because the revelation that Plaintiff was not subject to an

investigation in January 2008 would not have changed the outcome of the Court's January 28,

2009 decision.

As described above, Defendant originally withheld seven pages of records based on FOIA

Exemption 7(A) and several other exemptions.  Defendant submitted the declarations of Marshall

Fields, who explained that Plaintiff "is the subject of an open and pending criminal

---

[19] There is some question as to whether Plaintiff could also proceed pursuant to Federal
Rule of Civil Procedure 59(e), which authorizes a party to move, within 10 days after the entry of
judgment, for a court to alter or amend the judgment.  *See, e.g.*, *Firestone v. Firestone*, 76 F.3d
1205, 1208 (D.C. Cir. 1996).  The Court entered a stay of its January 29, 2008 decision on
February 6, 2008, and instructed Plaintiff to raise his motion for reconsideration in the parties'
subsequent briefs.  Whether Plaintiff may still proceed under Rule 59 under these circumstances
is not a question the Court must decide, however, because under either Rule 59 or Rule 60,
Plaintiff is not entitled to relief from the Court's January 28, 2009 decision for the reasons
explained in the text above.

investigation" and that "[r]elease of any information pertaining to this investigation could reasonably be expected to interfere with this open and pending criminal investigation." Fields Decl. ¶ 22. Following the Court's *in camera* review of the records, the Court found that there existed no reasonably segregable non-exempt information and, on January 29, 2008, the Court granted Defendant's Motion for Summary Judgment and denied Plaintiff's Cross-Motion for Summary Judgment.

On February 4, 2008, Defendant filed a Notice and Motion to Stay explaining that it had discovered additional records responsive to Plaintiff's FOIA/Privacy Act requests. *See* Def.'s [29] Mot. for a Stay at 1. Defendant also submitted a declaration from Gloria Marshall, who explained that "[P]laintiff is no longer the subject of the open and pending criminal investigation originally cited in the Fields declaration," a fact that she did not learn until February 1, 2008 (after the Court had issued its decision). Second Marshall Decl. ¶ 7. Nonetheless, Ms. Marshall asserted that the seven pages of records were still properly withheld by ICE pursuant to FOIA Exemption 7(A) because disclosure of the records would negatively affect *other* ongoing investigations:

> FOIA [Exemption 7(A)] is no longer applicable with respect to the investigation noted in the Fields Declaration [concerning Plaintiff], however, I have been informed that disclosure of information related to [P]laintiff could have a negative impact on other ongoing investigations. Accordingly, FOIA [Exemption 7(A)] is still applicable to the seven pages of ICE records . . . .

*Id.* ¶ 7.

Plaintiff argues that this new information "cast[s] doubt on . . . the Court's primary findings" because "the Court relied on the now completely discredited declaration of Marshall Fields and on the first declaration of Gloria Marshall . . . ." Pl.'s Mot. at 15. From that premise,

Plaintiff asserts that, "[b]ecause there is no ongoing investigation of [Plaintiff], Defendant may not withheld information from [Plaintiff] by citing FOIA exemption (b)(7)(A)." *Id.* Plaintiff concludes that "th[e] Court cannot be sure of the validity of its determination that the exempt and non-exempt portions were not segregable" and that this new evidence "casts doubt on *all* of the FOIA exemptions claimed by Defendant." *Id.* at 17 (emphasis in original).

The Court is unpersuaded by Plaintiff's arguments. FOIA Exemption 7(A) is properly invoked when the release of information in law enforcement records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). There is no requirement that Plaintiff, as the requester, necessarily be the focus of the enforcement proceedings. Defendant has explained that the focus of the referenced investigations shifted over time, and although Plaintiff was the subject of a criminal investigation in February 2007 [when the Fields declaration was submitted], he was no longer the subject of the investigation in February 2008. *See* Second McGinnis Decl. ¶¶ 12-13. In order for Plaintiff's Motion for Reconsideration to be cognizable, Plaintiff would have to show that it was (and remains) improper for Defendant to invoke Exemption 7(A) to withhold the ICE records at issue. The declarations submitted by Ms. Marshall and Ms. McGinnis (and all other evidence in the record considered by the Court above) confirm that Defendant has properly invoked Exemption 7(A). *See, e.g.*, Second Marshall Decl. ¶ 7 ("I have been informed that disclsoure of information related to [P]laintiff could have a negative impact on other ongoing investigations"); McGinnis Decl. ¶ 13 ("[d]isclosure of [the records] would allow the subject(s), or potential subject(s), of those investigations the ability to alter their behavior in order to circumvent the law and avoid detection" and "tipping off such individuals as to the existence of the other investigations would

47

enable those individuals the opportunity to destroy evidence and intimidate witnesses . . .").

Because Plaintiff is unable to raise any argument demonstrating that Defendant's reliance on Exemption 7(A) was (and remains) improper, there is no basis for the Court to reconsider its January 29, 2008 decision.  Accordingly, the Court shall deny Plaintiff's Motion for Reconsideration.[20]

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendant's [39] Motion for Summary Judgment and DENY Plaintiff's [40] consolidated Cross-Motion for Summary Judgment and Motion for Reconsideration.  The Court shall sua sponte file Defendant's two *in camera* declarations under seal.  This case shall be dismissed in its entirety.  An appropriate order accompanies this memorandum opinion.

Date:    February 9, 2009

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

---

[20] The Court notes that Plaintiff requested oral argument on the parties' motions pursuant to Local Civil Rule 7(f).  The Court declines to hold an oral hearing, in its discretion, because the parties have fully briefed the issues associated with their motions and the Court finds that oral argument would be cumulative.